# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 13-24700-CIV-WILLIAMS-SIMONTON

| | |
|---|---|
| WILLIAM L. ROBERTS, II p/k/a RICK ROSS and ANDREW HARR and JERMAINE JACKSON collectively p/k/a THE RUNNERS,<br><br>Plaintiffs,<br><br>v.<br><br>STEFAN KENDAL GORDY and SKYLER AUSTEN GORDY collectively p/k/a LMFAO, KOBALT MUSIC PUBLISHING AMERICA, INC., a Delaware corporation, KIA MOTORS AMERICA, INC., a California corporation, DAVID & GOLIATH, LLC, a Delaware limited liability company, DAVID JAMAHL LISTENBEE p/k/a GOON ROCK, THE LISTENBEE, LLC, a California limited liability company, NU80s MUSIC, LLC, a California limited liability company, LMFAO, LLC, a California limited liability company, PARTY ROCK, LLC, a California limited liability company, FOO & BLU, LLC, a California limited liability company and BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES, INC., a California corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM

Defendants Stefan Kendal Gordy, Skyler Austen Gordy, Kobalt Music Publishing

America, Inc., Kia Motors America, Inc., Nu80s Music, LLC, LMFAO, LLC, Party Rock, LLC,

and Foo & Blu, LLC ("Defendants") hereby move the Court for an order granting summary

1

judgment to Defendants on each of the first two Counts for relief alleged in the Amended

Complaint [Dkt. 34] pursuant to Federal Rules of Civil Procedure Rule 56.

The grounds for this Motion are that any use in the composition *Party Rock Anthem* of

any copyright protected elements from Plaintiffs' composition *Hustlin'* is a "fair use" and thus

not a copyright infringement, that there is no genuine dispute as to any material facts, and that

Defendants are entitled to judgment as a matter of law on the First and Second Counts alleged in

the Amended Complaint.  17 U.S.C. § 107.

This Motion is based on Defendants' Memorandum of Points and Authorities

incorporated herewith, Defendants' Statement of Undisputed Facts, the Declarations of Stefan

Gordy, Vincent H. Chieffo, Justin A. Barton, Professor Lawrence Ferrara, Ph.D, Laura

DiMichele, and Sara Jackson and the exhibits submitted therewith, all pleadings and files in this

matter, all matters of which this Court may take judicial notice, and upon such other and further

oral or documentary evidence as may be presented to the Court at or prior to any oral hearing

that may be scheduled on this Motion.

Dated:  October 1, 2014                    GREENBERG TRAURIG, P.A.
                                           *Attorneys for Defendants Stefan Kendal Gordy,*
                                           *Skyler Austen Gordy, Kobalt Music Publishing*
                                           *America, Inc., Kia Motors America, Inc., Nu80s*
                                           *Music, LLC, LMFAO, LLC, Party Rock, LLC, and*
                                           *Foo & Blu, LLC.*

                                           333 S.E. 2nd Avenue
                                           Miami, FL 33131
                                           Tel: 305-579-0500; Fax: 305-579-0717

                                           By:  /s/ *VINCENT H. CHIEFFO*
                                                    VINCENT H. CHIEFFO
                                                (Admitted *Pro Hac Vice*)
                                                chieffov@gtlaw.com

                                           By:  /s/ *BARRY L. ROTHBERG*
                                                    BARRY L. ROTHBERG
                                                Florida Bar No. 0160873
                                                rothbergb@gtlaw.com

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    SUMMARY OF UNDISPUTED FACTS .................................................... 1

     A.    Parties..................................................................................................... 1
     B.    Plaintiffs' Work - *Hustlin'*. ................................................................. 2
     C.    Defendants' Work – *PRA*. ................................................................... 3
     D.    Economic Performance Of *Hustlin'* After The Release of *PRA*. ........................... 3

III.    ARGUMENT .............................................................................................. 4

     A.    Summary Judgment Legal Standard. ..................................................... 4
     B.    Applicable Copyright Law – Fair Use. .................................................. 4
     C.    Any Use Of *Hustlin'* In *PRA* Is A Fair Use And Is Not An Infringement. ........... 7

         1.    Purpose and Character of the Use of *Hustlin'* Lyric/Melody in *PRA*. ................................................................................... 7

             (a)    *PRA* Makes a Highly Transformative use of *Hustlin'*. ................... 8

                 (1)    *PRA* is a parody of *Hustlin'*. ............................................... 8
                 (2)    *PRA's* "everyday I'm shufflin'" transforms "everyday I'm hustlin'" and gives it new meaning, message, and aesthetics................................................. 10

             (b)    Commercial Exploitation of *PRA*. ................................................. 12

         2.    The Nature of the Portion of *Hustlin'* Claimed to be Infringed............... 12
         3.    The Amount Used by Defendants Is Reasonable. .................................... 15
         4.    There Is No Conceivable Harm to the Market for *Hustlin'* or *Hustlin'* Derivatives. ........................................................................... 16

     D.    Summary Of Analysis Of The Four Fair Use Factors. ......................... 20

IV.    CONCLUSION.......................................................................................... 21

LA131553247

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*ABKCO Music, Inc. v. Stellar Records, Inc.*,
  96 F.3d 60 (2d Cir. 1996) ........................................................................20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...................................................................................4

*Calkins v. Playboy Enters. Int'l. Inc.*,
  561 F. Supp. 2d 1136 (E.D. Cal. 2008)...................................................15

*Campbell v. Acuff-Rose Music Inc.*,
  510 U.S. 569 (1994)...............................5, 6, 7, 8, 10, 12, 13, 15, 16

*Cariou v. Prince*,
  714 F.3d 694 (2nd Cir. 2013)............................................................10, 11

*Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*,
  150 F.3d 132 (2d Cir. 1998)....................................................................17

*CCA and B, LLC v. F + W Media Inc.*,
  819 F.Supp.2d 1310 (N.D.Ga. 2011) ................................................13, 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................................................4, 21

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003)...................................................................................5

*Elvis Presley Enters. Inc. v. Passport Video*,
  349 F.3d 622 (9th Cir. 2003) ..................................................................17

*Fantasy, Inc. v. Fogerty*,
  654 F. Supp. 1129 (N.D. Cal. 1987) .......................................................14

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)...................................................................................4

*Golan v. Holder*,
  565 U.S. __, 132 S. Ct. 873 (2012)...........................................................5

*Gulfstream Aerospace Corp. v. Camp Systems Int'l. Inc.*,
  428 F. Supp. 2d 1369 (S.D. Ga. 2006).............................................7, 13, 15

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985).............................................................................6, 13

*HCA Health Servs. Of Ga. Inc. v. Employers Health Ins. Co.*,
  240 F.3d 982 (11th Cir. 2001) ..................................................................4

*Hofheinz v. Discovery Communications, Inc.*,
  No. 00 CIV. 3802(HB), 2001 WL 1111970 (S.D. NY Sept. 20, 2001)..................17

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ...................................................................13, 15, 17

*Kienitz v. Sconnie Nation LLC*,
    ___ F.3d ___, 2014 WL 4494835 (7th Cir. Sept. 15, 2014) ...........................11, 15

*Latimer v. Roaring Toyz, Inc.*,
    601 F.3d 1224 (11th Cir. 2010) ..................................................................4

*Mattel Inc. v. Walking Mountain Productions*,
    353 F.3d (9th Cir. 2003) ........................................................................7, 15

*New Era Publications International v. Carol Publishing Group*,
    904 F.2d 152 (2d Cir. 1990), cert. denied, 498 U.S. 921 (1990) ...........................13

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ..................................................................19

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ..................................................................17

*Peter Letterese & Assoc., Inc. v. World Institute of Scientology Enters. Int'l.*,
    533 F.3d 1287 (11th Cir 2008) ...............................................................7, 14, 16

*Savage v. Council on American-Islamic Relations, Inc.*,
    No. C 07-6076 SI., 2008 WL 2951281 (N.D. Cal. July 25, 2008) .........................17

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ..................................................................11, 15

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) .............................................................................16

*Stewart v. Abend*,
    495 U.S. 207 (1990) .............................................................................5

*Suntrust Bank v. Houghton Mifflin Company*,
    268 F.3d 1257 (11th Cir. 2001) ..........................................5, 6, 7, 8, 9, 12, 13, 16, 17

**State Cases**

*Ross v. Roberts*,
    222 Cal. App. 4th 677 (2013) ..................................................................12

**Federal Statutes**

17 U.S.C. § 107 ...................................................................................1, 5, 6, 7

17 U.S.C. § 107(1) .................................................................................7

17 U.S.C. § 107(2) .................................................................................12

17 U.S.C. § 107(3) .................................................................................15

17 U.S.C. § 107(4) .................................................................................16

17 U.S.C. § 501(b) .................................................................................5

iii

**Rules**

Fed. R. Civ. P. 1 .................................................................................................4, 21

Fed. R. Civ. P. 56(c) ..............................................................................................4

**Regulations**

37 C.F.R. § 202.1(a)...............................................................................................5

**Other Authorities**

Hon. Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1107
    (1990) ..............................................................................................................6

1 M. Nimmer & D. Nimmer, *NIMMER ON COPYRIGHT*, 2-178.12, § 2.11[C]
    (2014).............................................................................................................13

iv

## I.      PRELIMINARY STATEMENT

The first two Counts of Plaintiffs' Amended Complaint assert that Defendants' use of the phrase "everyday I'm shufflin'" in the composition *Party Rock Anthem* is a copyright infringement of the phrase "everyday I'm hustlin'" and its underlying melody from their composition *Hustlin'.*  It is not.  Even assuming that Plaintiffs' lyric phrase is subject to copyright protection, any use of that phrase and underlying melody in *Party Rock Anthem* is a "fair use" under the Copyright Act and is thus not an infringement. 17 U.S.C. § 107. The use of the *Hustlin'* lyric phrase in *Party Rock Anthem* is a highly transformative use both as a parody of *Hustlin'* and as giving new meaning and message to brand *Party Rock Anthem* as a song to which a specific dance - the Shuffle - is to be performed.  An analysis of all of the fair use factors leaves no doubt that Plaintiffs' infringement claim is without any merit.  This Motion for Summary Judgment should be granted.

## II.      SUMMARY OF UNDISPUTED FACTS

This section will summarize some of the basic undisputed facts.  Other undisputed facts will be discussed where relevant in the Argument portion of this memorandum.

**A.      Parties.**

Plaintiffs William L. Roberts, II, professionally known as Rick Ross, ("Roberts"), Andrew Harr ("Harr"), and Jermaine Jackson ("Jackson") are three of the four co-authors of the musical composition *Hustlin'*, but do not own the copyright to that composition.  Statement of Undisputed Facts ("SUF") 1, 4, 5, 23, 24.  The sound recording of Roberts' performance of *Hustlin'* was released as a single in March 2006 and as part of Robert's debut album *Port of Miami* released in August 2006 by, and is still distributed by, Island Def Jam, a label owned by UMG Recordings Inc. ("UMG Recordings"). SUF 2.

Defendants Stefan Gordy ("Stefan"), professionally known as "Redfoo" and Skyler Gordy ("Skyler"), professionally known as "Sky Blu," are collectively professionally known as the music group LMFAO. SUF 7.  Stefan and Skyler are two of the four co-writers of *Party Rock Anthem* ("*PRA*"). *Id.*  The sound recording of LMFAO's performance of *PRA* was released as a single in January 2011 and as part of LMFAO's second album, *Sorry For Party Rocking*, released in June 2011 by, and is still distributed by, Interscope Records which, like Island Def Jam, is also owned by UMG Recordings. SUF 2, 13, 15, 16. Defendants Nu80s Music, LLC, LMFAO, LLC, Party Rock, LLC, and Foo & Blu, LLC are owned by one or both of Stefan and Skyler, and are entities through which they render their services in the entertainment industry. SUF 7.

Defendant Kobalt Music Publishing America, Inc. ("Kobalt") is a music publisher that administers the composition *PRA*. SUF 8.  Defendant Kia Motors America, Inc. ("KMA") licensed *PRA* for use in a video advertisement for KMA's Soul automobile.  SUF 9.

**B.     Plaintiffs' Work - *Hustlin'*.**

*Hustlin'* is a "gansta rap" composition that tells in the first person a story of the hustlin' life of "Rick Ross," the song's narrator, as a big time international drug dealer located in Miami and references the dangerous world of drug dealing and its financial rewards.  The lyrics in the first verse proclaim that "Ross" is "the Boss" and boasts that he knows former Panamanian dictator Manuel Noriega (who owes Ross "a hundred favors") and the Columbian narcotics trafficker Pablo Escobar.  The Chorus of *Hustlin'* consists of the repeated singing of the phrase "Everyday I'm hustlin'," or a fragment thereof.  That Chorus begins the composition and is repeated another three times. During the performance of *Hustlin'*, the word "hustle" alone is sung 10 times, the fragment phrase "everyday I'm" 9 times, and the phrase "everyday I'm

2

hustlin'" 36 times. The Chorus is the Hook of *Hustlin'*.  SUF 20 21.  *Hustlin'* has enjoyed economic and popular success since its first release in 2006. SUF 22.

## C.     Defendants' Work – *PRA*.

*PRA* is a composition created in LMFAO's good time, "Party Rock" style of a blend of electronic dance music with rap/hip hop music.  SUF 10, 11, 12, 18, 29.  *PRA* is a paean to good, hardcore partying and its Hook/Chorus proclaims that "Party Rock is in the house tonight / everybody just have a good time." SUF 33, 40.  Also in line with LMFAO's Party Rock brand, *PRA* was created to be a Shuffle dance song and the *PRA* music video released in Spring 2011 is nonstop Shuffle dancing.  SUF 17, 26, 27, 28, 30, 34.  To brand *PRA* as a Shuffle dance song, the lyrics of *PRA* include the phrases "everyday I'm shufflin'," "shufflin', shufflin'," and "everyday I'm shuff-fl-flin'," each of which appear only once in the composition.  SUF 30, 33. After the release of *PRA* and the *PRA* music video, there was a marked increase in public interest in and awareness of the Shuffle dance. SUF 35.  KMA licensed *PRA* for use in an advertisement for its Soul automobile that features KMA's "Hamster" characters dancing the Shuffle to *PRA*.  SUF 9. Stefan also intended that the lyrics "everyday I'm shuffling," "shuffling, shuffling," and "everyday I'm shuff-fl-flin," were to be understood as a humorous, parodic comment on the story told in, and the style of, *Hustlin'*.  SUF 31, 32, 36, 44. *PRA* has achieved economic and popular success.  SUF 19.

## D.     Economic Performance Of *Hustlin'* After The Release of *PRA*.

*Hustlin'* was originally released in March 2006 and *PRA* was initially released almost five years later in late January 2011.  SUF 2, 16.  After the release of *PRA* in 2011, domestic digital income from Roberts' sound recording of *Hustlin'* was greater in 2011 and 2012 than it had been in 2010.  SUF 59, 60, 61.  After the release of *PRA* in 2011, domestic music publishing

3

income from the composition *Hustlin'* was greater in 2011, 2012, and 2013 than it had been for

2010.  SUF, 62.  *See also infra* at pp. 18 - 20.  Increased interest in *Hustlin'* after the release of

*PRA* is also reflected by the material increase of domestic, online Google searches for the terms

"hustlin'" and "everyday I'm hustlin'." SUF 66.

## III.   ARGUMENT

### A.   Summary Judgment Legal Standard.

Summary judgment is appropriate when "there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson*

*v. Liberty Lobby, Inc*. 477 U.S. 242, 247 (1986); *HCA Health Servs. Of Ga. Inc. v. Employers*

*Health Ins. Co*., 240 F.3d 982, 991 (11th Cir. 2001).  Though the moving party has the burden of

conclusively showing that no genuine issue of material fact exists, the nonmoving party, in the

face of a summary judgment motion, may not rest on its pleadings but must instead come

forward with some probative evidence to support its claim.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-324 (1986).  Where no disputed material fact issues are presented, summary judgment

"is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'"  *Celotex Corp.*  477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### B.   Applicable Copyright Law – Fair Use.

In order to prove a claim of copyright infringement, Plaintiffs must establish "(1)

ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991); *Latimer v. Roaring*

*Toyz, Inc.,* 601 F.3d 1224, 1232-33 (11th Cir. 2010).  In this case, Plaintiffs' infringement claim

is that *PRA*'s lyric and underlying melody "everyday I'm shufflin'" unlawfully copied only a

4

portion of *Hustlin'* – the lyric "everyday I'm hustlin'" and the melody to which that lyric is sung. Solely for the purposes of the instant Motion, Defendants will assume that Plaintiffs' simple "everyday I'm hustlin'" lyric and underlying melody is sufficiently original to merit copyright protection.[1]

However and even assuming that Plaintiffs are "beneficial owners" of the copyright in *Hustlin'* and thus hold a protectable copyright interest in the allegedly infringed *Hustlin'* lyric and underlying melody, Plaintiffs' copyright interest does not confer unfettered control of their work.[2]  While the Copyright Act protects copyrighted materials, it also, through the Copyright Act's fair use provision, 17 U.S.C. § 107, "allow[s] others to build upon it." *Campbell v. Acuff-Rose Music Inc.*, 510 U.S. 569, 575, 577 (1994).  The fair use doctrine allows "later authors to use a previous author's copyright to introduce new ideas or concepts to the public. *Suntrust Bank v. Houghton Mifflin Company*, 268 F.3d 1257, 1264 (11th Cir. 2001).  "The fair use doctrine thus 'permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Campbell*, 510 U.S. at 577 (brackets in original; quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)).

Nor is the limitation afforded by fair use a stepchild in copyright jurisprudence.  The U.S. Supreme Court reiterated that fair use "[is] recognized as [a] 'built-in First Amendment accommodation[]'" in copyright law, safeguarding "'latitude for scholarship and comment.'" *Golan v. Holder*, 565 U.S. __, 132 S. Ct. 873, 890 (2012) (quoting *Eldred v. Ashcroft,* 537 U.S.

---

[1]      *But see* 37 C.F.R. § 202.1(a) ("words and short phrases such as names, titles, and slogans" are not subject to copyright). SUF 48; *See also infra* at pp. 13 - 14.

[2]      While not the legal owners of the copyright in *Hustlin'*, Defendants assume for purposes of this Motion that under the Copyright Act, Plaintiffs are "beneficial owners" of that copyright and have standing to sue for claimed infringement of that copyright. 17 U.S.C. § 501(b).

LA131553247

186, 219 (2003), and *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560

(1985)).  The fair use doctrine is part of what balances the monopoly of a copyright with, and

preserves, "First Amendment privileges" and "First Amendment principles [are] built into

copyright law through … the doctrine of fair use." *Suntrust*, 268 F.3d. at 1264-65.  Fair use

"should be perceived not as a disorderly basket of exceptions to the rules of copyright, nor as a

departure from the principles governing that body of law, but rather as a rational, integral part of

copyright, whose observance is necessary to achieve the objectives of that law." Hon. Pierre N.

Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1107 (1990).  As the Act declares,

a fair use "is not an infringement of copyright." 17 U.S.C. § 107.

      To determine when a particular use is a "fair use," four statutory factors must be

considered.  These factors are: (1) the purpose and character of the use; (2) the nature of the

copyrighted work; (3) the amount and substantiality of the portion used in relation to the

copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value

of the copyrighted work.  17 U.S.C. § 107.  This does not exclude consideration of other factors.

*Harper & Row*, 471 U.S. at 588.  The statutory examples of possible fair uses given are

illustrative rather than exclusive.  *Suntrust*, 268 F.3d at 1268.  There is no across the board rule

for what weight should be given to each factor or how the factors should be applied.  *Campbell,*

510 U.S. at 577–78; *Harper & Row*, 471 U.S. at 588.  This determination is made after a fact-

intensive, value-laden review in each case of claimed infringement.  Fair use does not rest on

"bright-line rules" and must be done on a case-by-case basis.  *Campbell*, 510 U.S. at 577

(quoting *Harper & Row*, 471 U.S. at 560).  "Nor may the four statutory factors be treated in

isolation, one from another.  All are to be explored, and the results weighed together, in light of

the purposes of copyright." *Id*. at 578.  In sum, "the [f]air use doctrine is an equitable rule of

reason." *Peter Letterese & Assoc., Inc. v. World Institute of Scientology Enters. Int'l.*, 533 F.3d 1287,1308 (11th Cir 2008) (citation omitted).

Although fair use is a mixed question of law and fact, courts routinely resolve fair-use disputes on summary judgment where, as is manifestly the case here, after weighing the four statutory factors discussed below, there are no genuine issues of material fact. *Peter Letterese,* 533 F.3d at 1319; *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 799, 800 (9th Cir. 2003); *Gulfstream Aerospace Corp. v. Camp Systems Int'l. Inc.*, 428 F. Supp. 2d 1369, 1376, 1379, 1380-81 (S.D. Ga. 2006).

**C.      Any Use Of *Hustlin'* In *PRA* Is A Fair Use And Is Not An Infringement.**

Review of the four fair use statutory factors demonstrates that any copying in *PRA* from *Hustlin'* is a fair use and "is not an infringement of copyright" in *Hustlin'*. 17 U.S.C. § 107.

**1.      Purpose and Character of the Use of *Hustlin'* Lyric/Melody in *PRA*.**

The first fair use factor focuses on "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). A court's analysis of the first fair use factor includes a determination of whether the alleged infringing use is "transformative" by determining, under the Supreme Court's test, "whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message . . . ." *Campbell*, 510 U.S. at 579 (citations and internal quotations omitted); *Suntrust,* 268 F.3d at 1269. A court's analysis under this fair use factor also considers the commercial or noncommercial nature of the alleged infringing work, but it must do so as part of the "broader investigation into 'purpose and character'" and, thus, "the more transformative the new work, the less will be the significance of other factors, like

LA131553247

commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579, 584; *Suntrust,* 268 F.3d at 1269.

### (a)     *PRA* Makes a Highly Transformative use of *Hustlin'*.

Compared as a whole, *PRA* and *Hustlin'* are two very different works, musically, lyrically and thematically and one simply cannot be confused with the other.  SUF 39 – 45, 58. Assuming that the use of the lyric/melody "everyday I'm shufflin'" in *PRA* is a use of *Hustlin'*s lyric/melody "everyday I'm hustlin'" that is subject to copyright protection, it is a highly transformative use.[3]  As, the Supreme Court has explained, "[T]he goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works.  Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright . . . ."  *Campbell*, 510 U.S. at 579.

It cannot be disputed that *PRA*'s use of the *Hustlin'* lyric/melody is transformative on at least two levels.  It is first a parody of both the substance and style of *Hustlin'* itself, and second it is imbued with new meaning, message, and aesthetics telling the listeners that they should perform the Shuffle dance to *PRA*.

### (1)     *PRA* is a parody of *Hustlin'*.

As to parody, *Campbell* was a fair use song parody case and the Supreme Court noted that the alleged infringing work need only exhibit "critical bearing on the substance or style of the original composition." *Id.* at 580.  Similarly, the Eleventh Circuit has explained that "[f]or purposes of our fair-use analysis, we will treat a work as a parody if its aim is to comment upon or criticize a prior work by appropriating elements of the original in creating a new artistic, as opposed to scholarly or journalistic, work." *Suntrust*, 268 F3d. at 1268-69.  In *Suntrust* the

---

[3]     In fact, only the short, common, fragment phrase "everyday I'm" appears in both *Hustlin'* and *PRA*. SUF 33, 39, 40, 48, 56. In *Yes*, a song created before *PRA*, LMFAO also used the phrase "every day I." SUF 50.

plaintiff, owner of the copyright to the book *Gone With The Wind*, had obtained in the district court a preliminary injunction against the publication of the book *The Wind Done Gone*.  *Id*. at 1259.  On appeal, the Circuit Court reversed concluding that the plaintiff had not established a likelihood of success on its copyright infringement claim because based on the court's analysis that *The Wind Done Gone* was a parody of *Gone With the Wind* on the record before it and that the defendant "was entitled to a fair-use defense."  *Id*. at 1276.  In the *Suntrust* concurring decision, Judge Marcus further explained that an author of a successful parody "must keep certain elements constant while inverting or exaggerating other variables; generally there is an incongruity between the borrowed and the new elements."  *Id*. at 1280 (Concurring Opinion) (citation and internal quotation omitted).  *PRA* meets any definition of transformative parody.

The use of "everyday I'm shufflin'" in *PRA* parodies the story told in *Hustlin'*.  The composition *Hustlin'* is about a participant in the international cocaine traffic network with references to the former Panamanian dictator Manuel Noriega and the Colombian narcotic trafficker Pablo Escobar.  The use of the lyric "everyday I'm hustlin'" in *Hustlin'* connotes that Rick Ross, the drug trafficker, is doing everything he can do in that illicit trade to make money every day.  To the contrary, *PRA* is simply that, a paean to good, hardcore partying.  It extols the virtue of "everybody just have a good time" because "Party Rock is in the house tonight."  The use of the lyric Tag "everyday I'm shufflin'" sung in the style of Roberts' performance of the "everyday I'm hustlin'" lyric/melody is used to reference dancing at the perpetual party and heightens *PRA*'s comment on, and contrast with *Hustlin'* with the "new meaning" that we would all be better off "shufflin'" at a party rather than "hustlin'" in the life of a drug dealer.  Not only does the *PRA* lyric parody *Hustlin'*, but its music does so as well.  Immediately following the "everyday I'm shufflin'" Tag sung in the style of Roberts, the musical Drop starts with a high

pitched, synthesizer light hearted dance melody in direct contrast to the preceding Tag.  SUF 45.

This is exactly the parodic "incongruity between the borrowed and the new elements"

emphasized by Judge Marcus in his *Suntrust* concurring opinion.

> **(2)   *PRA's* "everyday I'm shufflin'" transforms "everyday I'm hustlin'" and gives it new meaning, message, and aesthetics.**

The transformative nature of *PRA* does not stop with a parody of *Hustlin'*.  *PRA* also

totally transforms and changes the meaning and message of the "everyday I'm hustlin'" lyric.  In

*Hustlin'*, that lyric describes the life of the drug dealing Rick Ross, narrator of that composition.

*PRA*'s lyric change to "everyday I'm shufflin'" has an entirely different meaning and message.

The *PRA* lyric tells *PRA*'s audience that the song is meant to be danced to by people doing a

specific dance – the Shuffle.  SUF 30.  The *PRA* music video builds on the Shuffle dance

message by featuring nonstop Shuffle dancing.  SUF 34.  That message was apparently well

understood and the public's interest in Shuffling definitely increased after the release of the *PRA*

music video.  SUF 35.

Even if it could be concluded, which it cannot, that *PRA* does not parody the substance

and style of *Hustlin'*, it still remains a highly transformative work for this reason.  As the Second

Circuit has explained, the "heart of the fair use inquiry" is whether the new work "adds

something new, with a further purpose or different character, altering the first with new

expression, meaning, or message."  *Cariou v. Prince*, 714 F.3d 694, 705 (2nd Cir. 2013) (quoting

*Campbell*, 510 U.S. at 579).  "The law imposes no requirement that a work comment on the

original [work] or its author in order to be considered transformative, and a secondary work may

constitute a fair use even if it serves some purpose other than those (criticism, comment, news

reporting, teaching, scholarship, and research) identified in the preamble to the statute." *Id.* at 706.[4]

The Ninth Circuit also correctly recognizes that an artistic work can be a "transformative" fair use even if it does not comment on the original work. *Seltzer v. Green Day, Inc.,* 725 F.3d 1170 (9th Cir. 2013). In *Seltzer*, plaintiff had created a copyrighted image of a screaming, contorted face that he titled *Scream Icon*. *Id*. at 1173. Defendants copied the entire *Scream Icon* into a four-minute video used as a visual back drop for live concert performances by the musical group Green Day of the composition *East Jesus Nowhere*. *Id*. at 1174. The back drop video's center frame was dominated by the *Scream Icon* reproduced in full, but altered by the addition of a large red spray-painted cross over the middle of the screaming face and black streaks running down the right side of the face. *Id*. The Ninth Circuit held that defendants' use of the *Scream Icon* was a fair use finding that the video "was a street-art focused music video about religion and especially about Christianity." *Id*. at 1176. This use was transformative because "regardless of the meaning of the original [*Scream Icon*], it says nothing about religion" while "[w]ith the spray-painted cross, in the context of a song about the hypocrisy of religion, surrounded by religious iconography, [defendants'] video back drop … conveys new information, new aesthetics, new insights, and understandings that are plainly distinct from the original" *Scream Icon*. *Id*. at 1177 (internal quotation omitted).

Regardless of the meaning of *Hustlin'* or its "everyday I'm hustlin'" lyric, it says nothing about the Shuffle dance nor is it a dance song at all. *PRA*, on the other hand, is a Shuffle dance

---

[4]     While the Seventh Circuit has quite recently criticized (and misinterpreted) the *Cariou* decision, it, nevertheless, did so in an opinion that affirmed the grant of a defense summary judgment on the basis of fair use in a case involving the claimed infringement of a copyrighted photograph that the defendant had altered and reproduced in its work that made no comment on the original work or about the plaintiff photographer. *Kienitz v. Sconnie Nation LLC*, ___ F.3d ___, 2014 WL 4494835 (7th Cir. Sept. 15, 2014)

song and "conveys new information, new aesthetics, new insights, and understandings that are plainly distinct from" *Hustlin'.*

**(b)     Commercial Exploitation of *PRA.***

*PRA* is certainly a successful commercial work, but its commercial character is "not conclusive," since "[i]f, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities 'are generally conducted for profit in this country.'" *Campbell*, 510 U.S. at 584 (citation omitted). *Campbell* itself involved a commercial recording by 2 Live Crew. *Suntrust* also involved an "undoubtedly commercial product," a novel, but its "for-profit status [was] strongly overshadowed and outweighed in view of its highly transformative use of [*Gone With the Wind*] copyrighted elements." *Suntrust,* 268 F.3d at 1269. The same is true here. The commercial nature of the artistic work *PRA* is strongly "overshadowed and outweighed" by its highly transformative use of Plaintiffs' "everyday I'm hustlin'" lyric.

Thus, a review of the first statutory fair use factor strongly favors Defendants.[5]

**2.     The Nature of the Portion of *Hustlin'* Claimed to be Infringed.**

The second fair use factor focuses on "the nature of the copyrighted work," 17 U.S.C. § 107(2), and recognizes that some works are "closer to the core of intended copyright protection

---

[5]     While Roberts now claims that "everyday I'm shufflin'" constitutes an unlawful, non-transformative use of "everyday I'm hustlin'," just eight days before he filed this lawsuit, he prevailed in a right of publicity lawsuit brought against him by the infamous former cocaine dealer Ricky Ross on the basis that Roberts' assumed appropriation of the plaintiff's name and identity by Roberts' use of the name "Rick Ross," the creation of a drug dealing persona, and the phrase "everyday I'm hustlin'" – a phrase apparently used by the real Ricky Ross to describe his actual drug dealing life – in Roberts' song about drug dealing, was creative expression protected by the First Amendment whose value did not derive primarily from Mr. Ross' fame. *Ross v. Roberts*, 222 Cal. App. 4th 677, 680, 682, 688 (2013).

12

than others." *Campbell*, 510 U.S. at 586.  However, while "[t]he second factor grants highest

copyright protection to "original, creative works," and less protection to "derivative works or

factual compilations" this factor is "given little weight in parody cases" due to their reliance on

well-known creative works.  *Suntrust*, 268 F.3d at 1271; *Campbell*, 510 U.S. at 586; *see also*,

*CCA and B, LLC v. F + W Media Inc.*, 819 F.Supp.2d 1310, 1322 (N.D.Ga. 2011).

Courts have afforded the broadest fair use scope to use of published works.  *Kelly v.

Arriba Soft Corp.,* 336 F.3d 811, 820 (9th Cir. 2003) ("[p]ublished works are more likely to

qualify as fair use because the first appearance of the artist's expression has already occurred");

*New Era Publications International v. Carol Publishing Group*, 904 F.2d 152, 157 (2d Cir.

1990), cert. denied, 498 U.S. 921 (1990) ("even substantial quotations might qualify as fair use

in a review of a published work" [citing *Harper & Row*, 471 U.S. at 564]).  *Hustlin'* is a

published work and the sound recording was released almost five years before the release of

*PRA*. SUF 2, 16.

In addition, evaluation of this factor is impacted in this case by the fact the Plaintiffs

claim, and can only claim, that the very short lyric/melody "everyday I'm hustlin'" has been

wrongfully copied in *PRA* and not the entirety or even a substantial portion of *Hustlin'*. SUF 47,

55.  That lyric/melody in addition to being quite short as compared to the entirety of *Hustlin'*

(SUF 57), should be allowed, if any, only "thin" copyright protection as a simple, virtually

factual statement of some questionable originality to Plaintiffs.  *See Gulfstream Aerospace Corp.*

428 F. Supp. 2d at 1376 (factual materials are entitled to "thin copyright" and therefore weigh in

favor of a fair use).[6]  In 1994, Biggie Smalls, a well-known "Gangsta" rapper like Roberts,

---

[6]      Where a work is represented as factual by an author, that author is estopped from
claiming fictionalization and therefore a higher level of copyright protection. 1 M. Nimmer & D.
Nimmer, NIMMER ON COPYRIGHT, 2-178.12, § 2.11[C] (2014).

LA131553247

released a song telling a tale of another drug dealer, like the drug dealer in *Hustlin'*, who described his life as "I'm living everyday like a hustle, another drug to juggle." SUF 54.  The meaning and context of that lyric is indistinguishable from Plaintiffs' "everyday I'm hustlin'" in *Hustlin'* and Roberts considers Biggie Smalls a great lyricist.  SUF 54.  Moreover, Plaintiffs appear to recognize the phrase "everyday I'm hustlin'" lacks copyright protection.  Despite third party non-musical use of the phrase "everyday I'm hustlin'," Plaintiffs are not aware of any cease and desist demands or lawsuits attempting to stop such use.  SUF 53.  This apparent concession that there is no copyright protection to the phrase "everyday I'm hustlin'" is underscored by the fact that  Roberts' owned record company, Maybach Music Group, is merchandising clothing with the phrase "everyday I'm hustlin'" without any license from the owners of the *Hustlin'* copyright as are many others.[7] SUF 3, 49, 51, 52.  While *Hustlin'* as a whole musical composition is entitled to the highest copyright protection as a creative work (SUF 46), the less than original lyric "everyday I'm hustlin'" should not be.

The facts of the instant case can be distinguished from those in *Peter Letterese* where the court noted that a book about sales techniques "... utilizes original expression that surpasses the bare facts necessary to communicate the underlying technique." *Peter Letterese*, 533 F.3d at 1312.  Noting that the techniques were described with "a healthy dose of fiction," the court held that "the semi-factual nature of Big League Sales neither expands nor constricts the scope of the fair use defense." *Id*. at 1313, 1314.  Under those facts the court concluded that factor two was neutral in *Peter Letterese*. *Id*. at 1314.  This is quite different from Plaintiffs' simple, factual declaration that "everyday I'm hustlin'."

---

[7]     Unlike the legal owner of a copyright, beneficial owners such as Roberts and the other Plaintiffs do not "have an independent right to use or license the use of the copyright." *Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129, 1131 (N.D. Cal. 1987).

In the instant case, therefore, the second factor favors Defendants or, at the worst, even applying *Peter Letterese*, is neutral between the parties.

**3.      The Amount Used by Defendants Is Reasonable.**

Under the third factor, the Court must consider the "quantity and value" of the source work used.  *Campbell*, 510 U.S. at 586 (citation omitted).  The inquiry is whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" are reasonable in relation to the purpose of the copying. 17 U.S.C. § 107(3); *Campbell*, 510 U.S. at 586.

If the secondary user's purpose renders it reasonable to copy the entire original work, that is permissible under section 107.  *See e.g,  Kienitz*, at  2014 WL 4494835 at *1 (plaintiff's entire photograph duplicated.); *Seltzer*, 725 F.3d at 1174 (plaintiff's entire visual work used.); *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 820-21 (9th Cir. 2003) (use of entire photographs was reasonable); *Mattel*, 353 F.3d at 804 (upholding fair use of entire Barbie Dolls in photos); *CCA and B*, 819 F.Supp.2d at 1322 (upholding fair use where defendant's parody copied the entirety of plaintiff's copyrighted image); *Calkins v. Playboy Enters. Int'l. Inc.*, 561 F. Supp. 2d 1136, 1143 (E.D. Cal. 2008) (use of entire photo was reasonable; "use [of] a lesser portion of the photograph would have defeated [defendant's] purpose for using it"); *Gulfstream Aerospace Corp.*, 428 F. Supp. 2d at 1379 (noting that even if defendant had copied plaintiff's entire work, "that would still not preclude a finding of fair use").

"When parody takes aim at a particular original work, the parody must be able to 'conjure up' at least enough of that original to make the object of its critical wit recognizable." *Campbell*, 510 U.S. at 588.  In *Campbell*, defendants 2 Live Crew's song *Pretty Woman* copied verbatim the well-known opening riff and first line of Roy Orbison's iconic *Oh, Pretty Woman. Id*. at 588-

589.  Even though the Supreme Court assumed that the portions of the Orbison song copied could be considered the "heart" of *Oh Pretty Woman*, it explained that such a taking would not prevent a finding of fair use.  *Id.*; *see also, Suntrust*, 268 F.3d at 1271-74 and 1279-80 (Concurring Opinion).

Here, Defendants used only what was reasonable to convey the parodic point *PRA* was making about *Hustlin'* and the branding of *PRA* as a Shuffle dance song.  SUF 30, 31, 33, 37, 38, 39, 44, 45.  That use fell well short of the entire original work - only 0.7% of *Hustlin'* is used in *PRA*.  SUF  57.  Although the determination does not turn on a simple mathematical calculation, by any measure *PRA* utilizes an extremely modest amount of *Hustlin'*.

Because the use of *Hustlin'* was quantitatively miniscule and qualitatively trivial, the third factor cuts overwhelmingly in Defendants' favor.

**4.      There Is No Conceivable Harm to the Market for *Hustlin'* or *Hustlin'* Derivatives.**

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  Evaluation of this factor requires an analysis of "the degree to which the defendant's use adversely affects the potential value of either the original work or derivative works" based on the original work and "the adverse effect with which fair use is primarily concerned is that of market substitution." *Peter Letterese*, 533 F.3d at 1315; *Suntrust*, 268 F.3d at 1274.  In reviewing this factor, a court is also to ask "whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market [for the original]."  *Campbell*, 510 U.S. at 590 (citations omitted); *see also Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984).

16

Evaluation of this factor is also influenced by the level of transformativeness of the challenged use.  Also, "in cases of parody, evidence of harm to the potential market for or value of the original copyright is crucial to a fair use determination." *Suntrust*, 268 F.3d at 1275.  In *Suntrust*, the court found that there was no evidence that defendant's parody of *Gone With The Wind*, *The Wind Done Gone*, would displace sales of *Gone With The Wind* and that there was no evidence *The Wind Done Gone* would "supplant demand for [plaintiff's] licensed derivatives." *Id.* at 1274-75.  Without evidence of harm to either market, the court found that *The Wind Done Gone* was a fair use.  *Id.* at 1276.

Courts, properly, have given short shrift to the argument that licensing should be a protected market in cases where, as here, transformativeness is manifest.  As the Second Circuit explained, even if a copyright owner "develop[s] or licens[es] a market for parody, news reporting, educational or other transformative uses of its own creative work, a copyright owner plainly cannot prevent others from entering those fair use markets."  *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 145 n.11 (2d Cir. 1998); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1168 (9th Cir. 2007) (no presumption of harm arises when work is transformative); *Savage v. Council on American-Islamic Relations, Inc.*, No. C 07-6076 SI., 2008 WL 2951281, at *9 (N.D. Cal. July 25, 2008) (since use of excerpts "serves a different function, it cannot supersede the original as a market substitute"); *Hofheinz v. Discovery Communications, Inc.*, No. 00 CIV. 3802(HB), 2001 WL 1111970, at *6 (S.D. NY Sept. 20, 2001) ("to find that the use of short clips presumptively constitutes infringement would eviscerate the fair use doctrine in this area"); *Kelly*, 336 F.3d at 821 (use of thumbnail version of full images "would not harm [owner's] ability to sell or license his full-sized images" to other parties); *Elvis Presley Enters. Inc. v. Passport Video*, 349 F.3d 622, 631 (9th Cir. 2003) (the

"more transformative the new work, the less likely the new work's use of copyrighted materials will affect the market for the materials").

In this case, however, this Court need not rely upon any presumption of lack of harm from the highly transformative nature of *PRA*. The evidence submitted by Defendants conclusively demonstrates that the market for *Hustlin'* and for derivative usages of *Hustlin'* have not been harmed by the release of *PRA*. Quite to the contrary, evidence obtained in discovery from the music publisher of the *Hustlin'* composition and from the record company distributing Roberts' sound recording of *Hustlin'* demonstrates that the value of the music composition and the sound recording have been increased by the release of *PRA*. This is not a surprise. Simply by listening to the two works, it is undisputable that no reasonable fact finder would conclude that the upbeat, electronic dance music/rap/hip-hop, infectious *PRA* is a market substitute for the dark, "gangsta rap" *Hustlin'*. And the evidence bears out this conclusion.

The release and popularity of *PRA* rejuvenated the digital exploitation of *Hustlin'*. More annual digital album units of the *Hustlin'* sound recording were sold in 2011 and 2012 after the release and success of *PRA* than were sold in 2010 before the release of *PRA*. SUF 59. More annual Digital Stream units were received for the *Hustlin'* sound recording in 2011, 2012, and 2013 after the release of *PRA* than in any other year since the release of *Hustlin'* in 2006. SUF 60. The *Hustlin'* sound recording received more digital revenue in 2011 and 2012 after the release and success of *PRA* than was received in 2010 before the release of PRA. SUF 61. The domestic publishing income earned by the composition *Hustlin'* also was greater in 2011, 2012

and 2013 after the release of *PRA* in 2011 than *Hustlin'*'s domestic publishing income in 2010.[8] SUF 62.

Nor can Plaintiffs show that *PRA* materially, adversely affected the market for licensed derivatives of the allegedly infringed "everyday I'm hustlin'" lyric/melody because there is, in fact, no demonstrable derivative market for that lyric/melody. Records produced by Sony/ATV, publisher of an interest in the *Hustlin'* musical composition, reflect that no license has ever been issued for a third party's use of the lyric "everyday I'm hustlin'". SUF 63, 65. Roberts' personal record company Maybach Records Group is selling merchandise with the "everyday I'm hustlin'" lyric without any license from the owners of the copyright in *Hustlin'* and thus concedes that no license is required for such use. SUF 52. Many others are selling merchandise with that lyric and Plaintiffs have never sent anyone of them a claim letter or instigated suit claiming any infringement based on those commercial exploitations. SUF 49, 53. Records produced by UMG Recordings, the parent company of *Hustlin'*'s record label (and of *PRA*'s record label), reflect that no license has ever been issued granting a third party the right to "sample" (i.e. include in another sound recording) any portion of Roberts' *Hustlin'* sound recording, including his performance of the "everyday I'm hustlin'" lyric/melody and Plaintiffs are aware of no such licenses.[9] SUF 51, 64, 65. As to other licensing of the *Hustlin'* musical composition as a whole, the evidence is that revenues for synchronization licenses of *Hustlin'*

---

[8]     Publishing income is often received by a music publisher more than six months after it is earned. Accordingly, 2012 would be the first full year in which the effect of *PRA* on sales and licensing of the *Hustlin'* musical composition would appear. SUF 62.

[9]     *Newton v. Diamond*, 388 F.3d 1189, 1192 (9th Cir. 2004) ("Sampling entails the incorporation of short segments of prior sound recordings into new recordings.").

LA131553247

were greater in 2011, 2012, and 2013 than their levels in 2010 before the release of *PRA*.[10]  SUF

63.  In fact, *Hustlin'*'s 2012 synchronization revenues were the highest annual synchronization

revenues ever achieved in any year since the initial release of the *Hustlin'* sound recording in

March 2006.  SUF 63.

There can be no question that release of *PRA* had no, and will have no, material negative

impact on the potential market or value of *Hustlin'* and the unavoidable inference from the

evidence is that *PRA*'s release increased the value and earnings of both *Hustlin'* and derivatives

of *Hustlin'*.  Accordingly, the fourth factor also weighs heavily in Defendants' favor.

**D.      Summary Of Analysis Of The Four Fair Use Factors.**

A review of each of the four fair use factors demonstrates that all of them weigh heavily

in favor of Defendants.  *PRA* makes a two-level, highly transformative use of the "everyday I'm

hustlin'" lyric/melody from *Hustlin'*; that lyric/melody is of questionable originality and

copyrightability and should receive only "thin" (if any) copyright protection; the amount of

*Hustlin'* used in *PRA* was extremely modest and was reasonable to conjure up *Hustlin'* and to

brand *PRA* as a Shuffle dance tune; and, there is no conceivable present or future market harm to

*Hustlin'* caused by *PRA*'s use of the transformed "everyday I'm hustlin'" melody/lyric and, to

the contrary, the inescapable inference from the evidence is that the release of *PRA* generated

new interest in *Hustlin'* that resulted in increased earnings from and value of *Hustlin'*.

---

[10]      A synchronization license authorizes the licensee to use the copyrighted musical composition in "timed-relation or synchronization" with visual images and would be required in order to include a performance of the *Hustlin'* musical composition in a motion picture, television program, television commercial, or any other audio-visual work. *See, e.g., ABKCO Music, Inc. v. Stellar Records, Inc.,* 96 F.3d 60, 62 n. 4 (2d Cir. 1996) (citation omitted).

## IV.  CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that Defendants' Motion should be granted in its entirety and the First and Second Counts of the Amended Complaint dismissed with prejudice as to all Defendants.  As noted above, granting summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). That policy will be advanced by granting the instant Motion and thus allow Defendants to avoid any additional litigation expenses caused by defending Plaintiffs' misguided and meritless infringement claims alleged in the First and Second Counts of the Amended Complaint.

Dated:  October 1, 2014

GREENBERG TRAURIG, P.A.
*Attorneys for Defendants Stefan Kendal Gordy, Skyler Austen Gordy, Kobalt Music Publishing America, Inc., Kia Motors America, Inc., NU80s Music, LLC, LMFAO, LLC, Party Rock, LLC, and Foo & Blu, LLC*

333 S.E. 2nd Avenue
Miami, FL 33131
Tel: 305-579-0500; Fax: 305-579-0717

By:  /s/ VINCENT H. CHIEFFO
        VINCENT H. CHIEFFO
    (Admitted *Pro Hac Vice*)
    chieffov@gtlaw.com

By:  /s/ BARRY L. ROTHBERG
        BARRY L. ROTHBERG
    Florida Bar No. 0160873
    rothbergb@gtlaw.com

LA131553247

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/EFC or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jonathan L. Gaines, Esq.
Karen Linda Stetson, Esq.
GrayRobinson
1221 Brickell Avenue
Miami, FL 33131
Tel: 305-416-6880
Fax: 305-461-6887
Email: jgaines@gray-robinson.com; karen.stetson@gray-robinson.com

By: __*s/Barry Rothberg*_____
          Barry L. Rothberg

LA131553247