**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-24700-CIV-WILLIAMS-SIMONTON**

WILLIAM L. ROBERTS, II p/k/a RICK ROSS )
and ANDREW HARR and JERMAINE )
JACKSON collectively p/k/a THE RUNNERS, )
          )
          Plaintiffs, )
          )
v. )
          )
STEFAN KENDAL GORDY and SKYLER )
AUSTEN GORDY collectively p/k/a LMFAO, )
KOBALT MUSIC PUBLISHING AMERICA, )
INC., a Delaware corporation, KIA MOTORS )
AMERICA, INC., a California corporation, )
DAVID & GOLIATH, LLC, a Delaware limited )
liability company, DAVID JAMAHL )
LISTENBEE p/k/a GOON ROCK, THE )
LISTENBEE, LLC, a California limited liability )
company, NU80s MUSIC, LLC, a California )
limited liability company, LMFAO, LLC, a )
California limited liability company, PARTY )
ROCK, LLC, a California limited liability )
company, FOO & BLU, LLC, a California )
limited liability company and BRAVADO )
INTERNATIONAL GROUP )
MERCHANDISING SERVICES, INC., a )
California corporation, )
          )
          Defendants. )
_____ )

**MOTION OF DEFENDANT DAVID & GOLIATH, LLC TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE PURSUANT TO FEDERAL
RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(3)
<u>AND INTEGRATED MEMORANDUM</u>**

       Defendant David & Goliath, LLC ("DnG") hereby moves the Court for an order to dismiss

for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure

12(b)(2) and 12(b)(3).

**Lack of Personal Jurisdiction.** First, Plaintiffs do not make a single jurisdictional allegation regarding DnG. Indeed, Plaintiffs do not even specify what alleged conduct of DnG is allegedly unlawful. Second, even if Plaintiffs further amended the complaint, they could not establish personal jurisdiction over DnG in this District. DnG indisputably does not have the minimum contacts with this District that would provide a basis for this Court to exercise personal jurisdiction over DnG in a manner that would comport with Constitutional Due Process requirements. DnG should therefore be dismissed from the action.

**Improper Venue.** Even if there were personal jurisdiction over DnG, venue is improper in this District because none of DnG's relevant actions have any nexus to this District. Plaintiffs cannot meet their burden of demonstrating that the venue they selected is proper.

This Motion is based on Defendant DnG's Memorandum of Points and Authorities incorporated herewith, the Declaration of Gerald R. Duran, all pleadings and files in this matter, all matters of which this Court may take judicial notice, and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to any oral hearing that may be scheduled on this Motion.

Dated:  October 27, 2014

GREENBERG TRAURIG, P.A.
*Attorneys for Defendants Stefan Kendal Gordy, Skyler Austen Gordy, Kobalt Music Publishing America, Inc., Kia Motors America, Inc., NU80s Music, LLC, LMFAO, LLC, Party Rock, LLC, Foo & Blu, LLC, and David & Goliath, LLC*

333 Avenue of the Americas
Miami, FL 33131
Tel: 305-579-0500; Fax: 305-579-0717

By:  /s/ *VINCENT H. CHIEFFO*
        VINCENT H. CHIEFFO
      (Admitted *Pro Hac Vice*)
      chieffov@gtlaw.com

By:  /s/ *BARRY L. ROTHBERG*
        BARRY L. ROTHBERG
      Florida Bar No. 0160873
      rothbergb@gtlaw.com

# I.  <u>INTRODUCTION</u>

Plaintiffs decided to sue David & Goliath ("DnG") more than nine months after they filed this lawsuit. DnG is one of ten defendants that Plaintiffs are suing for alleged copyright infringement (seven of which were added at the same time as DnG), and is named on only one of Plaintiffs' four counts (although Plaintiffs do not allege with any specificity any wrongdoing by DnG). *See* Amended Complaint ("AC") [Dkt. 34]. This Court, however, lacks personal jurisdiction over DnG.

The Amended Complaint does not make any jurisdictional allegation with respect to DnG. Plaintiffs therefore fail to establish *prima facie* jurisdiction over DnG. Nor could they. DnG is a Delaware limited liability company with its sole place of business in Southern California. DnG has no offices, no employees, and no agents or business representatives located in Florida. DnG further does not conduct, engage in, or carry on any business or business venture in Florida, and it is not authorized or registered to carry on any business in Florida. DnG pays no taxes in Florida, owns no real or other property in Florida nor leases any real property in Florida. DnG does not have a mailing address, telephone number, or bank account in Florida.

DnG's only marginal involvement in this case was its retention for advertising services by Defendant Kia Motors America, Inc. ("KMA") to produce KMA's commercial (the "More Soul Commercial") that included a portion of *Party Rock Anthem*, the song that is the subject of Plaintiffs' lawsuit. The agreement with KMA was to be performed by DnG employees in Southern California. DnG's licenses with Defendant Kobalt Music Publishing America, Inc. and Universal Music Enterprises for the inclusion of a portion of Defendant LMFAO's performance of *Party Rock Anthem* in the More Soul Commercial were both negotiated and executed in Southern California, and all of DnG's creative and production work for the More Soul Commercial was done in Southern California. No work on the More Soul Commercial rendered by DnG employees, or by others involved in the production of that commercial, was done in Florida. KMA owns the More Soul Commercial and DnG had no control over when and where KMA caused that commercial to be exhibited.

These facts, which Plaintiffs cannot dispute, do not satisfy either Florida's long-arm statute or Constitutional Due Process requirements. DnG should therefore be dismissed from the action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

Even if there were personal jurisdiction over DnG, venue is nonetheless improper in this

District because none of DnG's relevant actions have any nexus to this District.

Plaintiffs have not, and cannot meet their burden of demonstrating that either personal jurisdiction over DnG or venue is proper. The claim against DnG should therefore be dismissed.

## II.   RELEVANT FACTUAL ALLEGATIONS

### A.   Plaintiffs' Amended Complaint Fails To Make Sufficient Allegations As To Jurisdiction And Venue.

Plaintiffs' 77 paragraph Amended Complaint, which alleges causes of action against all non-resident defendants, contains only two paragraphs that even arguably set forth a jurisdictional statement.

- Paragraph 3 alleges: "The Court has jurisdiction over Defendants pursuant to Florida Statutes §§ 48.193(1)(b), 48.193(1)(f)(1) and 48.193(2), Florida's Long Arm Statute, as Defendants have committed a tortious act within the State of Florida which has caused injury to Plaintiffs within the State or, in the alternative, Defendants have caused injury to persons or property within this State arising out of an act or omission by the Defendants outside this State, or, in the alternative, Defendants have engaged in substantial and not isolated activity in the State of Florida. Moreover, Defendants have purposefully availed themselves of the jurisdiction of this Court by transacting business in this District and the State of Florida concerning the musical composition at issue." AC, [Dkt. 34] ¶ 3.[1]

- Paragraph 37 alleges: "Upon information and belief, Defendants have exploited the song '*Party Rock Anthem*' in this District, in the State of Florida, throughout the United States and throughout the world by reproducing, preparing derivative works, distributing, licensing, publically performing and otherwise exploiting '*Party Rock Anthem*'…" AC, [Dkt. 34] ¶ 37.

Plaintiffs also only make a single allegation regarding venue in this District: "Venue is proper in this District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claim involved in this action occurred in this District." AC, [Dkt. 34] ¶ 4.

While each Defendant's role with respect to the creation and exploitation of *Party Rock Anthem* varied wildly, Plaintiffs nonetheless group all the Defendants together in their

---

[1]   Plaintiffs cite to an outdated version of Florida's long-arm statute. The long-arm statute was renumbered effective July 2013 (five months before Plaintiffs filed their original Complaint and over a year before they filed the Amended Complaint), but Plaintiffs inexplicably ignore this revision. Former section 48.193(1)(b) of the long-arm statute is now 48.193(1)(a)(2) and former section 48.193(1)(f)(1) is now section 48.193(1)(a)(6)(a). DnG will reference the correct sections of the long-arm statute throughout this memorandum.

jurisdictional and venue allegations.  *See* AC, [Dkt. 34] ¶¶ 3, 4, 37. Indeed, nowhere in the Amended Complaint do Plaintiffs make any specific allegation as to DnG's alleged wrongdoing; rather, they merely identify DnG as the advertising agency "utilized" by Defendant KMA for purposes of an advertising campaign that features *Party Rock Anthem*. *See* AC, [Dkt. 34] ¶ 14.

**B.**     **DnG Does Not Have Any Contacts With Florida.**

DnG's contacts with this District are non-existent and cannot satisfy either Florida's long-arm statute or Constitutional Due Process requirements for the exercise of personal jurisdiction.

DnG is a Delaware limited liability company with its sole place of business in Southern California located at 909 N. Sepulveda Blvd., El Segundo, California. Declaration of Gerald R. Duran ("Duran Decl.") ¶ 2. DnG has no offices, no employees, and no agents or business representatives located in Florida. *Id.* ¶ 3. DnG does not conduct, engage in, or carry on any business or business venture in Florida and it is not authorized or registered to carry on any business in Florida. DnG pays no taxes in Florida. *Id.* DnG owns no real or other property in Florida nor leases any real property in Florida. *Id.* ¶ 4. DnG further does not have a mailing address, telephone number, or bank account in Florida. *Id.* ¶ 5.

The Amended Complaint filed in this action asserts that Defendant KMA "utilized" the services of DnG in connection with an advertising campaign for the KMA Soul automobile that featured *Party Rock Anthem*, a song licensed by KMA and performed by Defendant LMFAO. *Id.* ¶ 6; AC, [Dkt. 34] ¶ 14. Plaintiffs' allegations reference the KMA More Soul Commercial, a television commercial created in 2011 featuring the KMA "Hamsters," KMA's Soul automobile, and the tag line "a new way to roll®". Duran Decl. ¶ 6.

DnG is a party to an agreement for advertising services with KMA. *Id.* ¶ 7. Pursuant to that agreement, in Southern California DnG rendered to KMA advertising services in connection with the creation and production of the More Soul Commercial. *Id.* These services included the negotiation of a synchronization license with Defendant Kobalt Music Publishing America, Inc. and a master use license with Universal Music Enterprises, a division of UMG Recordings, Inc., for the inclusion of a portion of LMFAO's performance of *Party Rock Anthem* in the More Soul Commercial. *Id.* DnG entered into both licenses on behalf of KMA. *Id.* Both licenses were negotiated and executed by DnG employees in Southern California. *Id.*

All of DnG's creative and production work for the More Soul Commercial was done in Southern California and the More Soul Commercial was shot at exterior and stage locations in

Southern California. *Id*. ¶ 8. No work on the More Soul Commercial done by DnG employees, or by others involved in the production of that commercial, was done in Florida. *Id*.

DnG's work rendered to KMA in connection with the design and production of the More Soul Commercial was done pursuant to DnG's written agreement with KMA that expressly provides that DnG's work is on a "work made for hire" basis pursuant to the U.S. Copyright Law, 17 U.S.C. § 101 and that KMA exclusively owns the More Soul Commercial, including the copyright in and to that commercial. *Id*. ¶ 9.[2]

DnG has no control over when, where, or how often KMA exhibited the More Soul Commercial as KMA contracts with third parties with respect to the "media buys" for the exhibition of the More Soul Commercial. *Id*. ¶ 10. Accordingly, DnG does not cause nor control the exhibition of the More Soul Commercial. *Id*.

## III.   ARGUMENT

### A.   Legal Standards.

#### 1.   Federal Rule Of Civil Procedure 12(b)(2): Personal Jurisdiction.

To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff must state a prima facie case of personal jurisdiction. *See MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1352 (S.D. Fla. 2000); *see also Cable/Home Commc'n Corp., M/A v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). "After the plaintiff makes the prima facie case for personal jurisdiction through the allegations of the complaint, then the defendant may contest jurisdiction with the use of affidavits, documents, or other evidence. If a defendant challenges jurisdiction through affidavits, … the burden shifts to the plaintiff to prove jurisdiction." *Mio, LLC v. Valentino's of Am., Inc.*, No. 8:13–cv–191–T–26TGW, 2013 WL 3364392, at *4 (M.D. Fla. Jul. 3, 2013). Plaintiffs have failed to allege sufficient facts to give rise to personal jurisdiction over DnG.

This Court's determination as to whether it may exercise personal jurisdiction over DnG is a two-step process. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F. Supp. 2d 1274, 1276

---

[2]   Several months prior to being named as a Defendant in the Amended Complaint, DnG responded to a subpoena *duces tecum* served by Plaintiffs, and, among many other documents, produced a copy of its applicable written agreement with KMA. DnG designated that document "attorneys' eyes only" and therefore it has not been included as an exhibit to the Duran Declaration.

4

(M.D. Fla. 2001); *Mio, LLC,* 2013 WL 3364392 at *4. First, the Court must be satisfied that the Amended Complaint alleges sufficient facts to come within the ambit of one of the jurisdictional criteria contained in Florida's long-arm statute, Fla. Stat. § 48.193. "Florida's long-arm statute is to be strictly construed." *Sculptchair*, 94 F.3d at 627. And the plaintiff has the burden of demonstrating facts that satisfy the statute's criteria. *See Rogers v. Nacchio*, 241 F. App'x 602, 605 (11th Cir. 2007).

Once the first inquiry is satisfied, the Court must then determine whether sufficient minimum contacts exist between Florida and the non-resident defendant "to satisfy 'traditional notions of fair play and substantial justice' under the Due Process clause." *Sculptchair, Inc.*, 94 F.3d at 626 (*citing Robinson v. Giarmarco & Bill, PC*, 74 F.3d 253, 256 (11th Cir. 1996) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945))). "Only if both prongs of the analysis are satisfied may a federal ... court exercise personal jurisdiction over a non-resident defendant." *Carmel & Co. v. Silverfish, LLC*, No. 1:12–cv–21328–KMM, 2013 WL 1177857, at *2 (S.D. Fla. Mar. 21, 2013).

### (a)    General Jurisdiction Under Florida's Long-Arm Statute.

Section 48.193(2) governs long-arm jurisdiction based upon a defendant's general and substantial activity in Florida. It states, "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999)).

To support the exercise of general jurisdiction, the defendant's contacts with the forum must be "continuous and systematic". *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Limited or sporadic contacts do not support a finding of general jurisdiction, but rather, require dismissal. *See, e.g., id.* at 415-16 (finding that one business trip was insufficient to support general personal jurisdiction). For example, placing advertisements in a newspaper is not a sufficient connection to the forum for in personam jurisdiction. *Johnston v. Frank E. Basil, Inc.,* 802 F.2d 418, 420 (11th Cir. 1986). Nor is holding meetings in the forum state sufficient. *See Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1322 (S.D. Fla. 2009) ("[T]wo

meetings in Florida for the purpose of negotiating an agreement that was ultimately executed outside Florida and email communication into Florida cannot be found to constitute a general course of business activity in Florida for pecuniary benefit."); *see also F & G Research, Inc. v. Dynapoint (Taiwan), Inc.*, 262 F. Appx. 277, 279 (Fed. Cir. 2008) (affirming dismissal because defendant did not conduct business in Florida, had no offices, employees, assets or leases in Florida, and there had been no showing that defendant engages in substantial and not isolated activity within Florida).

"The requisite threshold of 'continuous and systematic' contacts is significantly more demanding than the showing necessary to establish specific jurisdiction because section 48.193(2) does not require any connection between a plaintiff's claim and the defendant's Florida activities." *Vos, B.V. v. Payen*, 15 So. 3d 734, 736 (Fla. 3d Dist. Ct. App. 2009).

### (b)      Specific Jurisdiction Under Florida's Long-Arm Statute.

Plaintiffs allege that Defendants (collectively) "committed a tortious act within the State of Florida" (Fla. Stat. § 48.193(1)(a)(2)) or "in the alternative, Defendants have caused injury to persons or property within this State arising out of an act or omission by the Defendants outside this State…"  (Fla. Stat. § 48.193(1)(a)(6)(a)). *See* AC, [Dkt. 34] ¶ 3. Specific jurisdiction does not exist under either of these provisions of the long-arm statute.[3]

### (1)      Fla. Stat. § 48.193(1)(a)(2): Tortious Act.

The Eleventh Circuit has recognized that "'[f]or personal jurisdiction to attach under the "tortious activity" provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant "committed a substantial aspect of the alleged tort in Florida" by establishing that the activities in Florida "w[ere] essential to the success of the tort."'" *Cable/Home Commc'n Corp.*, 902 F.2d at 857 (citations omitted, alterations in original).

In cases where Florida and federal courts in the Eleventh Circuit applied section 48.193(1)(a)(2) to foreign torts causing injury within Florida, that conduct was directed at Florida residents, corporations, or property, and the harm was felt exclusively or primarily in Florida. *See e.g., Int'l Harvester Co. v. Mann*, 460 So.2d 580, 582 (Fla. 1st DCA 1984) (finding personal jurisdiction based upon fact that the "physical assets and .... operation as a

---

[3]      Because Plaintiffs only allege specific jurisdiction pursuant to former sections 48.193(1)(b) and 48.193(1)(f)(1) (AC, [Dkt. 34] ¶ 3), DnG discusses only these sections. DnG expressly denies, however, that specific jurisdiction exists pursuant to any other provision of section 48.193.

business" of the corporation allegedly injured "were solely within the state of Florida"); *eLandia Int'l, Inc. v. Ah Koy,* 690 F. Supp. 2d 1317, 1328-29 (S.D. Fla. 2010) (extending former section (1)(b) because tort of breach of fiduciary duty was directed at Florida and harm felt specifically in Florida); *Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.*, No. 98–136–CIV–FTM–17D, 1998 U.S. Dist. LEXIS 22068, at **11-12 (M.D. Fla. Oct. 13, 1998) (defendant shipped infringing material that it manufactured into Florida to a Florida corporation); *Cable/Home Commc'n Corp.*, 902 F.2d at 857 (finding personal jurisdiction only because a "substantial aspect of the alleged tort [occurred] in Florida"). Where an injury from alleged copyright infringement "was arguably felt in Florida from a defendant's out-of-state tortious conduct, [but] the in-state injury to [third party plaintiff] rests on attenuation upon attenuation," that in-state injury is insufficient to support jurisdiction. *Barrocos of Fla., Inc. v. Elmassian*, 2012 Copr. L. Dec. P 30,252, 2012 WL 1622988, at *4 (S.D. Fla. May 9, 2012).

While the tort of copyright infringement may fall within the reach of section 48.193(1)(a)(2) (*Cable/Home Commc'n Corp.*, 902 F.2d at 856), the infringement typically occurs at the place of "sale", which in the copyright context, is where the allegedly infringing work was licensed. *Kernel Records Oy v. Mosley*, No. 09-21597-Civ, 2010 WL 2812565, at *5 (S.D. Fla. Jul. 5, 2010) ("Here, [defendant]'s 'sale' [i.e., licensing] of the allegedly infringing copyright occurred in New York, not Florida. Therefore, the brunt of the alleged copyright infringement occurred in New York, and not Florida.") (citing *Robinson v. Arista Records, Inc*., No. 3:04-CV-431-TMR-SLO, Dkt. 21, at 10–16 (S.D. Ohio Aug. 5, 2005) (holding that publishing defendant's "acts of alleged copyright infringement occurred in New York" where the mechanical licenses were issued, despite the copyrights being sold throughout the U.S. by a third party distributor).

### (2) Fla. Stat. § 48.193(1)(a)(6)(a): Injury To Persons Or Property.

Plaintiffs allege jurisdiction under section 48.193(1)(a)(6)(a), requiring that DnG "caus[e] injury to persons or property within this state arising out of an act or omission by [DnG] outside this state, if, at or about the time of the injury,…[DnG] was engaged in solicitation or service activities within this state…." Fla. Stat. § 48.193(1)(a)(6)(a).

The Eleventh Circuit, following Florida law, has made clear that where a plaintiff's alleged injury is merely economic, subsection 1(a)(6) will not support personal jurisdiction.

7

*See Rogers*, 241 F. App'x at 606 ("With regard to [former] § 48.193(1)(f), the court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction in Florida."); *Sculptchair*, 94 F.3d at 629 ("mere economic injury without accompanying personal injury or property injury does not confer personal jurisdiction over nonresident defendants under [former] section 48.193(1)(f)" for their "soliciting and/or marketing efforts in Florida").

Where the alleged injury, as in a copyright case, is solely economic, section 48.193(1)(a)(6)(a) will not confer jurisdiction. *See Barrocos*, 2012 WL 1622988, at *4 (finding former section 48.193(1)(f) inapplicable because plaintiff's alleged injury is "solely to its pocket book").

(c)     **Due Process.**

If any relevant provision of Florida's long-arm statute is satisfied, then the Court must consider whether asserting jurisdiction over the non-resident comports with due process, i.e., whether a defendant has the requisite minimum contacts with the forum state such that the constitutional notions of fair play and substantial justice are met. *Sculptchair, Inc.*, 94 F.3d at 626.

The mere fact that any one of the subsections of Florida's long-arm statute is satisfied does not automatically confer jurisdiction over a non-resident defendant or end the inquiry. *SunTrust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1272 (S.D. Fla. 2001).  Rather, to establish specific jurisdiction over a defendant, courts in the Eleventh Circuit apply a three-part due process test, "which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 474-75 (1985); *Helicopteros*, 466 U.S. at 413-14; *Int'l Shoe Co. v. Wash.*, 326 U.S. at 316; *see also Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1220-21 (11th Cir. 2009); *Sculptchair*, 94 F.3d at 630-31). The plaintiff bears the burden of establishing the first two prongs, and only if plaintiff does so will the burden shift to defendant to demonstrate that jurisdiction would violate traditional notions of fair play and substantial justice. *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### (1)    Arising Out Of Or Relating To.

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum.'" *Fraser*, 594 F.3d at 850 (quoting *Oldfield*, 558 F.3d at 1222 (additional internal quotation marks omitted)). "[O]ur inquiry must focus on the direct causal relationship among the defendant, the forum, and the litigation." *Fraser*, 594 F.3d at 850 (internal quotation marks omitted) (quoting *Helicopteros*, 466 U.S. at 414). "[A] relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction." *Helicopteros*, 466 U.S. at 414 (internal quotation marks omitted). The Supreme Court has recently emphasized that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (citation omitted).

While the Eleventh Circuit does not have a rigid test to analyze the relatedness of an alleged tort with the defendant's contacts with the forum state (*see Oldfield*, 558 F.3d at 1222), "the contact must be a 'but-for' cause of the tort" and the "causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign. . . .'" *Id.* at 1222–23 (quoting *Burger King*, 471 U.S. at 472); *see Licciardello v. Lovelady*, 544 F.3d 1280, 1284 n.3 (11th Cir. 2008) ("[I]t is not enough that there be some *similarity* between the activities that connect the defendant to the forum and the plaintiff's claim."). Additionally, the contacts must be based on the acts of defendant – the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417.

The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State", "however significant the plaintiff's contacts with the forum may be." *Walden*, 134 S. Ct. at 1122. In other words, courts look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.*

### (2)    Purposeful Availment.

In cases where an intentional tort is alleged, there are two applicable tests for determining whether purposeful availment occurred.

First, a court may apply the "effects test," which the Supreme Court articulated in *Calder v.*

*Jones*, 465 U.S. 783 (1984), a case involving libel claims, and recently clarified in *Walden*, 134 S.

Ct. 1115. Under the "effects test," a "forum State's exercise of jurisdiction over an out-of-state

intentional tortfeasor must be based on intentional conduct by the defendant that creates the

necessary contacts with the forum." *Walden*, 134 S.Ct. at 1123. The Supreme Court stated

> *Calder* made clear that mere injury to a forum resident is not a sufficient connection
> to the forum. Regardless of where a plaintiff lives or works, an injury is
> jurisdictionally relevant only insofar as it shows that the defendant has formed a
> contact with the forum State. The proper question is not where the plaintiff
> experienced a particular injury or effect but whether the defendant's conduct
> connects him to the forum in a meaningful way.

*Id*. at 1125.

"[M]ere negligent use of a [copyright] protected work will not satisfy the effects test."

*Edwards v. Trade Pub. Ltd.*, 6:10-CV-1883-ORL-31 KRS, 2011 WL 5416190, at *10 (M.D. Fla.

July 20, 2011) (citing *Lovelady*, 544 F.3d at 1286 n.6). "Therefore, a defendant's acts expressly

aimed at an individual in the forum may result in personal jurisdiction over the defendant, but mere

untargeted action or a fortuitous result will not." *Id*. (holding that because publisher "had no reason

to believe that use of" the article at issue would constitute infringement, publication "falls within

the category of negligent use of a protected work that will not satisfy the first prong of the effects

test"). In other words, "something more" is required under the effects test "than the mere

'foreseeability' that an act may have effects in the forum." *Lovelady*, 544 F.3d at 1287.

Second, a court may also apply a traditional minimum contacts-purposeful availment

analysis. *See Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775-77 (1984) (in a case involving

libel claims, applying the traditional minimum contacts test). The Eleventh Circuit applies the

traditional minimum contacts test for purposeful availment analysis in lieu of, or in addition to, the

"effects test" in cases involving intentional torts. *See, e.g., S.E.C. v. Carrillo,* 115 F.3d 1540, 1542

(11th Cir. 1997) (applying the traditional minimum contacts test in a case involving intentional tort

claims of securities fraud).

Under the traditional minimum contacts test, courts assess the nonresident defendant's

contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause

of action; (2) involve some act by which the defendant purposefully availed himself of the

privileges of doing business within the forum; and (3) are such that the defendant should

reasonably anticipate being haled into court in the forum. *Id*. In performing this analysis, the court

identifies all contacts between a nonresident defendant and a forum state and asks whether,

individually or collectively, those contacts satisfy these criteria. *Id*.

The mere generalized exploitation of an allegedly infringing work into the stream of commerce does not amount to purposeful availment. *Kernel Records* Oy, 2010 WL 2812565, at *11 (citing *Tomashevsky v. Komoro Printing Mach. Co., Ltd*., 715 F. Supp. 1562, 1565 (S.D. Fla. 1989) ("the plaintiffs have shown no evidence that any of the distributors directed their sales at Florida...the resale to the Florida purchaser here was not a purposeful contact by [defendant]."); *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, 814 F. Supp. 1058, 1066 (M.D. Fla. 1993) (noting that "there is no indication that [defendant] designed the product for the Florida market, or established marketing channels for the product in Florida."). Allegations that a plaintiff "should have known" that an allegedly infringing song would be distributed in Florida are not sufficient to allege purposeful availment. *Kernel Records*, 2010 WL 2812565, at *11 (citing *Gifford v. Thinking Outside, LLC, KSQ*, 506 F. Supp. 2d 1104, 1108 (N.D. Fla. 2007) (finding no purposeful availment because once the defendant passed on its product to a third party, its control over the product was nonexistent)).

### (3)    Fair Play And Substantial Justice.

The exercise of personal jurisdiction must also comport with fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 320. In this analysis, courts in the Eleventh Circuit consider the following factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *Lovelady*, 544 F.3d at 1288. "Minimum requirements of 'fair play and substantial justice' may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities." *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990) (affirming dismissal because the due process clause did not permit the exercise of personal jurisdiction over defendant in Florida for the alleged libel in the magazine that was distributed in Florida, as well as in other states).

### 2.    Federal Rule Of Civil Procedure 12(b)(3): Improper Venue.

Even if a court determines that a defendant is subject to personal jurisdiction in Florida, the court may still dismiss for improper venue. The federal venue statute, 28 U.S.C. § 1391(b), provides that venue is proper in (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is

LA131670313

situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). This statute does not provide a basis for venue in this District.

Venue turns upon the relevant activities of the defendants, not of the plaintiff. *Watson v. Community Educ. Ctrs,, Inc.*, No. 2:10–cv–00778–36SPC, 2011 WL 3516150, at *1 (M.D. Fla. Aug. 11, 2011) (citing *Hemispherx Biopharma, Inc. v. Midsouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009)). The court considers whether the relevant actions or omissions having a "close nexus" to the venue selected by the plaintiff. *Id.* at *2 (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)); *Rosenberg v. DVI Receivables, XIV, LLC*, Case No. 13-CV-23004-KMW, slip op. at 11 (S.D. Fla. Sept. 26, 2014) ("[I]n addressing this question the Court must ask what acts or omissions by the defendant gave rise to the lawsuit and consider where they occurred.").

Once a defendant moves to dismiss a claim for improper venue, the plaintiff bears the burden of demonstrating that the venue it selected is proper. *Id.* at 10. If the facts of the complaint are contradicted by the defendant, the court may examine facts outside of the complaint to determine whether venue is proper. *Aung Lin Wai v. Rainbow Holdings,* 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).

In reviewing a motion to dismiss under Rule 12(b)(3), the court accepts the facts alleged in the complaint as true, but ''only to the extent that they are uncontroverted by defendant['s] affidavits.'' *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012) (internal quotation marks omitted).

When venue is improper, 28 U.S.C. § 1406 grants the district court the authority to dismiss the action. Specifically, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss .…" 28 U.S.C. § 1406(a).

**B.     This Court Lacks Personal Jurisdiction Over DnG.**

**1.      No General Jurisdiction Under Fla. Stat. § 48.193(2).**

Section 48.193(2), based upon a defendant's alleged "general and substantial activity in Florida" requires that a defendant be "engaged in substantial and not isolated activity within this state .…" Fla. Stat. § 48.193(2).  Plaintiffs have failed to plead any facts that would give rise to jurisdiction under section 48.193(2), nor could they.

As Plaintiffs admit, DnG is a Delaware limited liability company (AC, [Dkt. 34 ¶ 14]) with

12

its sole place of business in Southern California. Duran Decl. ¶ 2.  DnG has no offices, no employees, no agents or business representatives located in Florida, does not conduct, engage in, or carry on any business or business venture in Florida, is not authorized or registered to carry on any business in Florida, pays no taxes in Florida, owns no real or other property in Florida nor leases any real property in Florida, and does not have a mailing address, telephone number, or bank account in Florida. *Id.* ¶¶ 3-5.

The Amended Complaint filed in this action merely asserts that Defendant KMA utilized the services of DnG in connection with the More Soul Commercial that includes a portion of *Party Rock Anthem*. AC, [Dkt. 34] ¶ 14. None of the licenses that DnG entered into for *Party Rock Anthem* on behalf of KMA were negotiated or executed in Florida (Duran Decl. ¶ 7), and no work on the More Soul Commercial done by DnG employees, or by others involved in the production of that commercial, was done in Florida. *Id.* ¶ 8. Thus there is no "general and substantial activity in Florida" (Fla. Stat. § 48.193(2)) that would permit the exercise of general personal jurisdiction over DnG. *See F & G Research, Inc.*, 262 F. Appx. at 279 (affirming dismissal because defendant did not conduct business in Florida, had no offices, employees, assets or leases in Florida, and there had been no showing that defendant engages in substantial and not isolated activity within Florida).

**2.      No Specific Jurisdiction Under Fla. Stat. § 48.193(1)(a)(2) Or 48.193(1)(a)(6).**

This Court also lacks jurisdiction over DnG pursuant to sections 48.193(1)(a)(2) and 48.193(1)(a)(6) of Florida's long-arm statute.

**(a)      No Specific Jurisdiction Under Fla. Stat. § 48.193(1)(a)(2).**

Section 48.193(1)(a)(2) confers jurisdiction over a non-resident for committing a tortious acts within the state. Fla. Stat. § 48.193(1)(a)(2). Plaintiffs have not alleged that DnG committed any tortious acts in Florida, nor can they.  *See* Duran Decl. ¶¶ 7-9 (advertising services in connection with More Soul Commercial rendered in Southern California, licenses for *Party Rock Anthem* negotiated and executed in Southern California, all creative and production work for More Soul Commercial done in Southern California).

Where Florida courts have applied section 48.193(1)(a)(2) to foreign torts causing injury within Florida, that conduct was directed at Florida residents, corporations, or property, and the harm was felt exclusively or primarily in Florida. *See, e.g., Int'l Harvester Co.*, 460 So.2d at 582. Plaintiffs have not alleged such conduct by DnG, nor can they. *See* Duran Decl. ¶¶ 7-9 (advertising services in connection with More Soul Commercial rendered in Southern

LA131670313

California, licenses for *Party Rock Anthem* negotiated and executed in Southern California, all creative and production work for More Soul Commercial done in Southern California, DnG's work is on a "work made for hire" basis and KMA exclusively owns the More Soul Commercial, including the copyright in and to that commercial, DnG has no control over when, where, or how often KMA exhibited the More Soul Commercial).

Moreover, because the licenses DnG entered on KMA's behalf for *Party Rock Anthem* were negotiated and executed in California (*see* Duran Decl. ¶ 7), the alleged tort occurred in California, not Florida. *Kernel Records Oy*, 2010 WL 2812565, at *5; *see also Barrocos of Fla., Inc.*, 2012 WL 1622988, at *4 (where an injury from alleged copyright infringement "was arguably felt in Florida from a defendant's out-of-state tortious conduct, [but] the in-state injury to [plaintiff] rests on attenuation upon attenuation", that in-state injury is insufficient to support jurisdiction.).

Plaintiffs therefore have not met their burden – and cannot meet their burden – under section 48.193(1)(a)(2).

     **(b)**      **No Specific Jurisdiction Under Fla. Stat. § 48.193(1)(a)(6)(a).**

Section 48.193(1)(a)(6)(a) (the subsection under which Plaintiffs claim jurisdiction, see AC, [Dkt. 34] ¶ 3) confers jurisdiction over a non-resident causing injury to persons or property within the state only if, at or about the time of the injury, the defendant was engaged in solicitation or service activities within the state. Fla. Stat. § 48.193(1)(a)(6)(a).

Plaintiffs do not allege the existence of any facts (and there are none) supporting the requirement that DnG was "engaged in solicitation or service activities within the state" at the time of the alleged tort. Jurisdiction fails under section 48.193(1)(a)(6)(a) for this reason alone.

Even if, however, Plaintiffs further amended their complaint, they could not establish jurisdiction under this section. Where, as here, the alleged injury is merely economic, i.e., "unaccompanied by physical injury or property damage", there is no personal jurisdiction under section 48.193(1)(a)(6). *See Rogers*, 241 F. App'x at 606; *Sculptchair*, 94 F.3d at 629 ("mere economic injury without accompanying personal injury or property injury does not confer personal jurisdiction over nonresident defendants under [former] section 48.193(1)(f)" for their "soliciting and/or marketing efforts in Florida"). This is true for copyright claims, like that alleged against DnG. *See Barrocos*, 2012 WL 1622988, at * 4 (finding former section 48.193(1)(f) inapplicable because plaintiff's alleged injury is "solely to its pocket book").

Plaintiffs have accordingly failed to meet their burden – and cannot meet their burden – to assert jurisdiction against DnG based on any provision of Florida's long-arm statute.

**3.      Even If There Were Jurisdiction Under Florida's Long-Arm Statute, Personal Jurisdiction Would Not Comport With Constitutional Due Process.**

Although it is clear that jurisdiction over DnG is not proper under any section of Florida's long-arm statute, even if such jurisdiction was appropriate, this Court still lacks jurisdiction over DnG because the exercise of jurisdiction over DnG would not comport with Constitutional Due Process. Only if both requirements are satisfied may a court exercise personal jurisdiction over a nonresident defendant. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274-75 (11th Cir. 2009). Here, due process is not satisfied because the Plaintiffs' claims do not "arise out of or relate to" DnG's contacts with the forum (because there are no such contacts), DnG has not "purposefully availed" itself of the privilege of conducting activities in Florida, and the exercise of personal jurisdiction would not comport with "traditional notions of fair play and substantial justice." *See Louis Vuitton*, 736 F.3d at 1355.

**(a)      Arising Out Of Or Relating To.**

Plaintiffs have not alleged that DnG had any contacts with Florida that could give rise to the alleged tort. And, more importantly, DnG's activities in regards to *Party Rock Anthem* and the More Soul Commercial all took place in California. *See* Duran Decl. ¶¶ 7-8. There is no evidence of any forum-related activities by DnG, and, as discussed above, DnG has no offices, no employees, no agents or business representatives located in Florida, does not conduct, engage in, or carry on any business or business venture in Florida, is not authorized or registered to carry on any business in Florida, pays no taxes in Florida, owns no real or other property in Florida nor leases any real property in Florida, and does not have a mailing address, telephone number, or bank account in Florida. *Id.* ¶¶ 3-5.  *See Kernel Records Oy*, 2010 WL 2812565, at *12 ("the claim asserted by Kernel must arise out of Nelstar's forum-related activities. There is no evidence, however, of any forum-related activities by Nelstar .... As mentioned previously, Nelstar has no offices in Florida, no employees in Florida, and has never advertised, conducted business or solicited business in Florida."). The fact that the More Soul Commercial may have aired in Florida is far from being the "'but-for' cause of the [alleged] tort" or providing DnG with "'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign.'" *Oldfield*, 558 F.3d at 1222–23 (quoting *Burger King*, 471 U.S. at 472).  Additionally, as noted in the Duran Declaration, it is KMA – not DnG – that

contracts with third parties with respect to the "media buys" for the exhibition of the More Soul Commercial. Such "unilateral acts of a third party are insufficient to allow a Court to exercise personal jurisdiction over [defendant]." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* No. 1:06-CV-1678-JTC, 2009 WL 1035248, at *4 (N.D. Ga. Apr. 9, 2009).

           **(b)**     **Purposeful Availment.**

Plaintiffs have further not alleged facts supporting either the minimum contacts or the effects test for purposeful availment.

To satisfy the "effects test", Plaintiffs would have to allege and demonstrate that this Court's "exercise of jurisdiction over [DnG]…[is] based on intentional conduct by [DnG] that creates the necessary contacts with the forum." *Walden*, 134 S.Ct. at 1123. Plaintiffs have not, and cannot, plead facts evidencing any one of these factors. Rather, any claim to jurisdiction would be based on Plaintiffs' contacts with this District, which are not relevant to the minimum contacts inquiry. *Id.* at 1124-25.

DnG's alleged tort – though it is entirely unclear from the Amended Complaint what DnG's alleged wrongdoing was – was presumably its involvement in producing the More Soul Commercial that included a portion of the allegedly infringing *Party Rock Anthem*. *See* AC, [Dkt. 34] ¶ 14. Mere negligent use, however, of a copyrighted protected work will not satisfy the "intentional" prong of the effects test. *See Edwards*, 2011 WL 5416190, at *10 (holding that because publisher "had no reason to believe that use of" the article at issue would constitute infringement, publication "falls within the category of negligent use of a protected work that will not satisfy the first prong of the effects test") (citing *Lovelady*, 544 F.3d at 1286 n.6). Here, DnG properly entered into license agreements on behalf of KMA with the parties that controlled the copyrights for *Party Rock Anthem*.

Plaintiffs have further failed to plead (and cannot plead) that DnG's alleged tort was "aimed" at Florida or caused harm that DnG should have anticipated would be suffered in Florida. For a court to exercise personal jurisdiction over a non-resident defendant, the defendant's acts must be "expressly aimed at an individual in the forum." *Edwards*, 2011 WL 5416190, at *10. "[M]ere untargeted action or a fortuitous result" will not satisfy personal jurisdiction. *Id*. As set forth above, the relevant license agreements were executed in California, and all production work on the More Soul Commercial took place in California. Duran Decl. ¶¶ 7-8. The State of Florida and its citizens were not the targets of any of DnG's relevant actions, nor could DnG have

anticipated that anything it did would have caused harm in Florida. Even if DnG could speculate that harm could have occurred in Florida (which is neither alleged by Plaintiffs nor likely) "something more" is required under the effects test "than the mere 'foreseeability' that an act may have effects in the forum." *Lovelady*, 544 F.3d at 1287. Indeed, even where a defendant is aware that a copyright plaintiff lived in Florida, such knowledge, "standing alone, [is insufficient] to satisfy the second and third prong of the effects test." *Edwards*, 2011 WL 5416190, at *11. Plaintiffs have therefore failed to satisfy the effects test.

Nor have Plaintiffs alleged sufficient minimum contacts to demonstrate that DnG purposefully availed itself of the privileges of conducting business in Florida. Under the minimum contacts test, courts assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton*, 736 F.3d at 1355. Here, DnG has no contacts with Florida that could relate to Plaintiffs' copyright cause of action against it and could not have "purposefully availed" itself of the privileged of doing business in Florida because it does not conduct business in Florida. *See* Duran Decl. ¶¶ 3-5, 8-9 (DnG has no Florida presence, relevant license agreements negotiated and executed in California, all production of More Soul Commercial in California). As such, it would be wholly unreasonable for DnG to anticipated being haled into court in Florida.

The "mere generalized exploitation of an infringing work into the stream of commerce does not amount to purposeful availment." *Kernel Records Oy*, 2010 WL 2812565, at *11. The case of *Kernel Records Oy v. Mosley* is on point. In *Kernel Records*, the copyright holder plaintiff alleged that because defendant's license agreement with a major record company ultimately resulted in the distribution of the allegedly infringing work throughout Florida, and the record company knew or should have known that the song would be distributed in the Florida market, there was purposeful availment. *Id*. at *11. The court disagreed.

> Allegations that [defendant] 'should have known' the song would be distributed in Florida is not sufficient to allege purposeful availment. [N]either [defendant]'s agreement with EMI nor EMI's agreement with Interscope mentioned Florida, nor was at directed at the Florida market in particular. And after issuing the mechanical license for [the allegedly infringing work] to EMI, [defendant] had no involvement in Interscope's manufacture and distribution

17

activities because it was incapable of directing any sales of [the allegedly infringing work] to Florida customers.

*Id.*; *see also Gifford*, 506 F. Supp. 2d at 1108 (finding no purposeful availment because once the defendant passed on its product to a third party, its control over the product was nonexistent). [4] Similarly, here, the license agreements were entered into by DnG on behalf of KMA in California, and once the More Soul Commercial was produced, DnG had "no involvement" in the distribution or exhibition of the commercial. Duran Decl. ¶¶ 9-10. DnG therefore does not have sufficient minimum contacts to give rise to personal jurisdiction.

> (c)   **Fair Play And Substantial Justice.**

Even if the first and second prongs of the Due Process analysis allowed for the exercise of personal jurisdiction over DnG, the third prong militates against a finding of personal jurisdiction.

Courts in the Eleventh Circuit consider the (1) burden on the defendant; (2) forum's interest in adjudicating the dispute; (3) plaintiff's interest in obtaining convenient and effective relief; and (4) judicial system's interest in resolving the dispute. *Lovelady*, 544 F.3d at 1288. All factors weigh against the exercise of personal jurisdiction.

First, litigating in Florida would be extremely burdensome on DnG because it has no offices, employees, or operations in Florida, and therefore all its witnesses would be in California. *See* Duran Decl. ¶¶ 3-4; *Kernel Records*, 2010 WL 2812565, at *13 (finding that the exercise of jurisdiction is "neither reasonable nor fair" even though the non-resident defendant shared counsel with another defendant). Second, given the minimum contacts DnG

---

[4]    *See also Robinson v. Arista Records, Inc.*, No. 3:04-CV-00431-TMR-SLO, Dkt. 21, slip op. at 10–16 (S.D. Ohio Aug. 5, 2005) and *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472 (6th Cir. 2003), discussed by the court in *Kernel Records*. 2010 WL 2812565, at *12. In *Robinson*, it was undisputed that the publishing defendant was "not a resident of the state of Ohio, does not maintain an office in Ohio, does not transact or conduct any business in Ohio, does not advertise in Ohio or cause others to advertise in Ohio, and does not supply services or goods in Ohio." *Robinson*, slip op. at 11. Although the defendant issued two mechanical licenses to a record company, who ultimately sold the songs in Ohio, the court held that the publishing defendant had neither reached into Ohio nor purposefully availed itself of acting in Ohio. *Id.* at 15. Significantly, the court noted the contract's failure to require the defendant to perform any act in the forum or to reach into the forum. *Id.*

Similarly, in *Bridgeport Music*, the court concluded that because the defendant publisher's licensing agreement lacked "an affirmative obligation upon the third party to distribute [the publisher's] compositions in [the forum]." 327 F.3d at 480. Therefore, "[the publisher defendant's] knowledge that [the record company] was likely to distribute [the publisher's] compositions nationally, coupled with its lack of objection to Tennessee sales … is insufficient conduct upon which to predicate purposeful availment." *Id.*

18

has with Florida, "the forum state's interest in adjudicating the dispute" between Plaintiffs and DnG is minimal. *See Kernel Records*, 2010 WL 2812565, at *13 ("considering the very few contacts [defendant] has with Florida, the state of Florida's interest in the issue is limited"). Third, while Plaintiffs have an interest in obtaining effective relief, given the minimal role of DnG in the alleged infringement (even Plaintiffs do not make any specific allegations with respect to DnG), and DnG's total absence from Florida, jurisdiction is improper. *See Madara*, 916 F.2d at 1519 (plaintiff "has a strong interest in obtaining effective relief, particularly because the statute of limitations may have run in many other potential fora. However, suing in Florida is not convenient for [defendant], a California resident."). Finally, the judicial system has little or no interest in resolving a dispute between Florida Plaintiffs and a California defendant who has a minimal involvement in the alleged wrongdoing, and where Plaintiffs can obtain relief from any one of ten other defendants named in the action.

In sum, there is no personal jurisdiction over DnG in this forum because Plaintiffs cannot satisfy Florida's long-arm statute (this finding alone ends the inquiry) or the demands of Constitutional Due Process. DnG's Motion to Dismiss the single claim against it pursuant to Rule 12(b)(2), must therefore be granted.

**C.      Even If This Court Had Personal Jurisdiction Over DnG, Venue Is Improper.**

All of DnG's activities related to *Party Rock Anthem* and the More Soul Commercial in which a portion of *Party Rock Anthem* is performed, took place in California, not Florida. DnG's advertising services for the creation and production of the More Soul Commercial, pursuant to its agreement with KMA, were to be rendered in Southern California. Duran Decl. ¶ 7. These services included the negotiation of a synchronization license with Defendant Kobalt and a master use license with Universal Music Enterprises, for the inclusion of a portion of *Party Rock Anthem* in the More Soul Commercial. *Id*. DnG entered into both licenses on behalf of KMA and both licenses were negotiated and executed by DnG employees in Southern California. *Id*. Further, all of DnG's creative and production work for the More Soul Commercial was done in Southern California and the More Soul Commercial was shot at exterior and stage locations in Southern California. *Id*. ¶ 8. No work on the More Soul Commercial done by DnG employees, or by others involved in the production of that commercial, was done in Florida. *Id*.

While Plaintiffs allege in conclusory fashion that "a substantial part of events giving rise to the claim involved in this action occurred in this District" (AC, [Dkt. 34] ¶ 4), they fail to – and

cannot – meet their burden of demonstrating proper venue (*Watson*, 2011 WL 3516150, at *2) because venue "focuses on [the] relevant activities of the defendants, not of the plaintiff" (*id.* at *1), and none of DnG's "relevant activities" took place in this District.[5] Venue is therefore improper in this District and the Court should dismiss the action with respect to DnG pursuant to 28 U.S.C. § 1406(a).

## IV.    <u>CONCLUSION</u>

This Court lacks personal jurisdiction over Defendant DnG. This District is further the improper venue in which to assert the claims alleged in Plaintiffs' Amended Complaint against DnG. The action should therefore be dismissed in its entirety against DnG.

<u>Local Rule 7.1(a)(3) Certification</u>

DnG's counsel has conferred with all parties who may be affected by the relief sought in this Motion in a good faith effort to resolve the issues raised in the Motion. Plaintiffs' counsel advised that she opposes this Motion.

Dated:  October 27, 2014

GREENBERG TRAURIG, P.A.
*Attorneys for Defendants Stefan Kendal Gordy, Skyler Austen Gordy, Kobalt Music Publishing America, Inc., Kia Motors America, Inc., NU80s Music, LLC, LMFAO, LLC, Party Rock, LLC, Foo & Blu, LLC, and David & Goliath, LLC*

333 Avenue of the Americas
Miami, FL 33131
Tel: 305-579-0500; Fax: 305-579-0717

By:  /s/ *VINCENT H. CHIEFFO*
VINCENT H. CHIEFFO
(Admitted *Pro Hac Vice*)
chieffov@gtlaw.com

By:  /s/ *BARRY L. ROTHBERG*
BARRY L. ROTHBERG
Florida Bar No. 0160873
rothbergb@gtlaw.com

---

[5]    While Plaintiffs only specifically allege that venue is proper pursuant to 28 U.S.C. § 1391(b)(2) (*see* AC, [Dkt. 34], "a substantial part of events giving rise to the claim involved in this action occurred in this District"), venue is also improper under sections 1391(b)(1) and (b)(3). Section 1391(b)(1) does not apply because not all Defendants are residents of Florida (indeed, it does not appear that any Defendant is a resident of Florida). Section 1391(b)(3) also does not apply because there is another district in which the action may otherwise be brought.

LA131670313

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/EFC or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jonathan L. Gaines, Esq.
Karen Linda Stetson, Esq.
GrayRobinson
1221 Brickell Avenue
Miami, FL 33131
Tel: 305-416-6880
Fax: 305-461-6887
Email: jgaines@gray-robinson.com; karen.stetson@gray-robinson.com
Counsel for Plaintiffs


By:   *s/Barry Rothberg*
　　　　Barry L. Rothberg