**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-24700-CIV-WILLIAMS-SIMONTON**

WILLIAM L. ROBERTS, II p/k/a RICK ROSS )
and ANDREW HARR and JERMAINE )
JACKSON collectively p/k/a THE RUNNERS, )
  )
  Plaintiffs, )
  )
v. )
  )
STEFAN KENDAL GORDY and SKYLER )
AUSTEN GORDY collectively p/k/a LMFAO, )
KOBALT MUSIC PUBLISHING AMERICA, )
INC., a Delaware corporation, KIA MOTORS )
AMERICA, INC., a California corporation, )
DAVID & GOLIATH, LLC, a Delaware limited )
liability company, DAVID JAMAHL )
LISTENBEE p/k/a GOON ROCK, NU80s )
MUSIC, LLC, a California limited liability )
company, LMFAO, LLC, a California limited )
liability company, PARTY ROCK, LLC, a )
California limited liability company, FOO & BLU, )
LLC, a California limited liability company, )
  )
  Defendants. )
  )
_____ )

**DEFENDANTS' BRIEF RELATING TO THE RESPONSE FROM THE
REGISTER OF COPYRIGHTS**

Pursuant to this Court's February 9, 2016 Order [Dkt. 388], Defendants submit this supplemental brief relating to the January 27, 2016 response from the Register of Copyrights [Dkt. 383-1].

LA132471697

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................ 1

II.  PROCEDURAL POSTURE ........................................................................................... 1

III.  ARGUMENT .................................................................................................................. 2

   A.  Plaintiffs' Case Must Be Dismissed Because A Valid Copyright Registration Is
       A Mandatory Element Of A Copyright Infringement Claim. .................................. 2

      1.  A Valid Copyright Registration Is A Mandatory Element Of A
          Copyright Infringement Claim.................................................................. 2
      2.  The Existence Of A Valid Copyright Registration Can Be Raised *Sua
          Sponte*. ..................................................................................................... 4
      3.  Section 411(b) Of The Copyright Act Does Not Require That An
          Applicant Intended To Deceive The Copyright Office To Find That A
          Registration Is Invalid. ............................................................................ 5

   B.  The Register's Opinion That None Of Plaintiffs' Three Alleged Copyright
       Registrations Comply With Statutory Requirements Is Entitled To Deference
       From This Court And Should Be Followed By This Court. ...................................... 8

   C.  Because A Valid Copyright Registration Is A Precondition To A Lawsuit And
       Plaintiffs Have Already Asked The Court For Judgment, It Is Too Late To
       Now Attempt Any Cure By Filing An Application For A  Supplemental
       Registration. ......................................................................................................... 10

   D.  Even If It Were Not Too Late To Cure Plaintiffs' Deficient Copyright
       Registrations, It Is Highly Doubtful That A Supplemental Registration Could
       Correct The Material Misstatements In Plaintiffs' Copyright Registrations. ............ 11

   E.  Even If A Supplemental Registration Could Cure The Material Misstatements
       In Plaintiffs' Copyright Registrations, The Effective Date Of The Corrected
       *Hustlin'* Registration Would Be The Effective Date Of The Supplemental
       Registration, *Not* The Date Of The Prior Invalid Registration(s). ............................ 14

   F.  The Mandatory Registration Requirement To Pursuing A Copyright
       Infringement Claim Advances Important Congressional Objectives........................ 15

IV.  CONCLUSION ............................................................................................................. 15

LA132471697

# TABLE OF AUTHORITIES

**Federal Cases**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*,
   747 F.3d 673 (9th Cir. 2014) ...................................................................8

*Brooks-Ngwenya v. Indianapolis Pub. Sch.*,
   564 F.3d 804 (7th Cir. 2009) ...................................................................4

*Burruss v. Zolciak-Biermann*,
   No. 1:13-CV-789-WSD, 2013 WL 5606667 (N.D. Ga. Oct. 11, 2013) ...................................4

*BWP Media USA, Inc. v. A.R. Comm'ncs, LLC*,
   No. 6:14-CV-120-ORL-22KR, 2014 WL 5038590 (M.D. Fla. Oct. 6, 2014) ..........................5

*Chere Amie, Inc. v. Windstar Apparel, Corp.*,
   191 F. Supp. 2d 343 (S.D.N.Y. 2001) ...................................................................6

*Computer Assocs. Int'l v. Altai, Inc.*,
   775 F. Supp. 544 (E.D.N.Y. 1991) ...................................................................14

*Curington v. UMG Recordings, Inc.*,
   No. 1:10-CV-890, 2011 WL 3568278 (M.D.N.C. Aug. 12, 2011) ...........................................4

*Davis v. Tampa Bay Arena, Ltd.*,
   No. 8:12-CV-60-T-30MAP, 2012 WL 2116136 (M.D. Fla. June 11, 2012) ..........................3

*DeliverMed Holdings, LLC et al. v. Schaltenbrand, et al.*,
   Nos. 10-cv-684-JPG-DGW, 10-cv-685-JPG-DGW (S.D. Ill. Jan. 23, 2014) ..........................12

*DeliverMed Holdings, LLC v. Schaltenbrand*,
   734 F.3d 616 (7th Cir. 2013) ...................................................................6, 7, 12

*Determined Prods., Inc. v. Koster*,
   No. C 92-1697 BAC, 1993 WL 120463 (N.D. Cal. April 13, 1993) ...................................12

*Dowbenko v. Google, Inc.*,
   582 F. App'x 801 (11th Cir. 2014) ...................................................................2, 3, 4

*Eckes v. Card Prices Update*,
   736 F.2d 859 (2d Cir. 1984) ...................................................................6

*Fam. Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*,
   896 F. Supp. 2d 223 (S.D.N.Y. 2012) ...................................................................7, 12

*GlobalOptions Services, Inc. v. N. Am. Training Group, Inc.*,
   No. 6:14-CV-2048-ORL, 2015 WL 5474328 (M.D. Fla. Aug. 19, 2015) ...........................10

*Habersham Plantation Corp. v. Art & Frame Direct, Inc.*,
   No. 10-61532-CIV, 2011 WL 4064087 (S.D. Fla. Sept. 13, 2011) ...................................3, 4

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir. 2014) ...................................................................8

LA132471697

*K-Beech, Inc. v. Does 1-29*,
  No. CV 11-3331 JTB ETB, 2011 WL 4401933 (E.D.N.Y. Sept. 19, 2011) ...........................4

*Kernel Records Oy v. Mosley*,
  694 F.3d 1294 (11th Cir. 2012) .................................................................................3, 10, 11

*Latimer v. Roaring Toyz, Inc.*,
  601 F.3d 1224 (11th Cir. 2010) ...........................................................................................3

*Marc Anthony Builders, Inc. v. Javic Props., LLC*,
  No. 8:11-CV-00432-EAK-AEP, 2011 WL 2709882 (M.D. Fla. July 12, 2011)..................3, 4

*Montgomery v. Noga*,
  168 F.3d 1282 (11th Cir. 1999) ...........................................................................................3

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*,
  No. 09 CV 2669 LAP, 2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012) ...................................15

*Olem Shoe Corp. v. Wash. Shoe Co.*,
  No. 09-23494-CIV, 2010 WL 3505100 (S.D. Fla. Sept. 3, 2010)..........................................12

*Olem Shoe Corp. v. Wash. Shoe Co.*,
  No. 09-23494-CIV, 2011 WL 6202282 (S.D. Fla. Dec. 1, 2011)...........................................12

*Olem Shoe Corp. v. Wash. Shoe Corp.*,
  591 F. App'x 873 (11th Cir. 2015) .......................................................................................8

*Patrick Collins, Inc. v. John Does 1-7*,
  No. 12 CV 2963 VB, 2012 WL 1889766 (S.D.N.Y. May 24, 2012) .......................................4

*Psihoyos v. John Wiley & Sons, Inc.*,
  No. 11 CIV. 1416(JSR), 2011 WL 5980423 (S.D.N.Y. Nov. 29, 2011) .................................4

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010)...............................................................................................3, 4, 11, 15

*Russ Berrie & Co., Inc. v. Jerry Elsner Co.*,
  482 F. Supp. 980 (S.D.N.Y. 1980).......................................................................................6

*Santrayall v. Burrell*,
  993 F. Supp. 173 (S.D.N.Y. 1998).......................................................................................6

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944)..............................................................................................................8

*St. Luke's Cataract & Laser Institute, P.A. v. Sanderson*,
  573 F.3d 1186 (11th Cir. 2009) .......................................................................................7, 11

*Tattoo Art., Inc. v. TAT Int'l, LLC*,
  794 F. Supp. 2d 634 (E.D. Va. 2011) ...................................................................................5

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)..............................................................................................................8

*Watson v. K2 Design Grp., Inc.*,
  No. 15-CIV-61020, 2015 WL 4720797 (S.D. Fla. Aug. 6, 2015) ..........................................3

LA132471697

## Federal Statutes

17 U.S.C. § 101 ................................................................................................................9

17 U.S.C. § 411(a) .....................................................................................................2, 3, 4

17 U.S.C. § 411(b) ..................................................................................................5, 7, 8, 9

17 U.S.C. § 411(b)(1) .......................................................................................................1, 5

17 U.S.C. § 411(b)(1)(A) ....................................................................................................7

17 U.S.C. § 411(b)(1)(B) .........................................................................................6, 8, 11

17 U.S.C. § 411(b)(2) ......................................................................................................5, 7

17 U.S.C. § 412(1) ..............................................................................................................3

17 U.S.C. § 412(2) ..............................................................................................................3

Pub. L. 105-304, Oct. 28, 1998, 112 Stat 2860 ................................................................15

Pub. L. 110-4-3, Oct. 13, 2008, 122 Stat. 4257 .................................................................5

## Regulations

37 C.F.R. § 202(a)(3) ........................................................................................................13

37 C.F.R. § 202.3(a)(3) .....................................................................................................13

37 C.F.R. § 202.3(b)(11) .....................................................................................................8

37 C.F.R. § 202.3(c)(2)(iii) .................................................................................................9

## Other Authorities

*Compendium II of Copyright Office Practices*, (2d ed. 1984)

§ 409(8) ...............................................................................................................................9

§ 606.03 .............................................................................................................................13

§ 621 ....................................................................................................................................9

§ 621.01 .............................................................................................................................12

§ 624.01(f) .........................................................................................................................12

§ 701.02(8) ..........................................................................................................................9

§ 904(1) ...............................................................................................................................9

§ 904(5) ...............................................................................................................................9

§ 904(6) ...............................................................................................................................9

§ 906.03 ...............................................................................................................................9

§ 1507.01(b) ......................................................................................................................13

§ 1507.07(a) ......................................................................................................................12

LA132471697

§ 1507.08(d) ............................................................................................................................12

§ 1507.12 ................................................................................................................................13

*Compendium III of Copyright Office Practices*, (2d ed. 1984)

§ 404 ......................................................................................................................................13

§ 602.4(D) ................................................................................................................................9

§ 604.2(C) ................................................................................................................................9

§ 612.2 ......................................................................................................................................9

§ 612.3 ......................................................................................................................................9

§ 612.6(A) ................................................................................................................................9

§ 1802.7(C) ............................................................................................................................12

§ 1802.7(G) ............................................................................................................................13

§ 1802.12 ................................................................................................................................14

§1904.2 ......................................................................................................................................9

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (ed. 2015)

§7.16 ........................................................................................................................................15

§7.16[B][3][c] ....................................................................................................................10, 11

§7.18[D][1] ................................................................................................................................8

§7.20 ..........................................................................................................................................7

Paul Goldstein, *Goldstein on Copyright*, §3.3.2 ........................................................................9

LA132471697

## I.    INTRODUCTION

The Register of Copyrights ("Register") has now confirmed that Plaintiffs have failed to satisfy the most basic prerequisite to initiating a copyright infringement lawsuit in the Eleventh Circuit: ownership of a valid copyright registration.

The Register has advised that each of Plaintiffs' three copyright registrations for the single *Hustlin'* work would not have been registered had the Register known of the inaccuracies of the facts set forth in the applications – the truth of which were undeniably known by Plaintiffs. It is irrelevant whether or not Plaintiffs knew that the Register would have refused their registrations had she known of the true facts; what is relevant is that (1) Plaintiffs knew of the true facts but nevertheless included inaccurate information on their applications, and (2) the registrations would have been denied based on the inaccurate information. 17 U.S.C. § 411(b)(1).

In July 2015, Plaintiffs requested that the Court grant summary judgment to Plaintiffs on their claims of copyright infringement. It is now too late for them to even attempt to create valid copyright registrations for purposes of maintaining this action even assuming that the material misrepresentations could be resolved by something other than a new basic registration for *Hustlin'* and cancellation of the prior three invalid registrations, which is not an issue that the Court needs to address at this advanced stage of this case.

 In any event, it appears highly unlikely that Plaintiffs can cure any of their copyright registrations with a supplemental registration. Even if they could, it would be irrelevant at this point in time, as Plaintiffs have still not filed any application for a supplemental registration and have yet to propose a path by which they would be able to correct any of their invalid registrations. Moreover, any future application for a supplemental registration would have an effective date as of the future date on which the Copyright Office received and accepted such supplemental application and associated filing requirements, not the date of any one of the first three registrations.

Plaintiffs did not have a valid copyright registration for *Hustlin'* at the time they filed this lawsuit. Plaintiffs' claims must therefore be dismissed.

## II.    PROCEDURAL POSTURE

In connection with their July 2015 motion for summary judgment on their copyright claims, Plaintiffs admit that three copyright registrations[1] have been filed for the single *Hustlin'* composition

---

[1]    It is noteworthy that in each of Plaintiffs' Complaint, Amended Complaint, and Second Amended Complaint, Plaintiffs did not allege the facts of their three *Hustlin'* registrations, but rather, disingenuously alleged that "*Hustlin'* … is the subject of *a* valid Certificate of Copyright Registration

copyright: PAu 3-024-979, PA 1-334-589, and PA 1-367-972. *See* Dkt. 376 ¶ 6. As set forth in the January 27, 2016 Response of the Register of Copyrights ("Register Response") [Dkt. 383], each of the registrations is invalid.

In the Register Response, the Register confirmed that she would: (1) have refused to register PA 1-367-972 if she had known of prior registration PA 1-334-589; (2) not have refused to register PA 1-334-589 if she had known of prior registration PAu 3-024-979 (assuming that PAu 3-024-979 was actually unpublished, which was not the case); (3) have refused to register PA 1-334-589 and PA 1-367-972 if she had known that the creation date given on the applications were incorrect and the actual date of creation was in 2005; and (4) have refused to register PAu 3-024-979 as an unpublished work if she had known that one of the copyright claimants had distributed phonorecords of the *Hustlin'* composition to numerous radio and/or nightclub disc jockeys for the purpose of playing and/or promoting the composition prior to February 28, 2006 (i.e., around the new year), because the Copyright Office would have considered the work to be published under these facts. *See* Dkt. 383-1 at 5.

Based on the Register Response, it is clear that Plaintiffs do not have a valid copyright registration in *Hustlin'*.

## III.   ARGUMENT

### A.   Plaintiffs' Case Must Be Dismissed Because A Valid Copyright Registration Is A Mandatory Element Of A Copyright Infringement Claim.

#### 1.   A Valid Copyright Registration Is A Mandatory Element Of A Copyright Infringement Claim.

Existence of a valid certificate of copyright registration is a mandatory element of a plaintiff's claim for copyright infringement. 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.");[2] *Dowbenko v. Google, Inc.*, 582 F.

---

issued by the Register of Copyrights …." (emphasis added) Dkt. 1 ¶ 44, Dkt. 34 ¶ 44, Dkt. 158 ¶ 44. It is unclear which of the three registrations Plaintiffs believed to be the "valid Certificate of Copyright Registration" when they made their allegations. However, what is clear is that Plaintiffs sought summary judgment in this case based on the last filed copyright registration (PA 1-367-972) (*see* Dkt. 228 at 4, stating: "Sony/ATV registered *Hustlin'* with the Copyright Office" and citing to the PA 1-367-972 registration), which, as discussed in the Copyright Register's response, is unquestionably invalid for failure to include a correct date of creation and for failure to disclose the prior two registrations. *See* Dkt. 383-1 at 5.

[2]      The absence of a valid registration also precludes a copyright owner from obtaining statutory damages and attorneys' fees for alleged infringements that occurred before the effective date of a

App'x 801, 805 (11th Cir. 2014) ("The Supreme Court recently clarified that . . . § 411(a)'s registration requirement . . . amounts to 'a precondition to filing a claim.'" (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010)); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) ("registration . . . of a United States work is a prerequisite for bringing an action for copyright infringement" (internal quotation marks omitted)); *Watson v. K2 Design Grp., Inc.*, No. 15-CIV-61020, 2015 WL 4720797, at *3 (S.D. Fla. Aug. 6, 2015) ("[T]he explicit language of § 411(a) provides a statutory bar to suit which requires a plaintiff to first obtain registration for the work at issue prior to initiating suit.").

Plaintiffs have the burden of proving ownership of a valid copyright. *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999); *see also Kernel Records Oy*, 694 F.3d at 1301 ("The plaintiff bears the burden of proving compliance with statutory formalities"; registration is a prerequisite for bringing an action for copyright infringement) (citing *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010)). "The Eleventh Circuit follows the so-called 'registration' interpretation of the registration requirement," which "requires a copyright holder to obtain a certificate of registration from the Copyright Office before bringing suit," as opposed to having only submitted an application for registration of a copyrighted work. *Marc Anthony Builders, Inc. v. Javic Props., LLC*, No. 8:11-CV-00432-EAK-AEP, 2011 WL 2709882, at *3 (M.D. Fla. July 12, 2011); *Davis v. Tampa Bay Arena, Ltd*., No. 8:12-CV-60-T-30MAP, 2012 WL 2116136, at *3 (M.D. Fla. June 11, 2012) (dismissing copyright infringement claims based on 215 photographs for which the plaintiff had not obtained a valid copyright registration before filing suit).[3]

---

registration, unless, in the case of a published work, the work is registered within three months after its first publication. 17 U.S.C. § 412(1), (2).

[3]      Therefore, any district court decision within the Eleventh Circuit allowing copyright claims based on unregistered works to proceed is wrongly decided. For example, in *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, No. 10-61532-CIV, 2011 WL 4064087 (S.D. Fla. Sept. 13, 2011), the court denied defendants' motion to dismiss infringement claims based on unregistered works, because the district court interpreted the Supreme Court's decision in *Reed Elsevier* as "specifically" not addressing "whether '§ 411(a)'s registration requirement is a mandatory precondition to suit that . . . district courts may or should enforce sua sponte by dismissing copyright infringement claims involving unregistered works.'" *Habersham*, 2011 WL 4064087, at *1 (quoting *Reed Elsevier*, 559 U.S. at 171). Since *Habersham*, the Eleventh Circuit has made clear that the Supreme Court in *Reed Elsevier* ruled that Section 411's "registration requirement . . . amounts to 'a precondition to filing a claim,'" *Dowbenko*, 582 F. App'x at 805 (quoting *Reed Elsevier*, 559 U.S. at 157) and therefore, "registration" "is a prerequisite to bringing an action for copyright infringement," *Kernel Records Oy*, 694 F.3d at 1301. *See Reed Elsevier*, 559 U.S. at 166 ("Section 411(a) imposes a precondition to filing a claim . . . ."). The district court in *Habersham* apparently overlooked the language in *Reed Elsevier* that the Eleventh Circuit in *Dowbenko* later relied upon, namely: "Section 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's

LA132471697

Indeed, Plaintiffs' specific allegation in their Second Amended Complaint ("SAC") (and prior Complaints) that "Hustlin' … is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights …." [Dkt. 158 ¶ 44] demonstrates that they understood that a valid copyright registration was a mandatory element of their infringement claim. *See, e.g., Curington v. UMG Recordings, Inc*., No. 1:10-CV-890, 2011 WL 3568278, at *2 (M.D.N.C. Aug. 12, 2011) *aff'd*, 468 F. App'x 304 (4th Cir. 2012) (dismissing complaint under Rule 12 where plaintiff failed to allege that work was registered with the Copyright Office).

    2.    The Existence Of A Valid Copyright Registration Can Be Raised *Sua Sponte*.

Because registration of a copyrighted work is a "'mandatory precondition to suit,'" a district court properly considers *sua sponte* whether a plaintiff has met this requirement. *Marc Anthony Builders*, 2011 WL 2709882, at *2; *see Burruss v. Zolciak-Biermann*, No. 1:13-CV-789-WSD, 2013 WL 5606667, at *3 (N.D. Ga. Oct. 11, 2013) (holding that court should dismiss a copyright infringement claim *sua sponte* where the plaintiffs failed to allege that the work was registered with the United States Copyright Office); *Patrick Collins, Inc. v. John Does 1-7*, No. 12 CV 2963 VB, 2012 WL 1889766, at *2 (S.D.N.Y. May 24, 2012) (dismissing copyright infringement claims *sua sponte* for failure to allege that the works were registered before filing suit); *K-Beech, Inc. v. Does 1-29*, No. CV 11-3331 JTB ETB, 2011 WL 4401933, at *2 (E.D.N.Y. Sept. 19, 2011) (same). Indeed, "courts enforce mandatory (though nonjurisdictional) rules—even if the parties do not raise them— in a variety of ways." *Brooks-Ngwenya v. Indianapolis Pub. Sch*., 564 F.3d 804, 808 (7th Cir. 2009).

Even if the Court could not raise the validity issue *sua sponte* – and it clearly can – the fact that Defendants did not specifically allege an affirmative defense of registration invalidity is irrelevant, particularly where Defendants have moved for summary judgment on the basis that Plaintiffs lack standing to sue under any of the *Hustlin'* copyright registrations. *See* Dkt. 230. Because registration is a prerequisite to filing suit, courts have held that the lack of a valid

---

subject-matter jurisdiction." *Reed Elsevier*, 559 U.S. at 157; *see Dowbenko*, 582 F. App'x at 805 (quoting *Reed Elsevier*, 559 U.S. at 157). Instead, the *Habersham* court cited to the Supreme Court's statements later in the *Reed Elsevier* opinion, where the Supreme Court declined to address whether registration is a "threshold condition" that district courts "may or should enforce sua sponte by dismissing copyright infringement claims involving unregistered works." *Reed Elsevier*, 559 U.S. at 171; *see Habersham*, 2011 WL 4064087, at *1 (quoting *Reed Elsevier*, 559 U.S. at 171).

    At least one court has held that *Habersham*'s construction of *Reed Elsevier* is "without merit." *Psihoyos v. John Wiley & Sons, Inc.*, No. 11 CIV. 1416(JSR), 2011 WL 5980423, at *2 (S.D.N.Y. Nov. 29, 2011) (plaintiff's argument that the Supreme Court in *Reed Elsevier* did not hold that "registration is an absolute precondition to suit," was "without merit," in light of the Supreme Court's repeated description of "Section 411(a) as a 'precondition to suit'" (quoting *Reed Elsevier*, 559 U.S. at 155, 166, 171)).

4

registration is not an affirmative defense. *Tattoo Art., Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 656 (E.D. Va. 2011) *aff'd*, 498 F. App'x 341 (4th Cir. 2012) noting that "both pre- and post- *Reed Elsevier* decisions by various courts have considered proof of registration or preregistration to be an element that must be proven by a plaintiff in order to prevail on a copyright infringement claim," and holding that Section 411 does not constitute "an affirmative defense that had to be raised by defendants"). Even if a defendant defaults, an infringement claim must be dismissed if the plaintiff did not satisfy Section 411's registration requirement before filing suit. *BWP Media USA, Inc. v. A.R. Comm'ncs, LLC*, No. 6:14-CV-120-ORL-22KR, 2014 WL 5038590, at *3 (M.D. Fla. Oct. 6, 2014).

In any event, in their answer to Plaintiffs' SAC (the operative complaint), Defendants denied Plaintiffs' allegation that *Hustlin'* was the "subject of a valid" copyright registration. The SAC alleges that "*Hustlin'* … is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights …." Dkt. 158 ¶ 44.[4] In answering paragraph 44, Defendants alleged the information reflected on the three *Hustlin'* registrations, but stated: "except as so alleged, said Defendants lack sufficient knowledge to form a belief as to the truth of the allegations in paragraph 44 of the Second Amended Complaint, and therefore deny them." Dkt. 174 ¶ 44.[5] Defendants therefore expressly denied that *Hustlin'* was the "subject of a valid" copyright registration.

3.   Section 411(b) Of The Copyright Act Does Not Require That An Applicant Intended To Deceive The Copyright Office To Find That A Registration Is Invalid.

A certificate of copyright registration does not satisfy Section 411's requirement if it contains inaccurate information that an applicant included in the "application for copyright registration with knowledge that it was inaccurate," and the "inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). Section 411 requires that a court inquire of the Register of Copyrights whether inaccurate information in a certificate of registration "would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2). The statutory framework makes plain that an applicant need not have known that inaccurate information would have caused the Register to refuse registration for a misrepresentation to invalidate a registration.

Section 411(b) was added to the Copyright Act as part of the Prioritizing Resources and Organization for Intellectual Property Act of 2008. *See* Pub. L. 110-4-3, Title I, § 101(a), Title II, §

---

[4]   Plaintiffs' original Complaint [Dkt. 1] and Amended Complaint  [Dkt. 34] each made an identical allegation.

[5]   Defendants' answers to the Complaint [Dkt. 14] and Amended Complaint [Dkt. 38] were substantively the same. Defendants denied the existence of a valid copyright registration.

209(a)(6), Oct. 13, 2008, 122 Stat. 4257, 4264. Congress expressly chose not to codify the previous common law doctrine of "fraud on the Copyright Office," which some courts interpreted as requiring that an applicant know that information being misrepresented "might have occasioned a rejection of the application." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343, 350 (S.D.N.Y. 2001).[6] Even under this pre-411(b) jurisprudence, other cases held that a knowing misrepresentation of fact that was material (i.e., would have caused the Copyright Office to refuse the registration if it had known of the true facts), was sufficient to invalidate the registration without any proof of fraudulent intent. *See, e.g., Santrayall v. Burrell*, 993 F. Supp. 173, 176 (S.D.N.Y. 1998) (declining to hold copyright registration invalid where the "Court determine[d] that disclosure of the omissions would not cause the Copyright Office to consider rejecting the application", irrespective of whether or not there was fraud); *Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) ("Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action . . .'") (quoting *Russ Berrie & Co., Inc. v. Jerry Elsner Co.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980)).

Courts interpreting the plain statutory language of Section 411(b) have confirmed that intent to deceive the Copyright Office, or knowledge that inaccurate information would affect the Register of Copyright's decision to approve an application, is not required under Section 411(b). In *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616 (7th Cir. 2013), the Seventh Circuit held that an applicant's knowing misrepresentation in a copyright application regarding ownership in a logo transferred to plaintiffs by written agreement was alone sufficient to invalidate the logo's registration. *Id.* at 620-21, 623. Nowhere in its holding did the Seventh Circuit discuss whether the applicant knew or intended that the misrepresentation regarding the written transfer agreement would "have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(B). To the contrary, the Seventh Circuit held that the evidence supported invalidation notwithstanding the applicant's "minimal understanding of copyright principles." *DeliverMed*, 734 F.3d at 623.

---

[6]   It is noteworthy that while Plaintiffs argue that the alleged absence of fraud should save their copyright registrations (even though that is plainly not the law), throughout this litigation, Plaintiffs consistently refused to provide any relevant discovery regarding the information Plaintiffs provided to their attorney (Leonard Zackheim) at the time of filing the first copyright application, including objecting to allowing Mr. Zackheim to testify regarding that information on the basis of the attorney-client privilege. *See* Dkt. 192-1 at 4-5. Indeed, in response to specific document requests requesting such communications, neither Plaintiffs nor Sony/ATV produced a single document regarding the preparation of any of the three copyright registrations.

LA132471697

Misstatements unaccompanied by fraud will invalidate a copyright registration where the "claimant wilfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application." 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.20 (ed. 2015) ("*Nimmer*"); *see also Fam. Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 231 (S.D.N.Y. 2012) ("The fraud requirement does not come into play when material omissions or errors were made in the registration application.").

Eleventh Circuit law following the enactment of Section 411(b) is consistent with *DeliverMed*. In *St. Luke's Cataract & Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186 (11th Cir. 2009), the Eleventh Circuit quoted Section 411(b) as the test for invalidating a copyright registration based on inaccurate information, noting that, consistent with the requirement that an applicant include "inaccurate information . . . with knowledge that it was inaccurate," a level of "scienter" regarding only the information's inaccuracy – ***not*** its ultimate impact on the decision of the Copyright Office – is necessary. *St. Luke's Cataract*, 573 F.3d at 1201.[7] Therefore, Plaintiffs' argument that "there are no allegations in this case of fraud on the Copyright Office" [Dkt. 372 at 1] is irrelevant. Plaintiffs' further argument that ''there is no evidence that any of the filers were aware of other registrations at the time the applications were filed" [Dkt. 372 at 2] – as the Court noted in referring the questions to the Copyright Office – "strains credulity." Dkt. 380 at 3 n.2.

> Moreover, and more damaging to Plaintiffs' argument, each of the registrations identifies the Plaintiffs as authors and lists either Plaintiffs or their companies as claimants. For example, Trac-N-Field Entertainment, LLC, is identified as a claimant on all three registrations. Plaintiffs "Harr and Jackson are the sole owners of Trac N Field and make all decisions concerning their business.'' (DE 228 at 7). Likewise, two of the registrations identify Roberts' companies, 3 Blunts Lit at Once and 4 Blunts Lit at Once as claimants. Plaintiff Roberts is the only owner or member of 3

---

[7]     The Eleventh Circuit's finding in *St. Luke's Cataract* that the evidence before the district court was sufficient for the jury to infer intent to "mislead the Copyright Office" was not a statement that Section 411(b) requires proof of fraud on the Copyright Office. *St. Luke's Cataract*, 573 F.3d at 1203. Rather, an intent to mislead the Copyright Office – which Section 411(b)(1)(A) does not require – necessarily demonstrates that the applicant had the lesser level of "knowledge" that "inaccurate information was included on the application for copyright registration" – which is all that Section 411(b)(1)(A) requires. *See St. Luke's Cataract*, 573 F.3d at 1201 (quoting 17 U.S.C. § 411(b)). By quoting Section 411(b) as the test for invaliding a copyright registration based on inaccurate information, the Eleventh Circuit expressly adopted Congress' statutory framework, which does not require that an applicant have extensive "understanding of copyright principles," *DeliverMed*, 734 F.3d at 623, regarding the effect of inaccurate information for the inaccuracies to invalidate a registration. Rather, the statutory framework makes clear that Congress left for the Register of Copyrights to determine in the first instance what effect the specific inaccurate factual information would have had on a registration: "[T]he court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2).

LA132471697

Blunts Lit at Once and Plaintiff Roberts' publishing d/b/a designee for *Hustlin'* was 3 Blunts Lit at Once (ASCAP) and then 4 Blunts Lit at Once.'' (DE 228 at 3-4).

*Id.*

If Congress intended for Section 411(b) to require proof that an applicant knew the effect that inaccurate information would have on the Copyright Office's response to an application, Congress would have included such a requirement in Section 411(b)(1)(B). It clearly chose not to do so, and Plaintiffs cannot now read such a requirement into the plain words of the statute.

Plaintiffs knew that their statements were inaccurate, and the Copyright Register has confirmed that those misrepresentations were material. That is all that is required.

**B.      The Register's Opinion That None Of Plaintiffs' Three Alleged Copyright Registrations Comply With Statutory Requirements Is Entitled To Deference From This Court And Should Be Followed By This Court.**

As this Court noted, referral to the Register of Copyrights under Section 411(b)(2) is mandatory. Dkt. 380 at 3. The referral process ensures that the Register has the opportunity to advise on what it views as material, i.e., that which would have caused it to refuse a registration had it known the true facts. While the Copyright Register's response may not be binding on the Court, the Eleventh Circuit has held that the Copyright Office's construction of its statute "merits deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) as the copyright law is 'highly detailed' and it is apparent that the Copyright Office 'can bring the benefit of specialized experience to bear on the subtle questions in this case.'" *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 882 n.10 (11th Cir. 2015) (citing *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001)); *see also Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041 (9th Cir. 2014), *as amended* (July 9, 2014), *cert. denied*, 135 S. Ct. 758 (2014) (adopting Copyright Office's reasoning and holding: "When interpreting the Copyright Act, we defer to the Copyright Office's interpretations in the appropriate circumstances."); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673 (9th Cir. 2014) (same). A review of the Register Response demonstrates that full deference should be given to the Register's analysis summarized here, as it is more than reasonable and in compliance with the regulations of the Copyright Office set forth below.

"As a general matter, Copyright Office regulations permit only one registration for the same version of a particular work." Dkt. 380 at 2 (citing *Nimmer* § 7.18[D][1]); *see also* Register Response [Dkt. 383] at 3 (citing 37 C.F.R. § 202.3(b)(11)) and outlining the only four inapplicable exceptions to this rule). Yet "the Court has been presented with three registrations for a single work…[and] [o]n their face, at least two of the registrations contain inaccurate information, namely that no prior

CASE NO.: 1:13-CV-24700-KMW

registration had been made for the same work." Dkt. 380 at 3.

If a work has been published, the Copyright Office will not register the work as unpublished. *Compendium of Copyright Office Practices* (2d ed. 1984) ("Compendium II") § 904(5);[8] *see also* §§ 904(1), 904(6); Compendium III § 612.3. Under the Copyright Act, "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." *Id*. (citing 17 U.S.C. § 101). "In carrying out its registration functions, the Copyright Office understands the actual distribution of (in addition to the mere 'offering to distribute') copies or phonorecords to a group of persons for the enumerated purposes also to constitute a publication. *Id*. (citing Paul Goldstein, Goldstein on Copyright § 3.3.2 (supp. 2011)). *See also* Compendium II § 906.03 (distribution of phonorecords to radio stations for broadcast is publication); Compendium III § 612.2 (same); Compendium II § 409(8) (requiring that the date of publication be indicated on application for copyright registration); Compendium II § 621 (date of first publication required), § 701.02(8) (same); Compendium III § 612.6(A).

In submitting a copyright application, the applicant is "require[d]" to make "[a] declaration that information provided within the application is correct to the best of ... [the applicant's] knowledge." *Id*. (quoting 37 C.F.R. § 202.3(c)(2)(iii)). Generally, the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records." *Id*. (quoting Compendium III § 602.4(D)). The Office "generally does not compare deposit copy(ies) to determine whether the work for which registration is sought is substantially similar to another work" (*id*. (quoting Compendium III § 604.2(C)) or "conduct searches to determine whether the work has been previously registered." *Id.*

Regarding the publication status of a work at the time of application, the Office will not conduct an independent investigation to determine if a work has been published and will generally accept the facts as stated on the application "unless they are implausible or conflict with information provided elsewhere in the registration materials, the Office's records, or other sources of information that are known by the Office" at the time of application. *Id*. (quoting Compendium III §1904.2).

---

[8]     Compendium II is the relevant administrative manual for registrations issued by the Copyright Office between January 1, 1978 and December 22, 2014, and it is available at the Copyright Office's website, http://copyright.gov/history/comp/compendium-two.pdf. Compendium III, *available at* http://copyright.gov/comp3/docs/compendium.pdf,went into effect December 22, 2014, and controls over any conflicts between prior versions of the Compendium. Compendium III at 4-5. There are no material differences between the relevant provisions of Compendium III cited in the Register Response and the prior provisions of Compendium II.

Based on these authorities, 17 U.S.C. § 411(b), and the deference that ought to be given to the Register, it is clear that Plaintiffs lack a valid registration and it is too late for Plaintiffs to try to cure or create the necessary precondition to this lawsuit.

**C.  Because A Valid Copyright Registration Is A Precondition To A Lawsuit And Plaintiffs Have Already Asked The Court For Judgment, It Is Too Late To Now Attempt Any Cure By Filing An Application For A Supplemental Registration.**

Plaintiffs have known of the defects in their copyright registrations, and have done nothing to address them. Since they have asked the Court for judgment in this case, they can no longer create the precondition they needed prior to filing the suit in December 2013, and the Court need not entertain what options may exist for Plaintiffs to correct their deficient copyright registrations. Indeed, while Plaintiffs' counsel suggested at the February 8, 2016 hearing that the material misrepresentations *might* be corrected by a supplemental registration, she admitted that she did not know which of the material misrepresentations could be corrected by a supplemental registration, what the proper procedure would be for doing so, and what the impact of a supplemental registration (if permitted) would be on this case.[9]

In any event, because Plaintiffs have already asked the Court for a judgment on their copyright claims (*see* Dkt. 228) based on their invalid registrations, they cannot now cure those registrations through a supplemental registration. "'As an absolute limit, if the Copyright Office has failed to receive the necessary elements to issue a registration certificate [for a United States work] prior to the time that the court is called upon to issue final judgment, the action must be dismissed.'" *Kernel Records Oy*, 694 F.3d at 1302 (quoting *Nimmer* § 7.16[B][3][c]).[10] Thus even if the Eleventh

---

[9]   As of February 17, 2016, Plaintiffs still have not proposed a path by which they can cure their deficient registrations. In a letter of that date to the Office of the General Counsel that can best be characterized as a law school-style final exam, Plaintiffs' counsel has posed no less than 12 general questions to the Copyright Office inquiring how Plaintiffs might try to cure their invalid registrations, and what the impact of different courses of action might be. Defense counsel was sent a copy only by mail and did not receive it until February 25th. In addition to failing to propose any one particular strategy, Plaintiffs also deprive the Copyright Office of key facts surrounding their registrations and this litigation, including the fact that the Court is considering dismissing this lawsuit based on the Register Response and absence of the required valid copyright registration. As it is not apparent from the letter that Plaintiffs' counsel served the letter on the Court, a copy is attached hereto as Exhibit A.
[10]   The district court in *GlobalOptions Services, Inc. v. N. Am. Training Group, Inc.*, No. 6:14-CV-2048-ORL, 2015 WL 5474328 (M.D. Fla. Aug. 19, 2015) misapplied Eleventh Circuit precedent when it held that a plaintiff satisfies Section 411 as long as the plaintiff "preregister[s] the materials for which it seeks copyright protection by the time the Court reviews the case on summary judgment or the parties proceed to trial." *Id.* at *2. In its holding, the *GlobalOptions* relied upon the Eleventh Circuit's quotation from *Nimmer* in *Kernel Records Oy*, that "'"as an absolute limit, if the Copyright office has failed to receive the necessary elements to use a registration certificate prior to the time that the court is called upon to issue final judgment, the action must be dismissed."'" *GlobalOptions*,

LA132471697

Circuit were not a "registration" jurisdiction (and it clearly is), because Plaintiffs moved for summary judgment in July 2015 and have yet to make any effort to correct their defective registrations (even assuming that they can be corrected), they cannot now seek to create a valid registration. While the issues discussed in sections D and E, immediately below, need not and should not be addressed by this Court, these sections are included to demonstrate that failure to dismiss this action now for Plaintiffs' inability to prove they have any valid registration for the *Hustlin'* copyright, will unnecessarily drag this Court (and Defendants) into further time consuming, complex, and expensive litigation over a thicket of issues that Plaintiffs have needlessly created.

**D.** **Even If It Were Not Too Late To Cure Plaintiffs' Deficient Copyright Registrations, It Is Highly Doubtful That A Supplemental Registration Could Correct The Material Misstatements In Plaintiffs' Copyright Registrations.**

The Register Response confirms that Plaintiffs lacked a valid copyright registration when they filed this lawsuit (and still do not have a valid registration despite asking for judgment in this case). In short, the Copyright Office would not have registered the first claimed copyright registration, PAu 3-024-979, because it was a published work despite the representation that it was unpublished, would have refused registration of subsequent applications PA 1-367-972 and PA 1-334-589 because the dates of creation were incorrect, and would have refused to register PA 1-367-972 if it had known about the work previously registered under PA 1-334-589. *See* Dkt. 383 at 5. In other words, the Copyright Office determined that the misrepresentation that a work is unpublished when it is actually published, that the date of creation was incorrect, and that there are no other copyright registrations for the same work, are material representations because she would have refused registration under 17 U.S.C. § 411(b)(1)(B). *See, e.g.*, *St. Luke's Cataract*, 573 F.3d at 1202 (applicant "acknowledged that the date on several pages of the deposit copy showed that they

---

2015 WL 547328, at *2 (quoting *Kernel Records Oy*, 694 F.3d at 1302 (quoting *Nimmer* § 7.16[B][3][c])). However, neither *Nimmer* nor the Eleventh Circuit stated that a plaintiff satisfies Section 411's requirements so long as the plaintiff obtains registration or preregistration before moving for summary judgment or proceeding to trial. Rather, *Nimmer* merely stated that, under all of the Circuit Court of Appeals' various "viewpoints" on Section 411, a court must absolutely dismiss an infringement action at the time plaintiff seeks judgment if a plaintiff has neither obtained a valid registration nor submitted the necessary application materials to the Copyright Office. *Nimmer* § 7.16[B][3][c]. In *Kernel Records Oy*, because the plaintiff in that case had moved for summary judgment before applying for a copyright registration, his claim had to be dismissed unless the work was "a foreign work exempt from registration." *Kernel Records Oy*, 694 F.3d at 1302 (quoting *Nimmer* § 7.16[B][3][c]). Contrary to *GlobalOptions*' holding, *Kernel Records Oy* affirmed the Eleventh Circuit's longstanding registration approach to Section 411: "[R]egistration . . . of a United States work is a prerequisite for bringing an action for copyright infringement." *Kernel Records Oy*, 694 F.3d at 1301, 1301-02 & n.8 (further holding that nothing in *Reed Elsevier* required it to revisit the registration approach).

11

appeared on the LaserSpecialist.com website before February 15, 2003. Nevertheless, St. Luke's represented to the Copyright Office in its First Application that the date of the first publication of the work being registered was February 15, 2003. The date of the first publication is highly relevant because it affects whether the five-year presumption of validity applies."); *DeliverMed*, 734 F.3d at 623-625 (noting that the Seventh Circuit had "no problem" affirming the district court's holding that applicant's knowing misrepresentation of plaintiffs' ownership in a copyright by written transfer agreement was a "material misrepresentation," but remanding with directions to the district court to inquire of the Register under Section 411(b)(2) whether the Copyright Office would have refused registration based on the inaccurate information); *DeliverMed Holdings, LLC et al. v. Schaltenbrand, et al.*, Nos. 10-cv-684-JPG-DGW, 10-cv-685-JPG-DGW (S.D. Ill. Jan. 23, 2014) (Dkt. 337, Dkts. 338, 339) (Response of the Register of Copyrights, following remand, stating that she would not have registered plaintiffs' copyright because the absence of a written transfer agreement was a material defect in plaintiffs' application; judgment in favor of defendants entered seven days after Response of the Register of Copyrights).

The material misrepresentations that would have caused the Register to refuse Plaintiffs' copyright registrations cannot be corrected with a supplemental registration. After the incorrect registration of a published work as an unpublished work, the error cannot be corrected by a supplementary registration (form CA), but only by a new basic registration. *See* Compendium III § 1802.7(C) (error in previous registration stating that work was unpublished cannot be corrected with supplementary registration, but requires new basic registration);[11] *Family Dollar Stores, Inc.*, 896 F. Supp.2d at 229-34 (registration of published work as an unpublished work is not a valid registration); *Determined Prods., Inc. v. Koster*, No. C 92-1697 BAC, 1993 WL 120463, at *1 (N.D. Cal. April 13, 1993) (same); *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 09-23494-CIV, 2010 WL 3505100 at *4 (S.D. Fla. Sept. 3, 2010) (posing question of whether Register would have registered a work as unpublished if she had known the work had been published); *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 09-23494-CIV, 2011 WL 6202282 at *3 (S.D. Fla. Dec. 1, 2011) (Register "would have refused registration of [a] work as 'unpublished'" because it had been published before date of registration).

---

[11]    The current version of the Compendium (Compendium III) would govern any supplemental registration Plaintiffs attempted to now file, though the relevant provisions of Compendium II similarly provide that the errors in Plaintiffs' registrations cannot be cured through a supplemental registration. *See* Compendium II § 621.01, § 624.01(f) (error in previous registration being for an unpublished work which was in fact published should be done by a new basic registration); Compendium II § 1507.07(a) (published work registered as an unpublished work, new basic registration required), Compendium II § 1507.08(d) example (1) (same).

LA132471697

Like the misrepresentations regarding the publication status of the work and creation date, Plaintiffs' allegation that 3 Blunts was not an authorized claimant of *Hustlin'* because of its administrative dissolution is a material error that cannot be corrected with a supplementary registration.[12] Plaintiffs argued in their motion for summary judgment that because 3 Blunts Lit at Once, LLC was a dissolved entity at the time of the assignment of copyright by Plaintiff Roberts to 3 Blunts and the subsequent assignment of copyright by 3 Blunts to Sony/ATV, "such transfer of rights was legally ineffective and Roberts, therefore, did not part with his copyright to 3 Blunts Lit at Once, LLC." Dkt. 228 at 5. Defendants dispute that 3 Blunts' administrative dissolution affected its ability to acquire rights in *Hustlin'*, but, accepting Plaintiffs' argument as true, under Plaintiffs' reasoning 3 Blunts was not authorized to register PA 1-334-589. *See* 37 C.F.R. § 202.3(a)(3) ("a copyright claimant is either . . . [t]he author of a work; [or a] person or organization that has obtained ownership of all rights under the copyright initially belonging to the author"). The Copyright Office would have refused registration of PA 1-334-589 had it known, as Plaintiffs contend, that 3 Blunts was not an authorized claimant. *See* Compendium III § 404 ("The only parties who are eligible to be the copyright claimant are (i) the author of the work, or (ii) a copyright owner who owns all of the exclusive rights in the work. 37 C.F.R. § 202(a)(3)); Compendium II § 606.03 ("An application for registration can be submitted only by a person entitled to do so. . . . The Copyright Office will refuse to register a claim when it has knowledge that the applicant is not authorized to submit the claim."). This misrepresentation cannot be corrected by a supplementary registration. *See* Compendium III § 1802.7(G) (an applicant should not submit a supplementary registration to correct "a basic registration to a party who is not eligible to be named as a copyright claimant or that the application for the basic registration was filed by a party who was not authorized to register the claim," but should, rather, "assert an adverse claim in the copyright by submitting a new application for a new basic registration on behalf of the party who should have been named as the copyright claimant"); Compendium II § 1507.12 ("If an applicant states that an earlier registration was made without the authorization of a person legally entitled to apply for registration, the Copyright Office will suggest that a complete new registration be made by the applicant. No cross reference will be made on either registration."); *see also* Compendium II § 1507.01(b) ("[A] supplementary registration is not appropriate as an amplification to reflect the ownership, division, allocation, licensing, or transfer of

---

[12]     Plaintiffs conveniently fail to mention this additional defect in their February 17, 2016 letter to the Copyright Office.

13

rights in a work, whether at the time basic registration was made or thereafter.") Through Plaintiffs' own contention, therefore, an additional basis exists for dismissing Plaintiffs' claims.

**E.** **Even If A Supplemental Registration Could Cure The Material Misstatements In Plaintiffs' Copyright Registrations, The Effective Date Of The Corrected *Hustlin'* Registration Would Be The Effective Date Of The Supplemental Registration, *Not* The Date Of The Prior Invalid Registration(s).**

As set forth above, the Court need not concern itself regarding whether or how Plaintiffs' copyright registrations can be corrected because it is clear that they lacked a valid copyright registration at the time this lawsuit was filed. However, even if Plaintiffs made a decision regarding the manner in which they choose to proceed with a supplemental registration, the "effective date of registration [for that supplemental registration] is the date on which an acceptable application and filing fee…have all been received in the Office." Compendium III § 1802.12. Notably, "[t]he effective date of registration for the basic registration and the effective date of registration for the supplementary registration will coexist with each other in the registration record. The Office maintains both records to allow courts to decide whether the changes made by the supplementary registration are material and whether those changes should or should not be deemed effective as of the date that the basic registration was made." *Id.*

Here, the Copyright Register has already determined that the changes that would need to be made by the supplemental registrations (published status, date of creation, existence of prior registrations) are material because she would have refused registration had she known of the true facts. Application of the Compendium in conjunction with the deference due to the Register's opinion requires that any supplemental registration for *Hustlin'* not relate back to the effective date(s) of registration of the first three invalid *Hustlin'* registrations.[13]

Because any supplemental registration would have an effective date long post-dating the filing of this lawsuit, and because the Eleventh Circuit is a registration (not merely application) regime, Plaintiffs' claims in this lawsuit fail.

---

[13]     Allowing any supplemental registration to relate back to the date(s) of the first three *Hustlin'* registrations would also be extremely prejudicial to Defendants, given that the errors were material, this lawsuit was filed over two years ago, and by virtue of the operation of the three-year statute of limitations. *See, e.g., Computer Assocs. Int'l v. Altai, Inc.*, 775 F. Supp. 544, 557 (E.D.N.Y. 1991) *aff'd in part, vacated in part,* 982 F.2d 693 (2d Cir. 1992) (allowing – in an application (not registration) regime – supplemental registration to relate back to date of original registration because errors were merely "technical", resulted in no prejudice, did not affect the evidence or arguments presented at trial, and the three-year statute of limitations had not run as of the effective date of the supplemental registration).

**F.** **The Mandatory Registration Requirement To Pursuing A Copyright Infringement Claim Advances Important Congressional Objectives.**

The Copyright Act of 1976 already included a provision requiring a copyright registration prior to filing a lawsuit. When the United States joined the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention") in 1989, Congress made an exception to that requirement for works originating from Berne member countries other than the United States. *Nimmer* § 7.16. As noted by *Nimmer*, this "compromise was narrowly crafted, so as to largely preserve copyright registrations in order to create a useful public record and the deposit of copyrighted works ancillary to registration in order to ensure an efficient acquisition program for the Library of Congress." *Id.*[14]

While the Supreme Court in *Reed Elsevier v. Muchnick* declined to rule that owning a valid registration prior to initiating a claim is a "jurisdictional requirement" (but confirmed that section 411(a) does impose a necessary "precondition" to copyright claims (*Reed Elsevier*, 559 U.S. at 166)), it nevertheless acknowledged that the "policy goals underlying copyright registration" "promote[] important congressional objectives." *Reed Elsevier*, 559 U.S. at 169, n.9. Specifically, the "statutory requirement in the Act promotes the incentive-based copyright registration system created by Congress." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09 CV 2669 LAP, 2012 WL 1021535, at *4 (S.D.N.Y. Mar. 26, 2012).

In adhering to the Berne Convention and enacting the DMCA, Congress could certainly have done away with the registration prerequisite to a civil suit for works originating from all countries, but expressly chose not to do so in order to incentivize copyright owners to register their works, in large part, because there is inherent value in maintaining (an accurate) public record of works. That policy objective would not be served by allowing this suit to continue without a valid registration.

**IV.**   **CONCLUSION**

The Copyright Register confirmed that Plaintiffs do not own a valid copyright registration for *Hustlin'*, a prerequisite for bringing a copyright infringement claim. It is now too late for Plaintiffs to attempt to create this precondition. The invalid registrations cannot be cured by a supplemental registration, and even if they could, any such supplement would not allow Plaintiffs to maintain this lawsuit. Dismissal is the only course of action.

Dated: February 29, 2016                    GREENBERG TRAURIG, P.A.

---

[14]     The 1998 Digital Millennium Copyright Act ("DMCA") eliminated the loophole allowing Americans to publish in another Berne country and avoid registration. *See Nimmer* § 7.16.

LA132471697

*Attorneys for Defendants Stefan Kendal Gordy, Skyler*
*Austen Gordy, Kobalt Music Publishing America,*
*Inc., Kia Motors America, Inc., Nu80s Music, LLC,*
*LMFAO, LLC, Party Rock, LLC, Foo & Blu, LLC,*
*David & Goliath, LLC, and David Jamahl Listenbee*
*p/k/a GoonRock*

333 Avenue of the Americas
Miami, FL 33131
Tel: 305-579-0500; Fax: 305-579-0717

By: _/s/ BARRY L. ROTHBERG_
       BARRY L. ROTHBERG
Florida Bar No. 0160873
rothbergb@gtlaw.com

By: _/s/ VINCENT H. CHIEFFO_
       VINCENT H. CHIEFFO
(Admitted *Pro Hac Vice*)
chieffov@gtlaw.com

By: _/s/ NINA D. BOYAJIAN_
       NINA D. BOYAJIAN
(Admitted *Pro Hac Vice*)
boyajiann@gtlaw.com

LA132471697

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/EFC or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jonathan L. Gaines, Esq.
Karen L. Stetson, Esq.
Gray Robinson
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131
Tel: 305-416-6880; Fax: 305-461-6887
Email: jgaines@gray-robinson.com; karen.stetson@gray-robinson.com
Counsel for Plaintiffs

By:   *s/Barry L. Rothberg*
      Barry L. Rothberg

Exhibit A

# GRAY | ROBINSON

ATTORNEYS AT LAW

333 S.E. 2ND AVENUE
SUITE 3200
MIAMI, FLORIDA 33131
TEL 305-416-6880
FAX 305-416-6887

BOCA RATON
FORT LAUDERDALE
GAINESVILLE
JACKSONVILLE
KEY WEST
LAKELAND
MELBOURNE
MIAMI
NAPLES
ORLANDO
TALLAHASSEE
TAMPA

305-416-6880
KAREN.STETSON@GRAY-ROBINSON.COM

February 17, 2016

Office of the General Counsel
U.S. Copyright Office
101 Independence Avenue S.E.
Washington D.C.  20559-6000

Dear Copyright Office:

The undersigned represents plaintiffs William Roberts, p/k/a Rick Ross, Andrew Harr and Jermain Jackson, p/k/a The Runners in a copyright infringement lawsuit pending in Miami, Florida; Case No. 13-24700, S.D. Fla.  The Copyright Office has previously answered questions posed to it by the Court in this matter (copy enclosed) (the "Register's Response").

At p. 4 of the Register's Response, it is stated that:

If the Office becomes aware of an error at the time of application, such as an incorrect year of creation, or that information regarding previous registration or publication is missing from the application, or has questions about facts asserted in an application, such as whether the work is published, it provides the applicant an opportunity to correct the error or verify the facts.

In *Olem Shoe Corp. v. Washington Shoe Co.,* Case No. 09-23494, S.D. Fla., the Register was also asked a question by the Court concerning publication to which the Register responded:

If the Register had known that, although Washington Shoe characterized Zebra Supreme-Olem as unpublished, Washington Shoe displayed the boots at a public trade show and sold the boots in retail stores before filing the registration the Register most likely would have refused registration of the work as published.

As indicated above, information regarding Washington Shoe displaying the Zebra Supreme-Olem boots at a public trade show before submitting

2009994

Exhibit A

Copyright Office
February 17, 2016
Page 2

its application for registration would not lead the Office to deviate from its general practice of leaving determinations as to whether publication has occurred to the applicant. However information regarding Washington Shoe selling the Zebra Supreme-Olem boots in retail stores before submitting the application would be at variance with a statement concerning publication provided by Washington Shoe, because retail sales generally constitute "distribution of coins or phono records of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending." Compendium II Sections 904(6), 902; 17 U.S.C. Section 101. As such, the Office would follow its established practice and correspond with the applicant regarding such information. Compendium II Section 904(6). If correspondence with the applicant resulted in a statement of facts that revealed that Washington Shoe sold the Zebra Supreme-Olem boots to the public in retail stores, such facts would indicate that publication had occurred, and the Office would follow its established practice and refuse to register a claim to copyright in the work as unpublished. Id. at Section 904(5).

While in such a situation the Office would have refused to register a claim to copyright in Zebra Supreme-Olem as unpublished, in the course of corresponding with the applicant, the Office could annotate or amend the application to indicate that the work had indeed been published on the date of the first retail sales. Id. at Section 605.03(4). Correction of such inaccurate information would then allow for registration of the work as a published work.

*Olem Shoe*, DE 209, pp. 6-7.

Although the Register's Response in the *Olem Shoe* case is more detailed than the Register's Response, are the two Responses essentially the same, i.e., as to each of the errors the Register was questioned about in this case, is it correct that had the true facts been made known to the Register, it was the Office's practice to correspond with the applicant, allow corrections to be made, and allow the registration to proceed.

The three registrations covering the musical composition *Hustlin*, in chronological order are: Pau3-024-979, filed by the Runners' entertainment lawyer, Leonard Zackheim (hereafter "registration #1"); PA 1-334-389, filed by copyright owner First N Gold's publisher Warner (hereafter "registration #2"); and PA 1-367-972 filed by copyright owner Sony (hereafter "registration #3").

What are the limitations on the type of errors that can be corrected and by whom? Specifically, can any of the subject applications be withdrawn and, if so, what is the procedure for withdrawal and who may request withdrawal? Is there any time limit for making corrections (other than the expiration of copyright)?

Copyright Office
February 17, 2016
Page 3

     Can the CA form be used to correct any and all errors and, if not, what are the exceptions? Our understanding is that the CA form may not be used to correct a registration which incorrectly indicates the work as unpublished when in fact it was a published work as of the time of the application. If our understanding is correct, are there any exceptions? For example, our understanding is that the reason the CA form cannot be used in that instance is because there are differing deposit requirements for published works (two copies of the work) vs. unpublished works (one copy of the work). It is our further understanding that the additional deposit requirement for published works is necessitated by the need to archive one copy with the Library of Congress. In this case, there was one "unpublished" registration and two "published" registrations. In light of the fact that additional copies are on file for archival purposes as a result of the two "published" registrations, does that in any way change the analysis as to whether a CA form may be used to correct registration #1 from unpublished to published? I also note that in the case of *Family Dollar Stores, Inc. v. United Fabrics Intern., Inc.*, Case No. 11-2574, S.D.N.Y., there is reference to an exception where there is no material difference between the published work and the unpublished work, which is also true here. Is that exception available with respect to registration #1?

     Our reading of the Register's Response is that multiple registrations may be filed under various circumstances (i.e., there is nothing inherently wrong with multiple registrations) and that the "published" registrations would not have been disallowed because of the prior filing of the "unpublished" registration. This is in accordance with our understanding that one "unpublished" registration and one "published" registration may be obtained for the same work as a matter of right (i.e., without the necessity of applying an exception). We believe this exception is referenced in the Register's Response at p. 3, ¶ (i). Our understanding is that registration #2, therefore, exists independently and appropriately from registration #1. If that is correct, and if registration #1 may not be corrected (and does not fall into any exception), can corrections be made to registration #2?

     As to registration #3, we are attempting to analyze whether this second "published" registration falls into any of the exceptions listed in the Register's Response. However, we note that in a prior case, the Register indicated that a second registration may be filed for the same work where there are "adverse claims." *Velazquez-Gonzalez v. Pina*, Case No. 07-1512, D. Puerto Rico, DE 109. "An adverse claim arises when an ownership claim is asserted that conflicts with one that appears in an earlier basic registration for the same work." *Id.* at p. 3, *citing*, 37 C.F.R. § 202.3(b)(11)(iii). That is an exception that does not appear in the Register's Response. Since registration #3, filed by Sony, conflicts with registration #2, filed by Warner (for example, Sony was a copyright owner as of the filing of the application for registration #2 but is not named on registration #2 as copyright owner), does registration #3 fall within the "adverse claim" exception?

Copyright Office
February 17, 2016
Page 4

We appreciate whatever assistance you can provide and thank you in advance for same.

Very truly yours,

Karen L. Stetson

cc: Vincent Chieffo, Esq.

2009994

Exhibit A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-24700-CIV-WILLIAMS

**WILLIAM L. ROBERTS, II, et al.,**

      **Plaintiffs,**

**vs.**

**STEFAN KENDAL GORDY, et al.,**

      **Defendants.**

_____/

## RESPONSE OF THE REGISTER OF COPYRIGHTS TO
## THE COURT'S ORDER OF OCTOBER 30, 2015

The United States Copyright Office, by and through its undersigned counsel, hereby responds to the questions posed in the Order and Request to the Register of Copyrights Pursuant to 17 U.S.C. § 441(b)(2) dated October 30, 2015 [DE 380].

This appears to be a copyright infringement action in which several issues have arisen regarding what effect, if any, allegedly inaccurate information would have had on the Copyright Office's issuance of certain copyright registrations. Order [DE 380] at 2-5. Under 17 U.S.C. § 411(b)(2), the Court is required to request the Copyright Office's advice on the questions posed in this Court's order. The answers of the Register of Copyrights to the questions posed by the Court appear in Attachment A.

                           Respectfully submitted,

                           BENJAMIN C. MIZER
                           Principal Deputy Assistant Attorney General

                           WIFREDO A. FERRER
                           UNITED STATES ATTORNEY

Exhibit A

s/Anthony Erickson-Pogorzelski
ANTHONY ERICKSON-POGORZELSKI
ASSISTANT U.S. ATTORNEY
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
Tel: (305) 961-9296
Fax: (305) 530-7139
Fla. Bar 619884
Email: anthony.pogorzelski@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2016, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.

s/Anthony Erickson-Pogorzelski
Assistant United States Attorney

2

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WILLIAM L. ROBERTS, II, *et al.*,

    Plaintiffs,

v.

STEFAN KENDAL GORDY, *et al.*,

    Defendants.

Case No. 13-24700-CIV-KMW

## RESPONSE OF THE REGISTER OF COPYRIGHTS
## TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)

On October 30, 2015, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights ("Register") by December 31, 2015, on the following six questions (the "Request"):

1. Would the Register of Copyrights have refused to register PA 1-367-972 if the Register had known of prior registration PA 1-334-589?

2. Would the Register of Copyrights have refused to register PA 1-367-972 if the Register had known of prior registration PAu 3-024-979?

3. Would the Register of Copyrights have refused to register PA 1-334-589 if the Register had known of prior registration PAu 3-024-979?

4. Would the Register of Copyrights have refused to register PA 1-367-972 if the Register had known that the creation date given on the application was incorrect and the actual date of creation was in 2005?

5. Would the Register of Copyrights have refused to register PA 1-334-589 if the Register had known that the creation date given on the application was incorrect and the actual date of creation was in 2005?

6. With respect to the copyright registration PAu 3-024-979 with an effective date of registration of February 28, 2006 for the musical composition *Hustlin'*, would the Register of Copyrights have refused to register that copyright as an unpublished work if the Register had known that one of the copyright claimants had distributed phonorecords of the *Hustlin'* composition to numerous radio and/or

Exhibit A

nightclub disc jockeys for the purpose of playing and/or promoting the composition prior to February 28, 2006 (*i.e.*, around the new year)?[1]

The Register requested, and the court granted, an extension to respond to the Request until February 1, 2016. The Register hereby submits her responses.

## BACKGROUND

A review of Copyright Office records shows the following:

On February 28, 2006, the U.S. Copyright Office ("Copyright Office" or "Office") received an application to register a musical work titled *Hustlin'*. The application identified Andrew Harr, Jermaine Jackson, William Roberts, and Bernard Rogers as co-authors, and Trac-N-Field Entertainment LLC, William Roberts, First 'N Gold Music, Inc., and Bernard Rogers as copyright claimants of the words/lyrics and music. The application stated that the work was created in 2005, that it was unpublished, and that Trac-N-Field Entertainment LLC, and First 'N Gold Music, Inc., had obtained copyright in the work "by written contract." The Office registered the work with an effective date of registration ("EDR")[2] of February 28, 2006, and assigned registration number PAu3-024-979. Based on the information provided in the application, the Office had no reason to question the representations in the application and accepted them as true and accurate.[3]

Next, on June 28, 2006, the Copyright Office received another application to register a musical work titled *Hustlin'*. This application identified William Roberts pka Rick Ross, Andrew Harr, and Jermaine Jackson as co-authors, and First and Gold Publishing, 3 Blunts Lit At Once, and Trac-N-Field Entertainment LLC as the copyright claimants of the words and music. The application stated that the work was created in 2006 and first published in the United States on March 28, 2006. The application represented that the copyright claimants had obtained the copyright in this work "by written agreement" and did not identify any prior registration for the work. The Office registered the work with an EDR of June 28, 2006, and assigned registration number PA 1-334-589. Again, based on the information provided in the application, the Office had no reason to question the representations in the application and accepted them as true and accurate·

Then, on February 28, 2007, the Copyright Office received a third application to register a musical work titled *Hustlin'*. This application identified William Roberts, Jerma[ine] Jackson, and Andrew Harr as the co-authors, and Sony/ATV Songs LLC/4 Blunts Lit At Once, and J. Jackson & A. Harr/Trac-N-Field Entertainment/First-N-Gold as copyright claimants of the words and music. The application stated that the work was created in 2006 and first published in the United States on August 8, 2006. The application represented that Sony/ATV Songs LLC/4 Blunts Lit At Once and J. Jackson & A. Harr/Trac-N-Field Entertainment/First-N-Gold obtained the copyright in this work

---

[1] Request at 4-5.
[2] The EDR is the date that the Office received a completed application, the correct deposit copy, and the proper filing fee.
[3] The principles that govern how the Office examines registration applications are found in the *Compendium of U.S. Copyright Office Practices, Third Edition*. One such principle is that the Office generally "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records." COMPENDIUM (THIRD) § 602.4(D). Another is that the Office generally does not conduct searches to determine whether previous registration or publication has occurred. COMPENDIUM (THIRD) § 602.4(C).

Exhibit A

"by assignment" and did not identify any prior registration for the work. The Office registered the work with an EDR of February 28, 2007, and assigned registration number PA 1-367-972. Again, the Office had no reason to question the representations in the application and accepted them as true and accurate.[4]

In its Request, the Court advised the Register that Plaintiffs have presented the Court with these three registrations for a single work, and that the parties do not dispute that the work, *Hustlin'*, was created in 2005.[5] In addition, Question 6 of the Request asks the Register to assume that one of the copyright claimants had distributed *Hustlin'* to numerous radio and/or nightclub disc jockeys for the purpose of playing and/or promoting the composition prior to February 28, 2006.[6] The Court has requested the Register to consider whether, given this information, the Office would have refused to register any of the claims.

## ANALYSIS

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410. Regulations governing applications for registration are codified in title 37 of the Code of Federal Regulations at 37 C.F.R. §§ 202.1 to 202.24 (2015). The principles that govern how the Office examines registration applications are found in the *Compendium of U.S. Copyright Office Practices, Third Edition* ("*Compendium*"). The relevant statutory requirements, regulations, and *Compendium* practices most relevant to the Court's request are as follows:

In pertinent part, the statutory requirements for copyright registration dictate that applications shall include "the year in which creation of the work was completed."[7] The regulations governing applications for registration state that the Register will issue only one registration for the same version of a particular work.[8] However, there are four exceptions to this rule:

(i) registration as the first published edition of the work;[9]

(ii) registration by the author in his or her own name as copyright claimant;[10]

(iii) registration arising from an allegation of an unauthorized or invalid previous registration;[11] and

(iv) supplementary registration in order to correct or amplify information provided in the previous registration.[12]

---

[5] Request at 3, 5.
[6] *Id.*
[7] 17 U.S.C. § 409(7).
[8] *See* 37 C.F.R. § 202.3(b)(11).
[9] *See* COMPENDIUM (THIRD) § 510.1.
[10] *See id.* at § 510.2.
[11] *See id.* at § 510.3.
[12] *See id.* at § 1802.

Exhibit A

If the work submitted for registration is based on or incorporates preexisting material, including previously registered material, the applicant must provide "a brief, general statement of the additional material covered by the copyright claim being registered."[13]

Under the Copyright Act, works may be published via the "distribution of copies or phonorecords of the work to the public by sale or other transfer of ownership, or by rental, lease or lending."[14] The Act, additionally, provides that "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication."[15] In carrying out its registration functions, the Copyright Office understands the *actual* distribution of (in addition to the mere "offering to distribute") copies or phonorecords to a group of persons for the enumerated purposes also to constitute a publication.[16]

The Copyright Office's regulations require applicants to make "[a] declaration that information provided within the application is correct to the best of … [the applicant's] knowledge."[17] Generally, the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records."[18] The Office "generally does not compare deposit copy(ies) to determine whether the work for which registration is sought is substantially similar to another work."[19] Likewise, "the Office generally does not conduct searches to determine whether the work has been previously registered."[20] Regarding the publication status of a work at the time of application, the Office will not conduct an independent investigation to determine if a work has been published and will generally accept the facts as stated on the application "unless they are implausible or conflict with information provided elsewhere in the registration materials, the Office's records, or other sources of information that are known by the Office" at the time of application.[21]

In responding to the Court's questions, the Office applies the foregoing governing statutory and regulatory standards, and examining principles. The Office additionally notes that it is not unusual for the examiner to correspond with an applicant about factual assertions if the assertions are in conflict with other information provided in the application materials.[22] If the Office becomes aware of an error at the time of application, such as an incorrect year of creation,[23] or that information regarding previous registration or publication is missing from the application,[24] or has questions about facts asserted in an application, such as whether the work is published,[25] it provides

---

[13] 17 U.S.C. § 409(9).
[14] 17 U.S.C. § 101 (definition of "publication").
[15] *Id.*
[16] *See* PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT § 3.3.2 (supp. 2011) (noting that the "better" reading of the statute "would make publication occur at the earliest point—the date of an offer to distribute or the date of actual distribution—at which the copyright owner placed its work in the channels of commerce").
[17] 37 C.F.R. § 202.3(c)(2)(iii).
[18] COMPENDIUM (THIRD) § 602.4(D).
[19] COMPENDIUM (THIRD) § 604.2(C).
[20] COMPENDIUM (THIRD) § 604.2(C).
[21] COMPENDIUM (THIRD) § 1904.2.
[22] COMPENDIUM (THIRD) § 602.4(D).
[23] *See* COMPENDIUM (THIRD) § 611.4.
[24] *See generally* COMPENDIUM (THIRD) § 621.
[25] *See* COMPENDIUM (THIRD) § 1904.3.

Exhibit A

the applicant an opportunity to correct the error or verify the facts.[26] If the applicant responds in a timely fashion to the satisfaction of the Office, the Office proceeds with the registration. The below responses reflect the fact that the errors identified in the Court's questions were not timely corrected through such a process.

### QUESTION 1

Had the Office been aware of the work registered under PA 1-334-589 at the time application was made to register the same work under PA 1-367-972, the Office would have refused to register PA 1-367-972.

### QUESTIONS 2 & 3

Because a registration for an unpublished version of the work does not prevent the Office from issuing another registration for the first published version of the same work, the Office would not have refused to register PA 1-367-972 had it known that the work was previously registered under registration number PAu3-024-979.[27] For the same reason it would not have refused to register PA 1-334-589 had it known that the work was previously registered under PAu3-024-979.[28]

### QUESTIONS 4 & 5

Had the Office been aware at the time the applications were submitted for PA 1-367-972 or PA 1-334-589 that the dates of creation were incorrect, it would have refused registration.

### QUESTION 6

According to the Request, one of the copyright claimants distributed phonorecords of the musical work to numerous radio and/or nightclub disc jockeys for the purpose of playing and/or promoting the composition prior to February 28, 2006. If the Office had known of this fact at the time of application, it would have considered the work to have been published, and would have refused to issue a registration for an unpublished work under the number PAu3-024-979.[29]

Dated: January 21, 2016

_Mark Pallante_
Maria A. Pallante
Register of Copyrights

---

[26] Generally, an applicant has 20 days to respond via email, and 45 days to respond via U.S. mail to questions about statements made in the application materials. *See* COMPENDIUM (THIRD) §§ 605.6(B), 605.6(D).
[27] 37 C.F.R. § 202.3(b)(11)(i).
[28] *Id.*
[29] The prefix "PAu" designates an unpublished work.

5

Exhibit A