UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-24700-WILLIAMS-SIMONTON

WILLIAM L. ROBERTS, II p/k/a RICK ROSS and ANDREW HARR and JERMAINE JACKSON collectively p/k/a THE RUNNERS,

       Plaintiffs,

v.

STEFAN KENDAL GORDY and SKYLER AUSTEN GORDY collectively p/k/a LMFAO, KOBALT MUSIC PUBLISHING AMERICA, INC., a Delaware corporation, KIA MOTORS AMERICA, INC., a California corporation, DAVID & GOLIATH, LLC, a Delaware limited liability company, DAVID JAMAHL LISTENBEE p/k/a GOON ROCK, NU80s MUSIC, LLC, a California limited liability company, LMFAO, LLC, a California limited liability company, PARTY ROCK, LLC, a California limited liability company, and FOO & BLU, LLC, a California limited liability company,

       Defendants.
_____/

**PLAINTIFFS' MEMORANDUM PER**
**STATUS CONFERENCE OF FEBRUARY 8, 2016**

I. **Role of Registration/Does Not Confer Copyright**

In *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F. 2d 1529, 1531 (11th Cir. 1994), the Court observed that:

> [C]ertainly, if registration does not confer copyright, neither can erroneous registration take it away. Copyright ownership and the effect of mistaken copyright registration are separate and distinct issues.

II. **Section 411 and the PRO IP Act Amendment**

Section 411(a) of the Copyright Act requires registration prior to filing suit.[1] In 2008, Section 411 of the Copyright Act was amended to include the following:

> (b)   (1) A certificate of registration satisfies the requirements of this section and section 412,[2] **regardless of whether the certificate contains any inaccurate information**, unless
> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
>
>        (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.[3]

Pub.L. 110-403, Title I, § 101(a), Oct. 13, 2008, 122 Stat. 4256 (hereafter the "Amendment").

"The legislative history for the PRO IP Act explains that the amendment aims to close the loophole whereby 'intellectual property thieves' argue that a mistake in the registration documents, such as checking the wrong box on the registration form, renders a registration invalid and thus forecloses the availability of statutory damages." Nimmer at 7.20[B][2], *citing* H.Rep. (PRO IP), Report 110-617, p. 24, *citing In Re: Napster, Inc. v. Copyright Litigation*, 191 F. Supp. 2d 1087, 1099 (N.D. Cal. 2002). According to the Annual Report of the Register of Copyright, the year after the PRO Amendments were enacted:

---

[1] Prior to *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2014), many courts were of the view that registration was necessary to confer federal court jurisdiction; however, the Supreme Court, overruling all prior precedents to the contrary, clarified it was not jurisdictional but was rather a "claims processing rule," and that, as such, the registration requirement may be waived. Id., 559 U.S. at 169.

[2] Section 412 provides that registration is a prerequisite to certain remedies for infringement, such as statutory damages and attorney's fees.

[3] The Court may have been operating under the misimpression that only subsection (b)(2) was added regarding seeking advice from the Copyright Office, when in fact, all of subsection (b) was new.

> On October 13, 2008, the Prioritizing Resources and Organization for Intellectual Property Act (Pub. L. No. 110-403) was signed into law <u>to strengthen intellectual property laws.</u>  The Act amended  section 411 of the copyright law by adding subsection (b) to create a new procedure for infringement actions that require courts to seek the advice of the Copyright office on issues that may involve <u>fraud on the Copyright Office</u>.
> . . . . The new provision in subsection 411(b)(1) <u>mandates</u> that a certificate of registration satisfies the requirements of subsection (a) regardless of whether the certificate contains <u>any</u> inaccurate information unless <u>two</u> criteria are satisfied:  first, the inaccurate information was known to be inaccurate when it was provided and, second, the inaccuracy, if known, would have caused the Register of Copyrights to refuse registration.  Subpart 411(b)(2) requires courts to consult with the Register regarding the analysis of the second of those two criteria . . .

Annual Report Reg. of Copyright, FY ending Sept. 30, 2009, p. 34 (emphasis added).[4]

The Amendment codifies pre-existing judicial standards underlying the fraud on the Copyright Office defense. Nimmer §7.20[B][2]; *Lennar Homes of Texas Sales and Marketing, Ltd. v. Perry Homes, LLC,* No. 14-1094, 2015 WL 4633514, *3-4 (S.D. Tex., July 24, 2015) (Amendment codified court-made standard).  Nevertheless, in case there was any lack of clarity prior to the Amendment, the Copyright Act is now clear that a registration supports an infringement action *regardless* of whether the certificate contains any inaccurate information (no exceptions as to the type of inaccurate information) unless the registration was procured through fraud.

**III.    Scienter**

In the Eleventh Circuit, the requirement of "scienter" has always been part of the fraud on the Copyright Office defense and that has not changed since the enactment of the Amendment.[5] *See, e.g.*, **pre-Amendment** *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982) (inaccuracies cannot be basis to invalidate copyright registration absent scienter); *Arthur Rutenberg Homes, Inc. v. Berger,* 910 F. Supp. 603, 607 (M.D. Fla. 1995) ("law is well settled that absent a fraud, or any purposeful attempt to mislead the Copyright Office," court will not invalidate registration); **post-Amendment** *St. Luke's Cataract and Laser Institute,*

---

[4] The Annual Report also includes a discussion of the first court post-amendment to utilize the new procedure set forth in 411(b)(2), where the parties were in a dispute about whether a copyright had been assigned, and, therefore, whether the registration incorrectly stated that plaintiff was the author of the work.  The Report indicates that the registration would have issued and that plaintiff could amend despite the pendency of litigation. Report at 34-35, referencing, *Velazquez-Gonzales v Pina,* No. 07-1512 (D.P.R.).

[5] This well-established scienter principle was correctly and successfully argued to Judge Cohn in *Habersham Plantation Corp. v. Art & Frame Direct, Inc.,* 2011 WL 4005454 (S.D. Fla. Sept. 8, 2011) by Defendants' law firm herein (Greenberg, Traurig) to defeat summary judgment.  *See,* Case No. 10-61532, DE 114, pp. 3-4, Section c.

*P.A. v. Sanderson*, 573 F.3d 1186, 1201-1203 (11th Cir. 2009) ("there must be a showing of 'scienter' in order to invalidate a copyright registration," defined by the Court as the "intentional or purposeful concealment of relevant information," *citing Original Appalachian;* sufficient evidence at trial of scienter);  *Microsoft Corp. v. Technology Enterprises, LLC,* 805 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011) ("J" Hoeveler) (refusing defendant's request for Court to ask questions of the Copyright Office where defendant had made no more than bald assertions of fraud; emphasizing that "both" requirements of §411(b)(1) must be met);  *Habersham Plantation Corp. v. Art & Frame Direct, Inc.,* 2011 WL 4005454, *2-3 (S.D. Fla. Sept. 8, 2011) ("J" Cohn) (summary judgment denied due to disputed issues of material fact regarding knowledge and scienter); *Pegasus Imaging Corp. v. Allscripts Healthcare Solutions, Inc.,* 2010 WL 497720, *8-9 (M.D. Fla. Feb. 9, 2010) ("J" Moody) (scienter required; disputed facts must be presented to the jury; *citing St. Luke's, Original Appalachian,* and §411(b)(1)).

      The Eleventh Circuit is entirely consistent with courts outside the Eleventh Circuit.  *See, e.g., DeliverMed Holdings, LLC v. Schaltebrand,* 734 F.3d 616, 618, 622-623 (7th Cir. 2013) (sufficient evidence at trial that DeliverMed, through its principal Swift, "knowingly lied" "to deceive the Copyright Office")[6];  *Schenck v. Orosz,* 105 F. Supp. 3d 812, 824 (M.D. Tenn. 2015) (court cautioned defendants to consider "whether they possess any evidence that the plaintiffs intended to defraud the Register" before proposing questions to the Copyright Office; defendants declined to propose questions); *Fleming v. Parnell,* No. 13-5062, 2014 WL 124678, * 4 (W.D. Wash., March 24, 2014) (denying request to submit questions to Copyright Office where it was hotly disputed whether a misstatement regarding publication was intentional, indicating it was essentially putting the cart before the horse); *Rogers v. Better Business Bureau,* 887 F. Supp. 2d 722, 727-728 (S.D. Tex. 2012) (misstatement over publication, failure to list co-author and failure to fill out compilation section of application; evidence fails to show the scienter element necessary to assert fraud); *Lennar Homes of Texas Sales and Marketing, Ltd. v. Perry Homes, LLC,* No. 14-1094, 2015 WL 4633514, *3 (S.D. Tex., July 24, 2015) (scienter required; party seeking to prove fraud on the Copyright Office bears a heavy burden, *citing* Nimmer).

---

[6] The *DeliverMed* Court relied on *Ass'n Benefit Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 853 (7th Cir. 2007) ("A claim for fraud ... requires a showing that, *at the time the fraudulent statement was made,* it was an intentional misrepresentation.") (emphasis in original).

According to the plain language of the Copyright Act, any and all inaccuracies in copyright registrations do not impact their viability or ability to support an infringement action unless: (1) it is "alleged," (2) that the inaccuracy was knowingly false (fraud) and (3) if known, would have caused the Copyright Office to refuse registration (material).

### IV. Defendants Have Neither Pled Nor Proven a Fraud on the Copyright Office Defense and Therefore Have Waived It

Fraud on the Copyright Office is a defense to an infringement action and as with all other defenses, it must be pled and proven by the defendant (not preemptively rebutted by plaintiff). *Microsoft Corp. v. Technology Enterprises, LLC,* 805 F. Supp. 2d 1330, 1335-1336, n.6 (S.D. Fla. 2011) ("J" Hoeveler) (copyright invalidity is a defense to a claim of infringement). *Olem Shoe Corp. v. Washington Shoe, Co.,* No. 09-23494, 2012 WL 28239, *1 (S.D. Fla., Dec. 1, 2011) (defendant bears burden as attacking party). The defense is typically raised by the defendant as an affirmative defense, although some defendants plead it as a counterclaim. *Olem Shoe,* Case No. 09-23494, DE 55, p. 7 (affirmative defense); *Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, *supra*, 2014 WL 4354385, M.D. Fla. Case No. 12-0033, DE 45, p. 7 (affirmative defense); *Pegasus Imaging Corp. v. Allscripts Healthcare Solutions, Inc., supra,* 2010 WL 497720, M.D. Fla. Case No. 08-01770, DE 121, p. 22 (affirmative defense), *Varsity Brands, Inc. v. Star Athletica, LLC*, 2014 WL 819422 at *9 n. 5 (W.D. Tenn. March 1, 2014) (fraud on the Copyright Office is an affirmative defense); *DeliverMed Holdings, LLC v. Schaltebrand, supra,* 734 F.3d at 621 (counterclaim for declaration of invalidity due to misrepresentations); *Schenck v. Orosz*, *supra*, 105 F. Supp. 3d at 814 (counterclaim for invalidity based on fraud on the Copyright Office).

And because of the element of fraud, it must be pled with the heightened specificity required by Rule 9(b) and it must be proven by clear and convincing evidence. *Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp. 3d 264 (WD. N.Y. 2015) (denying motion to strike affirmative defense of fraud on Copyright Office where defendant met strict pleading requirements of Rule 9(b)); *O.T. Pickle Builders, Inc. v. Witowski*, No. 96-4233, 1998 WL 664949, *7 (N.D. Ill. Sept. 16, 1998) (striking affirmative defense of fraud on Copyright Office where allegations did not meet requirements of Rule 9(b) with leave to amend, subject to Rule 11). *See* Fraud on the Copyright Office jury instruction as given by Judge Moore in the Southern District, requiring proof by clear and convincing evidence. Exh. 1. Not only have Defendants

here not proven fraud on the Copyright Office, they have not even alleged it.  *See, e.g.*, *Rogers v. Better Business Bureau, supra,* at 729 ("defendant does not allege fraudulent intent, much less point to any such evidence.").

Like any other affirmative defense, it may be waived if not raised.  *Lee v. Underwriters Universal Ins., Inc.*, 2016 WL 537266 * 4 (11th Cir. 2016) (party's failure to raise an affirmative defense in the pleadings typically results in a waiver of that defense); *Tacori Enterprises v. Rego Manufacturing*, 2008 WL 4426343, *14 (N.D. Ohio, Sept. 25, 2008) (denying defendant's motion for summary judgment on fraud on the Copyright Office defense for, among other reasons, failure to assert it as an affirmative defense).  This is certainly true with regard to copyright registrations since the U.S. Supreme Court made clear in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2014), that registration is not jurisdictional.[7]  *See also Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014) (registration requirement was non-jurisdictional, therefore defendant waived any right to complain about lack of registration where he submitted unregistered versions of works to special master for analysis, *citing Reed*).

It is simply not correct to imply that Plaintiffs have come to Court with an "invalid" registration or that it was incumbent upon them to correct any or all errors prior to filing suit when the statute specifically states otherwise.[8]  No errors "invalidate" a registration unless they are attacked by the defendant (i.e., "alleged" per the statute) and proven to be the result of fraud by the high standard of clear and convincing evidence.  Defendants did not allege a fraud on the Copyright Office defense despite the fact that their affirmative defenses otherwise read like a check list of defenses from Nimmer.  Fraud on the Copyright Office is a very difficult defense to prove and Section 411 was amended to cut down on this very defense which courts do not like defendants to lightly raise.  *See, e.g., Schenck v. Orosz*, 105 F. Supp. 3d 812, 823 (M.D. Tenn. 2015) ("The defendants are advised to make a serious evaluation of the invalidity defenses they are claiming, including whether there is a good faith basis in law and fact for each challenge.

---

[7] In fact, the very issue in *Reed* was waiver.  The lower court there sought to approve a settlement which involved a number of unregistered works.  The Supreme Court ultimately paved the way to allow that settlement to proceed precisely based on the defendant's ability to waive the lack of registrations as a defect because, according to the Supreme Court, it was non-jurisdictional.  *Id.* at 169-170.

[8] While Plaintiffs have the burden of establishing a "valid copyright" (which again, Defendants have indicated they are not challenging), to the extent that burden includes "compliance with statutory formalities," it is met by the registration certificate itself.  The burden then shifts to Defendants to prove lack of originality.  *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999).  The registration performs that function regardless of errors, absent fraud per §411(b)(1).

Ultimately, the plaintiffs' claims will be decided on the merits . . ."). Not only was this defense not raised by Defendants in their Answer and Affirmative Defenses, or in their multiple Motions for Summary Judgment, or in the parties' Pre-Trial Stipulation, Defendants have twice specifically indicated otherwise. *See* Defendants' Response to First N Gold's Motion To Intervene, DE 177, p. 17, stating that Defendants were *not* challenging the validity or existence of a copyright, and that the "only issue" here is whether Defendants engaged in unlawful copying.[9] To the extent Defendants may now claim that this argument only pertained to the underlying copyright and not to any registration, Defendants' Comment to Plaintiffs' proposed jury instruction on a registration's presumption of validity is unambiguous: "This instruction is not necessary. Defendants do not claim that the copyright in *Hustlin'* is 'invalid'." DE 372-1 (emphasis added). Exh. 2. The Court noted in its questions to the Copyright Office that a registration provides a presumption of validity, yet Defendants have told the Court it need not even instruct the jury as to any presumption precisely because they are not seeking to invalidate. It is difficult to imagine a more definitive waiver of registration invalidity or "fraud on the Copyright Office."

### V.     Prejudice to Plaintiffs from Defendants' Failure to Raise Defense

Had Defendants raised the defense in their pleadings, as they were required to do, Plaintiffs would have taken discovery or obtained affidavits from the parties who filed the applications, namely, the Runners' entertainment lawyer (application #1), Warner Brothers (application #2) and Sony (application #3) specifically to determine the facts surrounding the preparation of the applications, and would have moved for summary judgment, as Plaintiffs are confident that no registration was procured through fraud.[10] What Plaintiffse do know is that none of them ever saw drafts of the applications nor signed off on any of the applications. And

---

[9] Defendants argued, at DE 177, p. 17: "This is not a case . . . in which Defendants are challenging the existence or validity of a copyright. *See, e.g. Wales Indus., Inc. . . .* (ordering joinder in a 'case challenging the validity of the copyright upon which rest the rights of the person to be joined,' but noting that joinder 'should not be required,' where as here, 'the only issue is whether the Defendants engaged in unlawful copying') . . . Nor would a decision by this Court impair FNG's future activities." Certainly, invalidating *Hustlin's* registrations would impair FNG's future activities.

[10] The Court mentioned *Kernel Records v. Mosley* at the status conference in connection with late registration. That case was materially different from this case. In *Kernel*, plaintiff came to court with no registration, claiming an exemption. Plaintiff therefore did not have the benefit of a rebuttable presumption and at all times bore the burden of proving entitlement to the exemption from registration. Plaintiff specifically pled the right to claim an exemption, discovery was taken as to plaintiff's claimed exemption, and defendant thereafter moved for summary judgment, which was granted by the Court. Here, Plaintiffs' registrations shifted the burden to Defendants to attack same, which they never did and, therefore, no discovery was conducted by Plaintiffs as to the registrations.

while the Runners' lawyer was deposed and asked about the application he prepared, no one asked him about the error that is the subject of the Register's advisory opinion that relates to registration #1 (publication of *Hustlin* prior to the application) because neither side considered that to be relevant to the issues in this case as framed by the pleadings.

### VI. No Evidence of Fraud

The Defendants' failure to allege in any fashion that the registrations fall within the limited §411(b)(1) exception to efficacy regardless of any inaccuracies, is understandable in light of the combined requirements of Rules 9(b) and 11, and the plausibility pleading threshold. Certainly there is nothing about the nature of any of the errors which screams "fraud," there is no advantage obtained by Plaintiffs, or anyone else, as a result of the inaccuracies, and no motivation to have provided incorrect information. Courts refer to this lack of relevance or advantage gained by reason of the error as a lack of prejudice to the defendant infringer. *See In re Napster, Inc. Copyright Litigation*, 191 F. Supp.2d 1087, 1100 (N.D. Cal. 2002) ("Unless Napster can show that plaintiffs defrauded the Copyright Office in a manner that prejudiced Napster, the alleged inconsistencies in plaintiff's certificates do not rebut the presumption of ownership."); *Lennon v. Seaman*, 84 F. Supp. 2d 522 (S.D.N.Y. 2000) (courts also require party alleging fraud on the Copyright Office to prove that it has been prejudiced or suffered some damage as a result of the alleged fraud, citing numerous examples); *Ultra-Images, LLC v. Franclemont*, 2007 WL 4557148 (S.D. Fla. 2007) ("J" Marra) (denying summary judgment on fraud on the Copyright Office defense due to element of scienter but also because there were fact issues as to whether the misstatement was even "relevant").

As a starting point, the idea that the inaccuracies here are anything other than inadvertent errors is belied by the utter lack of "motive" for any of them. Unlike actual fraud on the Copyright Office cases where information is misstated in order for the applicant (who is generally the plaintiff in those cases) to gain some advantage, the inaccuracies here provide no advantage to Plaintiffs (or to the applicants) and have no relation whatsoever to the infringement claim. As to the first registration, there is no reason to believe that the Runners' entertainment lawyer knew that Roberts (who was not his client) had handed out demos of the song to deejays prior to the application (or the extent of that activity such that it could be legally determined that

"publication" within the meaning of the Copyright Act had occurred).[11]  As to the second registration, there is no reason to believe that Warner knew the date of creation was 2005 but purposefully decided to state 2006 on the application instead to deceive the Copyright Office. Similarly, there is no reason to believe Sony knew the correct date of creation but intended to mislead the Copyright Office by stating the wrong date of creation, anyway, or that it knew Warner had previously registered the song but checked the wrong box.  "Publication" of music is typically considered to occur upon commercial release (as referenced by the Copyright Office Response), which in this case took place in 2006.  The three registrations generally coincide with pre-commercial release (date of creation 2005) contained in registration #1 and post-commercial release of the single and album, both of which took place in 2006 per registrations #2 and #3.  It seems obvious that the separate filers simply wanted to make sure that the work was registered and did not know about the other registrations. None of the above is of record because the issue was not raised and there is certainly no evidence in the record which even suggests any fraudulent intent, let alone proves it by clear and convincing evidence.  *Arthur Rutenberg Homes, Inc. v. Berger*, 910 F. Supp. 603, 607 (M.D. Fla. 2005) ("It is not presumed that a copyright duly registered has been fraudulently obtained."); *Vaad L'Hafotzas Sichos, Inc. v. Krinsky*, No. 11-5658, 2015 WL 5719826, *9 (E.D.N.Y. Sept. 30, 2015) (intent to deceive the Copyright Office cannot be inferred merely from false claim of ownership).

    **VII.**    **Materiality**

Plaintiffs do not concede that the Response from the Copyright Office satisfies even the second prong of §411(b), materiality.  Although the Response indicates that it would have refused registration, it also indicates (as it did in *Olem Shoe* and numerous other cases) that its practice (had it become aware of the falsity) would have been to communicate with the applicant and allow correction.  Numerous courts have held errors to be immaterial where they were capable of being corrected per the Copyright Office's rules and practices.  *See Rogers v. Better Business Bureau*, 887 F. Supp.2d 722 (S.D. Tex. 2012);  *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 853 (9th Cir. 2012).  Nevertheless, "materiality" only comes into play if there is an allegation of fraud and that fraud is proven with clear and convincing evidence.

---

[11] As stated by Plaintiffs in the parties' proposed Joint Questions to the Copyright Office, the concept of "publication" is determined by the method, extent and purpose of distribution.  DE 372. p. 3, *citing Kernel Records Oy v. Mosley, et al.*, 694 F.3d 1294, 1303-04 (11th Cir. 2012) (publication is a complex, factually intensive inquiry; "[P]ublication is a legal word of art, denoting a process much more esoteric than is suggested by the lay definition of the term.").

*See Olem Shoe Corp. v. Washington Shoe Co.,* No. 09-23494, 2010 WL 35055100 (S.D. Fla. Sept. 3, 2010) ("Of course, if the Register of Copyrights advises the Court that it would have refused registration, Olem Shoe must still prove its factual allegations."); *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (in patent context, "court may not infer intent [to deceive] solely from materiality").[12] While Plaintiffs maintain that the issue of any errors in Plaintiffs' registrations is not properly before the Court, Plaintiffs are nevertheless attempting to correct the errors to moot the issue altogether.

### VIII. Multiple Registrations

The reason the Court wanted to ask questions of the Copyright Office was not because it was concerned that the first registration had an erroneous statement about publication or because the second registration had an incorrect year of creation (those errors were only first raised by Defendants when asked by the Court to formulate questions), but because it was concerned about the very existence of three registrations for the same work and how that impacted the standing/ownership claims that were raised in the parties' cross-motions for summary judgment. Even when asked to prepare questions to the Copyright Office, Defendants did not propose any questions related to the standing/ownership issues raised in the parties' cross-motions for summary judgment.

It was never Plaintiffs' position that the Court needed to "pick one." It is Plaintiffs' position that all of the registrations are evidence and to the extent there is any conflict, then Plaintiff may not be entitled to simply rely on the usual presumption that attends a registration but would have to present evidence of the underlying facts, which Plaintiffs have done at least with respect to what has been challenged.[13] This is exactly what other courts have done. *See, e.g., Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010) (in addition to certificates, court should assess other relevant indicia of ownership, such as the parties' intent and the terms of transfer agreements and other documents establishing

---

[12] In *Olem Shoe* (No. 09-23494), Washington Shoe moved for summary judgment on its copyright infringement claims, and Olem Shoe raised the affirmative defense of fraud on the Copyright Office. After receiving a Response from the Register of Copyrights to questions, Judge Huck removed the case from the trial docket (2 weeks before trial) so that the registration issues could be rectified. (*Olem*, DE 214). It was not in the context of a motion to dismiss and the corrections were made over the objections of defendants, not by agreement. (*Olem*, DE 396, n.5).

[13] It is undisputed that the composition is covered by all three registrations, that the Plaintiffs are listed on all three registrations as authors, and that all three registration indicate that *Hustlin'* was not created as a work for hire. Moreover, there is no dispute that all three registrations were filed within 5 years from the first date of publication (regardless of whether publication first occurred in 2005 or 2006).

chain of title; ownership established through documents and affidavits); *BMG Rights Management (US) LLC v. Cox Communications, Inc.*, No. 14-1611, 2015 WL 7756130 (E.D. Va., Dec. 1, 2015) (plaintiff must produce chain of title where not listed as claimant).

The Copyright Office's Response makes clear that multiple registrations are in fact permitted.[14] Defense counsel previously indicated that only two registrations are permitted by the Copyright Office, one "unpublished" registration and one "published" registration. In fact, the Copyright Office has confirmed that there are numerous other exceptions to the apparently very general rule of one registration. In addition to those set forth by the Copyright Office in its Response, Plaintiffs are aware of at least one other exception permitted that was not included, namely, by "adverse claimants." According to the Copyright Office's Response to questions posed to it in another case, "An adverse claim arises when an ownership claim is asserted that conflicts with one that appears in an earlier basic registration for the same work." *Velasquez-Gonzalez v. Pina*; Case No. 07-1512, D. Puerto Rico, DE 109 at p. 3, citing, 37 C.F.R. Section 202.3(b)(11)(iii). According to the Copyright Office's Compendium of Rules, an adverse claim is a situation where:

> The U.S. Copyright Office receives two or more applications (either consecutively or simultaneously) to register the exact same work, where each application was certified and submitted by a different applicant, and each application contains conflicting statements regarding authorship and/or ownership of the work;

Compendium III, § 1807.

Since there are numerous exceptions to the general "one registration" rule, including a specific exception to register claims that conflict with one another, the question becomes, how should courts treat conflicting or inconsistent registrations. Absent allegations and proof of fraud, errors and inconsistencies in copyright registrations are treated as evidence only – they do not "invalidate" the registrations or the copyrights. *See, Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149 (2d Cir. 2003) (multiple inconsistent registrations regarding ownership; court rejected one party's claimed ownership based on trial evidence); *M & D Intern. Corp. v. Chan,* 901 F. Supp. 1502, 1510 (D. Hawaii 1995) (plaintiff's and defendant's competing registrations cancel each other out regarding presumption of originality); *NBC Subsidiary, Inc. v.*

---

[14] The Copyright Office is not an adjudicative body; hence, §411(b)(2) makes clear that its role is limited to providing advice about its rules and practices with respect to (b)(1)(B) and not (b)(1)(A) (fraud).

*Broadcast Information Services, Inc.*, 717 F.Supp. 1449, 1451 (D. Colo. 1988) (conflicting statements regarding publication in multiple registrations would "neutralize" each other's presumption, requiring court to analyze and adjudicate evidence of publication).

There is no requirement that Plaintiffs have one error-free registration[15] to "match up" ownership.  Courts have never required an exact "match up" of listed authors or claimants in order to decide ownership, and misidentification of claimants or authors, has neither affected the plaintiff's ability to maintain the action nor eliminated the registration's presumption of validity. *Smith v. Casey,* 741 F.3d 1236, 1242-43 (11th Cir. 2014) (plaintiff author was not listed as claimant on certificate of registration, court ruled he had standing as beneficial owner and could rely on registration to support claim) (copy of registration attached as Exh. 3); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 489 F. Supp. 174 (N.D. Ga. 1980), *aff'd*, 684 F.2d 821 (11th Cir. 1982) (failure to list one of two co-authors did not impact validity of registration); *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.*, 269 F. Supp. 605, 610 (S.D. Fla. 1966) (Chief Judge Dyer) ("it is not necessary that owner's true name be used in copyright so long as a name with which it is identified is used and no innocent persons are misled."); *Hanover Arch. Service, P.A. v. Christian Testimony-Morris, N.P.*, 2015 WL 4461327, *5 (D. N.J., July 21, 2015) (corporation had standing to sue despite fact that registration wrongly named the President of the company as claimant);  *BMG Rights Management (US) LLC, supra,* 2015 WL 7756130, *6 (E.D. Va., Dec. 1, 2015) (certificates listing only the d/b/a's of plaintiff's predecessor in interest as claimant sufficient); *Proven Methods Seminars, LLC v. American Grants & Affordable Hous. Inst., LLC*, 519 F. Supp. 2d 1057, 1064-65 (E.D. Cal. 2007) (approving use of name of common law general partnership signifying plaintiff's alter ego);  *Morelli v. Tiffany and Co.*, 186 F.Supp.2d 563, 566 (E.D. Pa. 2002) (erroneous  designation of sole shareholder of company as author instead of company did not impact registration "for all present practical purposes, he and Paul Morelli Design Inc. are one and the same"); *Dealer Advertising Development, Inc. v. Barbara Allan,* 1979 WL 1079 at *15-16 (W.D. Mich., Nov. 21, 1979) ("even assuming that plaintiff erred in identifying itself, such an error does not affect the validity of the copyright or the enforceability of the copyright registration"); *Urantia Foundation v. King*, 1977 WL 22788

---

[15] Although defense counsel admitted at the pretrial conference that he was aware that at least 2 registrations for the same work could be filed, defense counsel indicated at the last status conference that there were strong policy reasons since the Berne Convention for requiring only one error-free registration.  However, according to Nimmer, the Berne Convention did not alter the liberal treatment of errors in copyright registrations.  Nimmer §7.20[A].

at *4 (C.D. Calif., March 17, 1977) ("failure to name an author, or naming a wrong author, or naming fewer than all authors does not affect the validity of a copyright"); *Campbell v. Wireack*, 269 F. 372 (4th Cir. 1920) (objections to registration which listed partnership trade name and not individual partners deemed "extremely technical").[16]

**Legal Ownership**

Plaintiffs have provided proof of chain of title and all Defendants have offered is speculation and innuendo -- that is not enough.  Since copyrights can only be assigned by written assignment, either there are valid assignments or the authors have retained copyrights.[17]  Defendants claim that Roberts assigned his copyrights to his wholly owned company and that the Runners assigned their copyrights to their wholly owned company.  Significantly, we are not talking about possible assignments to third-party strangers to these proceedings -- we are talking here only about authors and their wholly owned companies.  With regard to the Runners, they have never seen (much less signed) any written assignment (even if their former entertainment lawyer may have intended to prepare such an agreement).  Plaintiffs do not believe one ever existed and have provided sworn testimony to that effect.[18]  There is no disagreement between the purported assignors (Harr and Jackson) and the purported assignee (Trac N Field) regarding who owns the copyright, so why should infringers be able to claim otherwise?  It is absurd under these circumstances where both sides of the alleged "assignment" are essentially one and the same and no written document exists.  As the Ninth Circuit has held in the context of whether a copyright was owned by a company or its owner:

> The problem with the district court's analysis is that JJV was a one-man shop. Gasper was the sole officer, director, and shareholder of JJV, exercised complete control over it, and made all decisions concerning JJV and production of the films. It was all Gasper all the time. JJV as employer and Gasper as employee could certainly agree as to the scope of the employee's employment, and could agree that Gasper should retain all copyrights. Since JJV was Gasper, JJV intended whatever Gasper intended, and if Gasper intended that his creative work be outside the scope of his employment with JJV, there was no one to disagree.

---

[16] Plaintiffs have submitted evidence that both 3 Blunts and 4 Blunts have been utilized as d/b/a's of Roberts for purposes of registering with BMI and ASCAP as a songwriter a/k/a "publishing designee." Similarly, Defendant Skyler Gordy, for example, uses the fictitious name (d/b/a) "Eskaywhy" as his publishing designee for purposes of registering with ASCAP.

[17] "A plaintiff who has authored the work in issue has no chain of title problem of proof beyond demonstrating that authorship, in order to establish his ownership of the copyright." Nimmer at §12.11[c].

[18] Had suit been brought in the name of the Runners' company, Trak N Field, Defendants no doubt would have taken the opposite position, namely, that the copyright was retained by the Runners because there is no evidence of a written assignment to Trak N Field as is required to effectuate an assignment of copyright.

> *See, e.g., M & A Assocs., Inc. v. VCX, Inc.*, 657 F.Supp. 454, 459–60 (E.D.Mich.1987) (sole shareholder, director and officer of corporation that produced film was owner of the copyright).

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010). Similarly, (though there is no "employment" relationship), Track N Field is a "two man shop," with Harr and Jackson its only owners. Therefore, if Harr and Jackson want to agree who owns the copyright, them or their wholly owned company, that is their decision. *See also, Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) (where there is no dispute between copyright owner and [purported] transferee, "it would be unusual and unwarranted to permit a third-party infringer to invoke §204(a) [statue of frauds] to avoid suit for copyright infringement") *quoting Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)). In *Billy –Bob* and *Imperial*, both parties agreed there had been an assignment of copyright even though it was not evidenced by a simultaneous written agreement. While this case involves the opposite scenario, i.e., The Runners and Track N Field both agree there was <u>no</u> assignment, the principle is the same.

    The last argument Defendants desperately try to make merits little discussion: that *Hustlin'* may have been written as a "work for hire" and, therefore, Track N Field is the owner as original author. However, all of the copyright registrations, affidavits and testimony are consistent that *Hustlin'* was never a "work for hire" and the most Defendants say in this regard, without any evidence, is that the Runners "might be employees" of Track N Field. There is not even a "scintilla of evidence" to suggest an "employment" relationship within the meaning of *Community for Creative Non-Violence* between Jackson and Harr on the one hand and their wholly owned company on the other. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (a mere 'scintilla' of evidence supporting opposing party's position will not suffice).

    With regard to Roberts' legal copyright, Defendants do not challenge the back and forth assignments with First N Gold. What is in dispute is the legal effect of the corporate nonexistence of 3 Blunts at the time of the intended transfer of Roberts' interest to 3 Blunts. Plaintiffs believe the legal consequence of those undisputed facts is that Roberts retained his share of copyright but that the portion the agreement intended to be conveyed to Sony was nevertheless assigned by him <u>in his individual capacity</u> (as opposed to 3 Blunts making the conveyance). That last part, the conveyance to Sony (while true and agreed to between Roberts

and Sony), has no real bearing on Roberts' legal ownership standing which is limited to the issue of the legal effectiveness of him personally attempting to assign copyright to his dissolved single-member LLC (and its successors and assigns).

The difference in the parties' legal arguments in this regard is that Defendants' argument wrongly assumes that the copyright was somehow already acquired by 3 Blunts <u>prior</u> to its dissolution and, therefore, the copyright assignment constitutes the "marshalling of assets," whereas Roberts' argument is based on the factually accurate premise that 3 Blunts was <u>already dissolved</u> (for more than a year) prior to the attempted transfer.  Based on the actual undisputed facts, it is apparent that the acquisition of a new asset post-dissolution must fall into the category of conducting "new business" which is disallowed as a matter of law.  The Sony/ATV Agreement/copyright assignment actually contemplates both scenarios.  To the extent the contracting party is already dissolved at the time the contract is entered into, the recipient of the assignment from Roberts (and the assignee to Sony/ATV) is described as "3 Blunts Lit at Once, LLC d/b/a 3 Blunts Lit at Once (ASCAP) <u>and its successors and assigns</u>."  Sony/ATV Agreement, p. 36. Exh. 4.  Clearly, as the sole owner of 3 Blunts, only Roberts can be referenced as 3 Blunt's successor or assign.  Fla. Stat. §608.444 (2002).  To the extent the dissolution takes place post-contract, the contract provides for the substitution by Roberts.  ¶15.01 of Roberts/Sony/ATV Agreement.

Based on the legal principles and authorities set forth in Plaintiffs' memorandum, the assignment was legally ineffective and, again, all interested parties -- Roberts (on behalf of himself and his wholly owned dissolved entity) and Sony/ATV -- agree that the legal consequence is that Roberts is the party to that agreement.  Roberts' substitution is supported by the terms of the agreement itself ( ¶15.01), the very title of the party to the assignment, namely "3 Blunts, and its successors and assigns," Roberts' personal guaranty/joint obligations under the agreement, and the parties' own interpretation and course of dealing.  Again, had suit been brought in the name of 3 Blunts, Defendants would have no doubt taken the opposite position, namely, that Roberts never properly transferred his interest to 3 Blunts since 3 Blunts was a non-entity at the time of the transfer.

### Beneficial Ownership

As just stated, Defendants claim that Plaintiffs' wholly owned companies are the legal owners of copyright, not Plaintiffs.  Yet, Defendants also claim that Plaintiffs' wholly owned

companies are the beneficial owners of copyright, not Plaintiffs.  Defendants cannot have it both ways.[19]

There simply is no doubt that Plaintiff authors continue to derive economic benefit from the commercial exploitation of *Hustlin*, that their corporate entities are wholly owned by them, and that they are the decision makers regarding the commercial exploitation of *Hustlin'*. *Hustlin'* has been continuously commercially exploited for the ultimate benefit of Plaintiffs through one publisher or another[20] since the song was released to the present.  That Plaintiffs set up corporate vehicles for publishing purposes and those entities, through third party agreements, exploited the work does not change that fact.  If Defendants' theory is correct that legal title vests with Plaintiffs' publishing companies, Plaintiffs have parted with copyright for the purpose of receiving royalties and have a right to those royalties through their companies.  In fact, Plaintiffs have put forth  more evidence of beneficial ownership than courts have even required.  Although the Court expressed skepticism about treating a wholly owned company and its owner as effectively one and the same since the IRS does not, beneficial ownership is an equitable doctrine specifically incorporated by Congress in the Copyright Act, the parameters of which have been fleshed out by the Courts.

Based on the above discussion and legal authorities, Plaintiffs' registrations are not "invalid," nor are they even subject to a claim to invalidate.  The registrations were not procured through fraud, no one has even suggested they were, much less proven it by clear and convincing evidence.  Therefore, the registrations continue to support maintenance of this action and a presumption of validity.  To the extent Defendants have challenged ownership, Plaintiffs have not simply relied on the presumption of validity afforded by the registrations, but have provided proof in the form of documentary evidence and affidavits.  Absent fraud, the correction of errors in a registration as a precondition to either the institution or maintenance of a lawsuit is antithetical to the very purpose of §411(b)(1).

---

[19] Defendants apparently cannot make up their mind as to which position to advance.  *Cf.* p. 3 of DE 230 (p. 10 of 28), "At the time the lawsuit was filed, TNF and FNG were the legal owners of the copyright interests derived from Jackson's and Harr's creative contributions to Hustlin" **and** p. 2 of DE 230 (p. 9 of 28), "At the time the lawsuit was filed, FNG, 3 Blunts and Sony/ATV were the legal owners of the copyright interests derived from Robert's creative contributions to Hustlin'" *with* p. 3 of DE 259 ( p. 8 of 17), "[D]ocumentary evidence establishes that FNG is a legal owner of the copyright in Hustlin and that 3 Blunts and TNF were legal owners of the copyright in Hustlin', but at the time of the alleged infringement and filing of this lawsuit (the relevant inquiry), were beneficial owners as a result of their respective pre-infringement transfers of each company's exclusive rights in Hustlin' to Sony/ATV and Nottingdale Songs, Inc."

[20] The Runners changed publishers since the filing of this case from Nottingdale to Warner Music.

Respectfully submitted,

GRAY ROBINSON, P.A.
Attorneys for Plaintiffs
333 S.E. Second Avenue, Suite 3200
Miami, Florida 33131
Karen.Stetson@gray-robinson.com
Phone: (305) 416-6880
Fax: (305) 416-6887

By: __/s/ Karen L. Stetson__
    Karen L. Stetson
    Florida Bar No: 742937
    Jonathan L. Gaines
    Florida Bar. No. 330361

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via CM/ECF to: **BARRY LAWRENCE ROTHBERG, ESQ.,** Greenberg Traurig, LLC, 333 SE 2nd Avenue, Suite 4400, Miami, FL 33131 and **VINCENT H. CHIEFFO, ESQ.,** Greenberg Traurig LLC, 1840 Century Park East, Suite 1900, Los Angeles, CA 90067 this 29th day of February, 2016.

By: __/s/ Karen L. Stetson__
    Karen L. Stetson
