**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-24700-CIV-WILLIAMS-SIMONTON**

WILLIAM L. ROBERTS, II p/k/a RICK ROSS )
and ANDREW HARR and JERMAINE )
JACKSON collectively p/k/a THE RUNNERS, )
                              )
        Plaintiffs, )
                              )
v. )
                              )
STEFAN KENDAL GORDY and SKYLER )
AUSTEN GORDY collectively p/k/a LMFAO, )
KOBALT MUSIC PUBLISHING AMERICA, )
INC., a Delaware corporation, KIA MOTORS )
AMERICA, INC., a California corporation, )
DAVID & GOLIATH, LLC, a Delaware limited )
liability company, DAVID JAMAHL )
LISTENBEE p/k/a GOON ROCK, NU80s )
MUSIC, LLC, a California limited liability )
company, LMFAO, LLC, a California limited )
liability company, PARTY ROCK, LLC, a )
California limited liability company, FOO & BLU, )
LLC, a California limited liability company, )
                              )
        Defendants. )
                              )
_____ )

**DEFENDANTS' VERIFIED MOTION FOR ATTORNEYS' FEES AND COSTS AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT FACTUAL BACKGROUND........................................................1

      A.      Plaintiffs Knew That They Lacked A Valid Copyright Registration In
*Hustlin'* Before They Filed This Lawsuit.............................................................1

      B.      Plaintiffs Knew That They Were Neither Legal Nor Beneficial Owners Of
*Hustlin'* Before They Filed This Lawsuit.............................................................2

      C.      Throughout This Litigation, Plaintiffs Failed To Address The Inaccuracies
And Inconsistencies Among The Three Copyright Registrations For *Hustlin'*
And Asserted Inconsistent Ownership Claims In *Hustlin'*.................................4

III.    ARGUMENT .........................................................................................................5

      A.      An Award Of Attorneys' Fees Is The "Rule Rather Than The Exception And
Should Be Awarded Routinely" In A Copyright Case........................................5

      B.      Defendants Are Clearly The Prevailing Parties: They Were "Completely
Successful" In Defeating Plaintiffs' Claims. ......................................................6

      C.      Each Of The *Fogerty* Factors Weigh Heavily In Favor Of Awarding
Defendants Attorneys' Fees.................................................................................9

            1.      The Filing Of A Copyright Infringement Action Without A Valid
Copyright Registration And Without Standing Was Objectively
Unreasonable And Frivolous. .................................................................9

                  (a)     Plaintiffs' Contention That A Valid Copyright Registration Is Not A
Prerequisite To A Copyright Infringement Action Was Objectively
Unreasonable And Frivolous. ........................................................10

                  (b)     Plaintiffs' Contention That They Have Standing Because They Are
"Legal And/Or Beneficial" Owners Of The *Hustlin'* Copyright Was
Objectively Unreasonable And Frivolous. .....................................11

            2.      Plaintiffs' Motivation In Filing This Suit And Their Litigation
Strategy Is Questionable.......................................................................14

            3.      The Imposition Of Attorneys' Fees Will Advance Considerations Of
Compensation And Deterrence..............................................................16

      D.      The Attorneys' Fees And Costs Incurred By Defendants Are Reasonable...................17

            1.      Defendants' Entitlement To Attorneys' Fees. .................................................17

i

2.      Defendants' Entitlement To Costs. ..................................................................20

3.      Defendants' Fees And Costs Are Reasonable. ................................................21

IV.      CONCLUSION ................................................................................................................23

LA132551330

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Civil Liberties Union of Georgia v. Barnes*,
    168 F.3d 423 (11th Cir. 1999) ............................................................................17, 18

*Amadasun v. Dreamworks, LLC*,
    359 F. Supp. 2d 1367 (N.D. Ga. 2005) ....................................................................10

*Arista Records, Inc. v. Beker Enterprises, Inc.*,
    298 F. Supp. 2d 1310 (S.D. Fla. 2003) ......................................................................5

*Arthur Kaplan Co. v. Panaria Int'l, Inc.*,
    No. 96 CIV. 7973 HB, 1999 WL 253646 (S.D.N.Y. Apr. 29, 1999) .....................20

*Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co.*,
    275 F.3d 1038 (11th Cir. 2001) ...............................................................................18

*Baker v. Urban Outfitters, Inc.*,
    431 F. Supp. 2d 351 (S.D.N.Y 2006) .......................................................................16

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989) ...................................................................................................21

*Blum v. Stenson*,
    465 U.S. 886 (1984) .................................................................................................18

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
    489 F.3d 1129 (11th Cir. 2007) .................................................................................9

*Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and
    Human Resources*,
    532 U.S. 598 (2001) ...................................................................................................7

*Cable/Home Commc'n Corp. v. Network Prods. Inc.*,
    902 F.2d 829 (11th Cir. 1990) ......................................................................6, 20, 21

*Casella v. Morris*,
    820 F.2d (11th Cir. 1987) ........................................................................................21

*CRST Van Expedited, Inc. v. E.E.O.C.*,
    136 S.Ct. 1642 (2016) ................................................................................................7

*Cuban Museum of Arts & Culture, Inc. v. City of Miami*,
    771 F. Supp. 1190 (S.D. Fla. 1991) .........................................................................17

LA132551330

*Earth Flag Ltd. v. Alamo Flag Co.*,
 154 F.Supp.2d 663 (S.D.N.Y. 2001)...................................................................10

*Embassy Software Corp. v. eCopy, Inc.*,
 592 F. Supp. 2d 225 (D.N.H. 2009)...................................................................12

*Fantasy Inc., v. Fogerty v.*
 94 F.3d 553 (9th Cir.1998) ...............................................................................6

*Fogerty v. Fantasy, Inc.*,
 510 U.S. 517 (1986)..............................................................................5, 6, 9, 17

*Gilbert v. New Line Prods.*,
 No. CV 09-02231-RGK, 2010 WL 5790688 (C.D. Cal. Dec. 6, 2010)...................14

*Harris v. Lexjet Corp.*,
 No. 3:09-CV-616, 2010 WL 133599 (E.D. Va. Jan. 11, 2010) .............................8

*Hartman v. Hallmark Cards, Inc.*,
 833 F.2d 117 (8th Cir. 1987) .............................................................................7

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)...........................................................................................7

*Hermosilla v. Coca-Cola Co.*,
 No. 10-21418-CIV, 2011 WL 9364952 (S.D. Fla. July 15, 2011)
 .................................................................................................6, 9, 18, 20

*Hutson v. Notorious B.I.G.*,
 LLC, No. 14-cv-2307 (RJS), 2015 U.S. Dist. LEXIS 170733 (S.D.N.Y. Dec.
 21, 2015) ........................................................................................................12

*InvesSys, Inc. v. McGraw–Hill Companies, Ltd*,
 369 F.3d 16 (1st Cir.2004)...............................................................................20

*Jobete Music Co. v. Hampton*,
 864 F. Supp. 7 (S.D. Miss. 1994)........................................................................5

*Johnson v. Georgia Highway Exp., Inc.*,
 488 F.2d 714 (5th Cir.1974) .............................................................................21

*Johnson v. Gordon*,
 409 F.3d 12 (1st Cir. 2005)...........................................................................18, 21

*Kelley v. Universal Music Grp.*,
 14 CIV.2968 PAE, 2015 WL 6143737 (S.D.N.Y. Oct. 19, 2015).........................13

iv

*Kernel Records Oy v. Mosley*,
   694 F.3d 1294 (11th Cir. 2012) ............................................................................9

*Kernel Records Oy v. Mosley*,
   No. 09-21597-CIV, 2013 WL 3762452 (S.D. Fla. July 16, 2013) ................................. *passim*

*Kohus v. Mariol*,
   328 F.3d 848 (6th Cir. 2003) ............................................................................18

*Liberty Mut. Ins. Co. v. Employee Res. Mgmt., Inc.*,
   176 F. Supp. 2d 510 (D.S.C. 2001).....................................................................17

*Lil' Joe Wein Music, Inc. v. Jackson*,
   No. 06–20079–CIV, 2008 WL 2688117 (S.D. Fla. July 1, 2008) ................................. *passim*

*Marion v. Barrier*,
   694 F.2d 229 (11th Cir. 1982) ............................................................................21

*Micromanipulator Co., Inc. v. Bough*,
   779 F.2d 255 (5th Cir. 1985) ............................................................................5

*MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*,
   198 F. 3d 840 (11th Cir. 1999) ...................................................................6, 9, 16

*Moran v. London Records, Ltd.*,
   827 F.2d 180 (7th Cir. 1987) ............................................................................12

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*,
   No. 09 CV 2669 LAP, 2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012) ...............................16

*Norman v. Housing Auth. of City of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) .....................................................................17, 18

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*,
   684 F.2d 821 (11th Cir. 1982) ............................................................................6

*Perry v. Zinn Petroleum Companies, LLC*,
   495 F. App'x 981 (11th Cir. 2012) .......................................................................8

*Pinkham v. Camex, Inc.*,
   84 F.3d 292 (8th Cir.1996) ............................................................................20

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010).................................................................................10, 16

*Saregama India Ltd. v. Mosley*,
   635 F.3d 1284 (11th Cir. 2011) .........................................................................11

v

*Sherry Mfg. Co. v. Towel King of Florida, Inc.*,
  822 F.2d 1031 (11th Cir.1987) ........................................................................6, 14

*Smith v. Casey*,
  741 F.3d 1236 (11th Cir. 2014) ......................................................................11, 13

*Towler v. Sayles*,
  76 F.3d 579 (4th Cir. 1996) ..................................................................................18

*TufAmerica Inc. v. Diamond*,
  No. 12-CV-3529 (AJN), 2016 U.S. Dist. LEXIS 30645 (S.D.N.Y. Mar. 9,
  2016) .............................................................................................................10, 16

*Warner Bros. v. Dae Rim Trading, Inc.*,
  877 F.2d 1120 (2d Cir. 1989) ................................................................................6

*Warren v. Fox Fam. Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) .............................................................................12

*Wild v. NBC Universal*,
  No. CV 10-3615 GAF, 2011 WL 12877031 (C.D. Cal. July 18, 2011) .......9, 14, 15

*Woodhaven Homes & Realty, Inc. v. Hotz*,
  396 F.3d 822 (7th Cir. 2005) .................................................................................6

**Federal Statutes**

17 U.S.C. § 201(a) ....................................................................................................11

17 U.S.C. § 411 .........................................................................................................11

17 U.S.C. § 411(a) .................................................................................................9, 10

17 U.S.C. § 411(b) ....................................................................................................10

17 U.S.C. § 501(b) ....................................................................................................11

17 U.S.C. § 505 ................................................................................................ *passim*

28 U.S.C. § 1746 ......................................................................................................23

28 U.S.C. § 1821(b) ..................................................................................................18

28 U.S.C. § 1920 ......................................................................................................20

**Rules**

Federal Rules of Civil Procedure, Rule 54(d)(2) ......................................................1

vi

U.S. District Court, Southern District of Florida Local Rules, Rule 7.3 .........................................1

U.S. District Court, Southern District of Florida Local Rules, Rule 7.3(b)................................23

**Other Authorities**

H.R. Rep. No. 94-1476, 159 (1976)...........................................................................11

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.12 (2009)........................11

5 Melville B. Nimmer & David Nimmer,  *Nimmer on Copyright*, § 14.10 Attorney's
    Fees ...................................................................................................................7

1976 U.S. Code Cong. & Ad. News 5659, 5775 ...........................................................11

LA132551330

Pursuant to Federal Rule of Civil Procedure 54(d)(2), Local Rule 7.3, and 17 U.S.C. § 505, Defendants Stefan Kendal Gordy, Skyler Austen Gordy, Kobalt Music Publishing America, Inc., Kia Motors America, Inc., David & Goliath, LLC, David Jamahl Listenbee p/k/a/ Goonrock, Nu80s Music, LLC, LMFAO, LLC, Party Rock, LLC, and Foo & Blu, LLC (collectively, "Defendants"), by and through their undersigned counsel, respectfully move this Court for entry of an order awarding them their reasonable attorneys' fees and associated expenses incurred in defending this action.

## I.        INTRODUCTION

Long before this litigation commenced, Plaintiffs were not in possession of a valid copyright registration for the musical composition *Hustlin'*, and were neither legal nor beneficial owners of *Hustlin'*. Plaintiffs nevertheless filed this lawsuit alleging infringement of *Hustlin'* by *Party Rock Anthem* nearly three years after *Party Rock Anthem* was released, and litigated the case for over two years and through the eve of trial, causing Defendants to incur substantial attorneys' fees and costs in defending this case.

The Court has now definitively confirmed that Plaintiffs lack a valid copyright registration in *Hustlin'* and that even if there were a valid registration, Plaintiffs do not have standing to assert infringement claims for the *Hustlin'* musical composition. In other words, Plaintiffs either failed to adequately investigate two basic prerequisites to bringing a copyright infringement claim, or chose to ignore the undisputed facts foreclosing their ability to claim infringement of *Hustlin'*. In either event, the result should be the same: Defendants should be awarded their fees and costs in defending this action that should have never been filed.

## II.        RELEVANT FACTUAL BACKGROUND

### A.        Plaintiffs Knew That They Lacked A Valid Copyright Registration In *Hustlin'* Before They Filed This Lawsuit.

*Hustlin'* was created in 2005. Dkt. 399 ("Dismissal Order") at 9; Dkt. 372-2 at 42:1-43:22; Dkt. 245-3 at 72:15-23. Shortly after creating *Hustlin'*, Roberts distributed copies of *Hustlin'* for public performance to DJs, and *Hustlin'* was played extensively on the radio and in clubs before the end of 2005. Dkt. 372-2 at 33:3-35:10. Because *Hustlin'* had *already* garnered popularity from radio play and in clubs, Def Jam Recordings solicited a distribution deal for *Hustlin'* in "early '06." Dkt. 372-2 at 27:14-21, 69:23-71:3; Dkt. 372-5.

Notwithstanding Plaintiffs' admission that *Hustlin'* was published in 2005 (*see, e.g.*, Declaration of Vincent H. Chieffo ("Chieffo Decl."), ¶¶ 72, 73, Ex. 25 at 48:22-49:1 (Roberts released *Hustlin'* "sometime in 2005"), the first copyright registration for *Hustlin'*, registration

number Pau3-024-979, filed by Harr and Jackson's transactional attorney Leonard Zackheim on February 28, 2006, identifies *Hustlin'* as an unpublished composition. Dismissal Order at 10. Had the Copyright Office known of this misrepresentation at the time, it would have refused to issue registration Pau3-024-979 for *Hustlin'*. Dkt. 383 at 5.

The two other copyright registrations are also fatally flawed. Both registration PA 1-334-589, filed by Warner-Chappell Music on June 28, 2006, and registration PA 1-367-972, filed by Sony/ATV Music Publishing on February 27, 2007, incorrectly identify the date of creation for *Hustlin* as 2006. Dismissal Order at 10-11. The Copyright Office would have refused to issue either registration had it known that the date of *Hustlin'*s creation in the applications was incorrect. Dkt. 383-1 at 5. The Copyright Office also would have refused to issue registration PA 1-367-972 had it known that registration PA 1-334-589 already existed for the same work in a published version. *Id.*

The Court determined that Plaintiffs cannot reasonably disclaim knowledge of the inaccuracies in the *Hustlin'* registrations. Each of these registrations lists Trac 'N Field Entertainment, LLC ("TNF") as a claimant, and Harr and Jackson make all decisions concerning TNF's business. Dismissal Order at 29; Dkt. 376 ¶¶ 35, 36. Two of the registrations list Roberts' publishing entities, 3 Blunts Lit at Once, LLC ("3 Blunts") and 3 Blunts d/b/a 4 Blunts Lit at Once ("4 Blunts"), as claimants, and the first registration lists Roberts as a claimant. Dismissal Order at 10, 26. Roberts, Harr, and Jackson indisputably knew when *Hustlin'* was published when it was created, and knew or should have known that the registrations naming them or their companies as claimants contained inaccurate information. At a minimum, Plaintiffs could have discovered these inaccuracies before filing suit by searching the Copyright Office's online records. Dismissal Order at 23.

## B.  Plaintiffs Knew That They Were Neither Legal Nor Beneficial Owners Of *Hustlin'* Before They Filed This Lawsuit.

Plaintiffs have never taken a definitive position regarding their shared ownership in *Hustlin'*, or whether they are legal or beneficial owners, or owners of any specific exclusive rights, in *Hustlin'*. Dismissal Order at 35 n.33; Dkt. 256-4, Exs. 6-14. Indeed, agreements Plaintiffs entered into among themselves  and with Sony/ATV in contemplation of this litigation (and which specifically reference Plaintiffs' counsel's firm as litigation counsel) acknowledge and confirm that even by September 2012, Plaintiffs did not know whether or not they or their "wholly owned companies" had an ownership interest in *Hustlin'*. *See* Chieffo Decl., ¶¶ 72, 74 – 76, Exs. 22, 23 ("WHEREAS Ross and the Runners (*or their wholly owned companies*) each own a portion of the copyright for the composition "Hustlin'") (emphasis added), and Ex. 24 (Ross not a party to either 2012 *Hustlin'*

Litigation Agreement or the 2006 Publishing Agreement with Sony/ATV). In the 14 months between the execution of these agreements and the filing of the lawsuit, Plaintiffs did nothing to establish their individual ownership interests, and yet chose to file suit in their individual capacities.

Plaintiffs have further never produced any document that identifies how the authors of *Hustlin'* originally split its ownership. Dkt. 376 ¶ 33. To the contrary, Plaintiffs' own evidence demonstrates that Plaintiffs either never were owners of *Hustlin'*, or Plaintiffs parted with any ownership they had long before filing this lawsuit. Understanding that this was a significant weakness in their case, Plaintiffs repeatedly stonewalled Defendants in their efforts to obtain discovery on the issue and ultimately took inconsistent positions. Dkt. 256-4, Exs. 6-14.

Plaintiffs agree that Roberts originally possessed a 50% ownership in *Hustlin'*. Dkt. 376 ¶ 7. Roberts' ownership in *Hustlin'* was governed by his 2001 recording agreement with Slip 'N Slide Records ("SNS"), pursuant to which SNS acquired 50% of Roberts' ownership in *Hustlin'*. Dismissal Order at 9. On January 31, 2006, Roberts and SNS amended their recording agreement, under which First-N-Gold, LLC ("FNG") received 25% of Roberts' share of copyrights in compositions created under the agreement and 12.5% of the copyright in *Hustlin'*, leaving Roberts with 37.5% of the copyright in *Hustlin'*. Dismissal Order at 9; Dkt. 376 ¶ 15-17.

On May 1, 2006, Sony/ATV Tunes LLC entered into an agreement with Roberts' publishing company, 3 Blunts, and Roberts assigned 100% of his interests in copyrighted musical compositions to 3 Blunts, which granted 3 Blunts 37.5% ownership in *Hustlin'*. Dismissal Order at 8-9. Roberts is the sole owner or member of 3 Blunts. Dkt. 376 ¶ 11. Under that May 2006 agreement, 3 Blunts assigned 50% of its 37.5% interest in *Hustlin'* to Sony/ATV, granting Sony/ATV 18.75% ownership in *Hustlin'* and an exclusive license to 3 Blunts' remaining 18.75% share. Dismissal Order at 9; Dkt. 376 ¶ 24. Also in May 2006, 3 Blunts entered into an agreement with TNF, Harr and Jackson's company, and FNG, in which the three companies acknowledge that their respective shares of *Hustlin'* were 37.5% 3 Blunts, 12.5% FNG, and 50% TNF. Dismissal Order at 9-10.

On July 24, 2006, Sony/ATV and 3 Blunts amended their publishing agreement to provide that, effective January 31, 2006, 4 Blunts (a mere d/b/a of 3 Blunts) assigned 50% of its 37.5% interest in *Hustlin'* to Sony/ATV Songs LLC (BMI). Dismissal Order at 10. Based on each of these agreements, as of January 31, 2006 "Roberts had 0% interest in *Hustlin'*." Dismissal Order at 31. Acknowledging this fact, on September 12, 2012, 3 Blunts—not Roberts—entered into an agreement with Sony/ATV that purported to grant 3 Blunts—not Roberts—a right to initiate a "legal action

3

against the Party Rock Writers and/or Kobalt" regarding the alleged infringement of *Hustlin'*. Dkt. 376 ¶ 58; Chieffo Decl. ¶ 75, Ex.24. Notably, by this point in time, it was already contemplated that Plaintiffs' counsel would be representing 3 Blunts (again, not Roberts) in any litigation concerning *Party Rock Anthem*. *Id.*; Dkt. 230-5, Ex. 33 ¶ 2 at 1.

Harr and Jackson created TNF in 2003 to conduct their entertainment business (Dismissal Order at 8), are the sole owners and employees of TNF, and receive a fixed amount of money each month from TNF. *Id.* at 8-9; Dkt. 230-3, Ex. 7 at 42:5-43:12; *id.*, Ex. 9 at 65:11-66:15. Creating *Hustlin'* was within the scope of Harr and Jackson's employment with TNF. Dkt. 376 ¶ 92(a).

On October 18, 2005, TNF entered into a producer's agreement regarding *Hustlin'* with SNS in which TNF assigned 50% of its interest in *Hustlin'* to FNG. Dismissal Order at 37; Dkt. 376 ¶ 38. On November 17, 2006, TNF entered into an exclusive publishing licensing agreement with Notting Dale Songs, Inc. ("Notting Dale"), in which TNF granted Notting Dale a 37.5% interest in *Hustlin'* in exchange for the payment of royalties to TNF. Dismissal Order at 37. None of these agreements, which were executed by both or one of Harr and Jackson, or any other documents produced in this matter, reference any ownership interest in *Hustlin'* that originally belonged to Harr or Jackson.

Nor have Plaintiffs produced any documents evidencing that they personally receive royalties in exchange for the exploitation of an exclusive right in *Hustlin'*. Dkt. 376 ¶¶ 34, 56. At least in the case of Harr and Jackson, they admit that any royalties earned from *Hustlin'* are paid to TNF directly, and not them personally. Dismissal Order at 41. Further, under the contracts that Plaintiffs executed, the exclusive right to authorize or create derivative works of *Hustlin'* belongs to Sony/ATV, FNG, and Notting Dale. Dismissal Order at 41-42.

C.     **Throughout This Litigation, Plaintiffs Failed To Address The Inaccuracies And Inconsistencies Among The Three Copyright Registrations For *Hustlin'* And Asserted Inconsistent Ownership Claims In *Hustlin'*.**

*Party Rock Anthem* was released in January 2011, reached number one on the Billboard Hot 100 chart on July 7, 2011, remained number one for the following six weeks, and stayed on the Billboard Hot 100 chart for a total of 68 weeks. Dkt. 376 ¶¶ 63, 66. *Party Rock Anthem* first aired in the Kia Share Some Soul Commercial on August 28, 2011. *Id.* ¶ 69. Sony/ATV and FNG/SNS were "prepared to take action" regarding *Party Rock Anthem* as early as August 2012. Dkt. 186, Ex. A.

Plaintiffs, in their individual capacities and without any of the legal or beneficial owners of *Hustlin'*, waited to file suit until December 2013. Dkt. 185, Ex. A. Defendants alerted Plaintiffs that their ownership of a valid copyright registration in *Hustlin'* was questionable through their March

4

2014 Answer (Dkt. 14), in which they identified the three inconsistent copyright registrations for *Hustlin'*. Defendants also asserted affirmative defenses based on Plaintiffs' failure to join indispensable parties and lack of standing as legal or beneficial owners. Dkt. 14 ¶¶ 52, 73. Indeed, as the legal invoices and Excel schedule attached to the concurrently filed Chieffo Declaration reflect, Defendants were investigating the fatal issues with the *Hustlin'* chain of title from the very outset and throughout the litigation. *See, e.g.*, Chieffo Decl. ¶¶ 7, 30, Exs. 1, 5.

When Defendants questioned Plaintiffs regarding unpublished registration Pau3-024-979 in discovery, Plaintiffs stated that they were "surprised by" the registration and "did not stand behind it," (Dkt. 190 at 58:19-23), and, later, rather than explaining the registration, Plaintiffs asserted that any communications with Mr. Zackheim (TNF's attorney who filed the application) regarding the registration were attorney client privileged. Dkt. 192-1 at 4-5.

Plaintiffs further never confirmed their legal or factual grounds for filing this lawsuit as individuals. Rather, Plaintiffs continued to assert in discovery that they owned *Hustlin'* through their companies, yet Plaintiffs inconsistently moved for summary judgment on the grounds that they individually had standing to sue for *Hustlin'*'s alleged infringement. *See* Dkt. 230-4, Ex. 23 ¶ 20 (Roberts asserting ownership in *Hustlin'* through 3 Blunts and 3 Blunts' d/b/a, 4 Blunts); *id.*, Ex. 24 ¶ 1 (Jackson asserting ownership in *Hustlin'* through TNF); *id.*, Ex. 25 ¶ 1 (Harr asserting ownership in *Hustlin'* through TNF); Dkt. 228 (Plaintiffs' motion for summary judgment on their standing to sue individually for infringement).

## III.    ARGUMENT

### A.   An Award Of Attorneys' Fees Is The "Rule Rather Than The Exception And Should Be Awarded Routinely" In A Copyright Case.

Section 505 of the Copyright Act expressly authorizes courts to award full costs, which may include reasonable attorney's fees, to the prevailing party. 17 U.S.C. § 505. In copyright cases, "'although attorneys' fees are awarded in the trial court's discretion, they ***are the rule rather than the exception*** and should be awarded routinely.'" (emphasis added) *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1315-16 (S.D. Fla. 2003) (quoting *Jobete Music Co. v. Hampton*, 864 F. Supp. 7, 10 (S.D. Miss. 1994) (citing *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985)). This is true regardless of whether the prevailing party is the defendant or the plaintiff. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523 (1986) (there is "no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees.").

This presumption of granting attorneys' fees is particularly strong where, as here, the

CASE NO.: 1:13-CV-24700-KMW

prevailing party is the defendant. *See Hermosilla v. Coca-Cola Co*., No. 10-21418-CIV, 2011 WL 9364952, *4 (S.D. Fla. July 15, 2011) *aff'd*, 492 F. App'x 73 (11th Cir. 2012) ("where a defendant is the prevailing party in a copyright case, the presumption in favor of awarding fees is very strong") (citing *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06–20079–CIV, 2008 WL 2688117, at *4 (S.D. Fla. July 1, 2008)); *see also Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005) ("When the prevailing party is the defendant…the presumption in favor of awarding fees is very strong. For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights.").

The Eleventh Circuit has emphasized that the "only preconditions to an award of fees is that the party receiving the fee be the 'prevailing party' and that the fee be reasonable.'" *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F. 3d 840, 842 (11th Cir. 1999) (citing *Original Appalachian Artworks, Inc. v. Toy Loft, Inc*., 684 F.2d 821, 832 (11th Cir. 1982)). However, the Supreme Court has enumerated four non-exclusive factors relevant to a Section 505 analysis, namely: (1) frivolousness; (2) objective unreasonableness; (3) motivation; and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty*, 510 U.S. at 534; *see also MiTek*, 198 F.3d at 842 (identifying *Fogerty* factors).

"A prevailing party in a copyright action need not prove blameworthiness or exceptional circumstances to be awarded attorney's fees. While the court may consider culpability, the court is not required to do so." *Lil' Joe Wein Music, Inc*., 2008 WL 2688117, at *4 (citing *Fantasy Inc., v. Fogerty v.* 94 F.3d 553, 558 (9th Cir.1998); *Sherry Mfg. Co. v. Towel King of Florida, Inc*., 822 F.2d 1031, 1034 (11th Cir.1987). In determining whether to award prevailing party fees, the court may not consider whether the losing party can afford to pay the fees, but must rather consider whether the imposition of fees will further the goals of the Copyright Act. *Id.* (citing *MiTek*, 198 F.3d at 843.

Plaintiffs' lawsuit was dismissed in its entirety, making Defendants the prevailing parties that are entitled to a presumption of an award of attorneys' fees. Consideration of the *Fogerty* factors further confirms that an award of Defendants' attorneys' fees is appropriate in this case.

## B.    Defendants Are Clearly The Prevailing Parties: They Were "Completely Successful" In Defeating Plaintiffs' Claims.

The "prevailing party under the attorneys' fee authorization of Section 505 of the Copyright Act is identified as the party succeeding on a significant, litigated issue that achieves some of the benefits sought by that party in initiating the suit." *Cable/Home Commc'n Corp. v. Network Prods. Inc.*, 902 F.2d 829, 853 (11th Cir. 1990) (citing *Warner Bros. v. Dae Rim Trading, Inc.*, 877 F.2d

1120, 1126 (2d Cir. 1989); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 122 (8th Cir. 1987)); *see also Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001) ("a litigant 'prevails' (for purposes of fee-shifting statutes) when it obtains a 'material alteration of the legal relationship of the parties.'"). The determination of "prevailing party" under the Supreme Court's ruling in *Buckhannon* depends upon the nature of the case, and "when the court concludes that plaintiff lacks standing, rather than that there is a jurisdictional defect, fees may be awarded." 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.10 Attorney's Fees [3] (citations omitted). A ruling on the merits of the claim, e.g., whether there was substantial similarity, is not required in order for a party to be considered the prevailing party. *See CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S.Ct. 1642, 1646, 1651 (2016) (ruling that "a favorable ruling on the merits is not a necessary predicate to find that a defendant has prevailed" where the E.E.O.C. failed to satisfy Title VII's pre-suit requirements in investigating the claims at issue, and that "[c]ommon sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits.").

As set forth above, the Court's Dismissal Order fully and completely resolves Plaintiffs' claims in Defendants' favor. In short, because the Court found that Plaintiffs did not have a valid copyright registration when they filed the lawsuit (and even if they did, they did not have standing to assert any claims under any one of their three invalid copyright registrations), Defendants' success in this action is total and complete. *See Kernel Records Oy v. Mosley*, No. 09-21597-CIV, 2013 WL 3762452, at *3 (S.D. Fla. July 16, 2013) (granting award of attorneys' fees where plaintiff's "suit was dismissed for failure to meet statutory prerequisites for a copyright claim, not jurisdiction, improper venue, or failure to join a party.").

While there is a theoretical possibility that a valid copyright registration for *Hustlin'* may someday be obtained, and that the legal or beneficial owners of *Hustlin'* (which are not now the individual Plaintiffs) may then bring an infringement lawsuit against Defendants, such a possibility does not render the Dismissal Order any less of a complete adjudication in Defendants' favor because these individual Plaintiffs could not file a new complaint without altering their legal position (i.e., by actually obtaining standing). Like the plaintiff in *Kernel Records Oy*, Plaintiffs are barred from pursuing the claims asserted in this litigation. These Plaintiffs, however, are worse off than the plaintiff in *Kernel Records Oy* because in that case, the plaintiff could refile after simply obtaining a valid copyright registration. *Kernel Records Oy*, 2013 WL 3762452, at *11. Here, it is clear that even

7

if a new, valid registration was secured, these Plaintiffs would not have standing because they lack what the plaintiff in *Kernel Records Oy* had, an ownership (legal or beneficial) in the copyrighted work. And, the only way Plaintiffs could secure standing would be to enter into new agreements conveying an interest in the copyright with the legal owners of the copyright (currently Sony/ATV, Warner/Chappell, and FNG). Thus, Plaintiffs would have to obtain new rights that they do not own now in order to have copyright standing sufficient to prosecute an infringement claim.

Moreover, because "Defendants have successfully and finally avoided…years' worth of damages" due to the absence of a valid copyright registration, Plaintiffs' lack of standing, and the application of the statute of limitations, they are the prevailing parties. *Kernel Records Oy*, 2013 WL 3762452, at *5 ("Given the current state of the law, therefore, we readily find that summary judgment and the resulting dismissal of claims for failing to register a copyright is definitely not a dismissal for lack of subject matter jurisdiction…And given the uncontroverted effect on the limitations period on that dismissal, there is little doubt that the effect of the summary judgment is to render the Defendants as prevailing parties on any and all copyright claims that predated the registration."); *see also Perry v. Zinn Petroleum Companies, LLC*, 495 F. App'x 981, 984 (11th Cir. 2012). The court in *Kernel Records Oy* expressly rejected plaintiff's argument that defendants were not prevailing parties because it could refile its action. *Kernel Records Oy*, 2013 WL 3762452, at *6. The court held:

> The statute of limitations bars all claims outside three years from filing. Prior to the grant of summary judgment, Defendants were at risk as to all claims regarding [the work at issue]. Now, Defendants have successfully avoided liability to all ownership claims and most infringement claims. This change in the relationship between parties, which precludes most litigation in a new action, is hardly "more like a draw than a victory."

*Id*. (quoting *Harris v. Lexjet Corp.*, No. 3:09-CV-616, 2010 WL 133599, at*1 (E.D. Va. Jan. 11, 2010)).

This Court has determined that Plaintiffs cannot maintain this lawsuit because they did not have a valid copyright registration for *Hustlin'* when the lawsuit was filed, and even if they did, they would not have standing to assert their infringement claims under any of the invalid copyright registrations. Even if Plaintiffs were to obtain a valid registration, because "Defendants have successfully avoided liability to all…infringement claims" (*Kernel Records Oy*, 2013 WL 3762452, at *6), and Plaintiffs would have to alter their legal position in order to obtain standing, Defendants are the prevailing parties.

8

C. **Each Of The *Fogerty* Factors Weigh Heavily In Favor Of Awarding Defendants Attorneys' Fees.**

1. The Filing Of A Copyright Infringement Action Without A Valid Copyright Registration And Without Standing Was Objectively Unreasonable And Frivolous.

Plaintiffs' contentions regarding their ability to file suit without a valid copyright registration and their standing to pursue the claims in this lawsuit were at best objectively unreasonable, and likely frivolous.

The factors of "objective reasonableness" and frivolousness, while separate factors, may be considered together because they both require an assessment of whether the positions taken by Plaintiffs lacked legal and factual bases. *Wild v. NBC Universal*, No. CV 10-3615 GAF (AJWx), 2011 WL 12877031 at *2 (C.D. Cal. July 18, 2011). While a "finding of a frivolous suit is not a prerequisite to attorney's fees…., the purposes of the copyright law are served only when parties litigate meritorious claims of infringement." (internal citation omitted) *Kernel Records Oy*, 2013 WL 3762452, at *8 (citing *Hermosilla*, 492 F. App'x at 75); *see also MiTek Holdings, Inc.*, 198 F.3d at 842 (encouraging parties to raise objectively reasonable claims and defenses in order to further the purposes of the Copyright Act). Here, the findings of the Court in the Dismissal Order confirm the objective unreasonableness—if not the frivolousness—of Plaintiffs' claims.

The case of *Kernel Records Oy* is on point. In *Kernel Records Oy*, the district court awarded defendants' motion for summary judgment because the plaintiff did not have a valid copyright registration in the work at issue prior to filing suit. *Kernel Records Oy*, 2013 WL 3762452, at *3. The Eleventh Circuit affirmed, holding that the plaintiff "bears the burden of proving compliance with statutory formalities, including the registration formalities…and without a certificate of registration, [plaintiff's] infringement suit was over before it began." (internal citation omitted) *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012) (citing 17 U.S.C. § 411(a); *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1142 (11th Cir. 2007)). As Plaintiffs' counsel (defense counsel in *Kernel Records Oy*) noted in her fee application in *Kernel Records Oy*:

> Plaintiff at all times bore the burden of proving the basic elements of its copyright claim, the first of which includes proving either pre-suit registration or an exemption from that requirement. The Eleventh Circuit could not have been clearer that Plaintiff's utter failure to present probative evidence on this essential element rendered its case "doomed" from the outset. Courts have repeatedly held that such a lack of evidence or failure to meet the elements renders a plaintiff's case "objectively unreasonable." Indeed, the Eleventh Circuit's characterization of Plaintiff's lawsuit as "not properly commenced" would seem to be the very definition of an "objectively unreasonable" case.

*Kernel v. Mosley*, Case 1:09-cv-21597-EGT, Dkt. 264 (S.D. Fla. Feb. 14, 2014).

Defendants, this Court, and courts around the country, agree with Plaintiffs' counsel. *See Kernel Records Oy*, 2013 WL 3762452, at *9 ("this Court finds [plaintiff's] failure to prove it 'own[ed] a valid copyright for the work on which he primarily relied for his infringement claim' creates the presence of an objectively unreasonable claim.") (quoting *Amadasun v. Dreamworks, LLC*, 359 F. Supp. 2d 1367, 1375-76 (N.D. Ga. 2005) (awarding attorney's fees to defendant because of, *inter alia*, "lack of evidentiary support" for plaintiff's claims); *TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2016 U.S. Dist. LEXIS 30645, at *6 (S.D.N.Y. Mar. 9, 2016) (awarding attorneys' fees where the "deficiencies of the agreements cited by Plaintiff as conveying an exclusive license [and therefore standing] were readily apparent, rendering its claim 'clearly without merit' and 'objectively unreasonable.'"); *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F.Supp.2d 663, 667-668 (S.D.N.Y. 2001) (holding plaintiff's claim to be objectively unreasonable because plaintiff could not establish even the first element of a copyright infringement claim).

     (a)    Plaintiffs' Contention That A Valid Copyright Registration Is Not A Prerequisite To A Copyright Infringement Action Was Objectively Unreasonable And Frivolous.

Plaintiffs argued that despite the existence of three copyright registrations for *Hustlin'*, each with one or more inaccuracies, Plaintiffs "can simply choose which registration satisfies the Act's [registration] requirements prior to bringing suit."[1] Dismissal Order at 19. Such a position is objectively unreasonable. And, as this Court noted, if "the Court were to permit Plaintiffs to unilaterally adjudicate which registration is valid and therefore, which one satisfies the Act's requirements, the Court not only would be abdicating its own responsibilities, but also would be, in effect, invalidating the other two registrations [which] the Court cannot do without seeking the Register's advice under § 411(b)" of the Copyright Act. Dismissal Order at 19.

After the Copyright Register confirmed that she would not have registered any of the three registrations for *Hustlin'*, Plaintiffs took the objectively unreasonable position that Defendants were required to prove fraud, i.e., that each filer of each application knowingly and intentionally defrauded the Copyright Office in submitting the inaccurate applications. *See* Dkt. 391 at 2-6. As the Court noted, however, Section 411(b) "says nothing about an intent to defraud the Copyright Office",

---

[1]    Plaintiffs also frivolously argued that a valid copyright registration is not a prerequisite to a copyright infringement suit, despite clear Supreme Court authority to the contrary. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) ("[t]he registration requirement in 17 U.S.C. § 411(a)…imposes a precondition to filing a claim…").

CASE NO.: 1:13-CV-24700-KMW

(Dismissal Order at 21), and in any event, the "record in this case belies any notion that the errors were inadvertent." Dismissal Order at 22. The Court's Dismissal Order confirms that Plaintiffs' "theory" regarding the validity of its copyright registrations was objectively unreasonable and frivolous, particularly given that Plaintiffs were aware that there were three inconsistent registrations for *Hustlin'* over two years ago and yet continued to litigate this case through the eve of trial. *See* Dkt. 35 (Defendants' Answer to Complaint identifying the three copyright registrations and the contradictory information provided in each registration); *see* Dkt. 255-1, Exs. A-C at ¶¶ 2, 37 (Defendants' Requests for Production seeking documentation regarding registration of *Hustlin'* copyrights); Dkt. 230-5, Ex. 36 ¶¶ 2, 37 (Plaintiffs' responses to Defendants' Requests for Production); Chieffo Decl. ¶¶ 71, 73.

> (b)    Plaintiffs' Contention That They Have Standing Because They Are "Legal And/Or Beneficial" Owners Of The *Hustlin'* Copyright Was Objectively Unreasonable And Frivolous.

Like Plaintiffs' contentions regarding the existence of a valid copyright registration, Plaintiffs' "theory" regarding the bases for their standing to assert the infringement claims in this suit (assuming there was a valid copyright registration), are objectively unreasonable and frivolous, and indeed, unclear even to this date.

The Copyright Act provides that only the "legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). As to legal ownership, "[t]he basic principle … is that only the copyright owner, or the owner of exclusive rights under the copyright … has standing to bring an action for infringement of such rights." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.12 (2009); *accord Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1297 (11th Cir. 2011) (the holder of a nonexclusive license lacks standing to sue for copyright infringement).

A beneficial owner includes "an author who has parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." *Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (citing H.R. Rep. No. 94-1476, 159 (1976), reprinted in 1976 U.S. Code Cong. & Ad. News 5659, 5775). However, one who creates a work-for-hire is neither a legal nor beneficial owner of copyright and "lacks statutory standing to maintain an infringement suit" because in such case it is the employer that is considered the author. *Id.* at 1242 (citing 17 U.S.C. § 201(a)). This is the case even if the work-for-hire arrangement requires the employer to pay royalties to the employee

based on the future exploitation of the work-for-hire. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1142 (9th Cir. 2003); *see also Moran v. London Records, Ltd.*, 827 F.2d 180, 181,183 (7th Cir. 1987). An individual plaintiff who (like Plaintiffs here) claims it does business as its corporate entity does not have standing to sue where the corporate entity – not the individual – is identified as the copyright owner. *See, e.g.*, *Hutson v. Notorious B.I.G.*, LLC, No. 14-cv-2307 (RJS), 2015 U.S. Dist. LEXIS 170733, *15 (S.D.N.Y. Dec. 21, 2015) (plaintiff's company and copyright claimant "SGP, however, is not an independent Plaintiff in this action, and merely listing in the caption of the First Amended Complaint that Plaintiff does business as SGP fails to establish that Plaintiff and SGP should be treated as the same entity for purposes of copyright ownership."). Courts should not "ignore…corporate form" when deciding standing to sue under the Copyright Act. *Id*. at *16; *see also Embassy Software Corp. v. eCopy, Inc.*, 592 F. Supp. 2d 225, 233 (D.N.H. 2009) (while the status of a copyright claimant as an administratively dissolved corporation may not invalidate its copyright registration, the assignee of that dissolved corporation's intellectual property rights does not have standing to sue for copyright infringement because it lacks a legal interest in the copyright).

As the Court noted, "[a]t no point – not even in their own motion for summary judgment on ownership—have Plaintiffs taken a definitive position regarding their ownership shares, whether they are legal or beneficial owners, or what exclusive right(s) they own." Dismissal Order at 35 n.33.[2] Plaintiffs' responses to Defendants' discovery requests specifically seeking this information as early as April 24, 2014 and throughout discovery—were similarly lacking. *See* Dkt. 256-4, Exs. 2-5 (Defendants' Requests for Production and Interrogatories to Plaintiffs); Exs. 6-14 (Plaintiffs' Responses and Amended Responses to Defendants' Interrogatories); Dkt. 230-4, Ex. 36 (Plaintiffs' Responses to Defendants' Requests for Production), Ex. 23 at ¶ 20 (Roberts' Amended Responses to Party Rock LLC's Interrogatories (Set Two)), Exs. 24-25 at ¶ 1 (Jackson and Harr's Amended Responses to Party Rock LLC's Interrogatories); Dkt. 259-2, Ex. 38 at ¶ 20 (Roberts' Second Amended Responses to Party Rock LLC's Interrogatories (Set Two)), Ex. 39 at ¶ 1 (Harr's Second Amended Responses to Party Rock LLC's Interrogatories). Moreover, the documentary evidence that does exist indicates that none of the individual Plaintiffs are, indeed, "legal and/or beneficial owners" of the copyright in *Hustlin'*, and that they and their attorneys knew that they were not. *See, e.g.*, Chieffo Decl. ¶¶ 74 – 76. Rather, the evidence demonstrates that non-parties TNF, 3 Blunts,

---

[2]      Rather, Plaintiffs have consistently stated that they are "legal and/or beneficial owners" of the *Hustlin'* copyright. *See* Dkt. 228 at 2-11.

FNG, and Sony/ATV are legal or beneficial owners (*see* Dkt. 230 at 1-4, 10), and that Plaintiffs are not beneficial owners because they cannot prove that they "parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees" from either TNF or 3 Blunts. *Smith*, 741 F.3d at 1241; *Kelley v. Universal Music Grp.*, 14 CIV.2968 PAE, 2015 WL 6143737 (S.D.N.Y. Oct. 19, 2015) (holding that plaintiffs were not beneficial owners and lacked standing where they did "not claim a transfer by operation of law…[and] there was [n]ever a written instrument of conveyance or other signed writing conveying these rights in [the work at issue] to plaintiffs from the copyright owner."); Dismissal Order at 41 ("The Court has not found in the voluminous briefing, nor have the Parties identified, any record evidence demonstrating any royalty payment to Roberts, Harr, or Jackson relating to the right to prepare derivative works of *Hustlin'*. Nor is there any evidence that Plaintiffs, themselves, are even entitled to royalties for the exploitation of *Hustlin'*."). And as the Court noted, there is "substantial record evidence to support Defendants' contention that *Hustlin'* was a work for hire," (Dismissal Order at 34 n.30), meaning that Plaintiffs Harr and Jackson cannot be considered legal or beneficial owners.

Plaintiffs were aware of this issue as early as September 2012 (*see* Chieffo Decl., Exs. 22, 23), and it was raised by Defendants in their Answer to the initial Complaint on March 19, 2014, in which Defendants asserted affirmative defenses of failure to join indispensable parties and questioned whether any of Plaintiffs are beneficial and/or legal owners of an interest in the *Hustlin'* copyright. *See* Dkt. 14 (affirmative defenses two and eight). As such, as in *Kernel Mosley Oy*, "Plaintiff[s] knew [their] claim was frivolous from the outset….there were no late discovered 'facts, only Plaintiff[s]' 'calculated decision' about how to proceed." *Kernel v. Mosley*, Case 1:09-cv-21597-EGT, Dkt. 264 at 17 (S.D. Fla. Feb. 14, 2014).

Here, not only did Plaintiffs knowingly choose to proceed despite an apparent lack of standing, they also attempted to obstruct Defendants' efforts to obtain information about their ownership shares. *See* Chieffo Decl. ¶¶ 75 – 77; Dkt. 256-4, Exs. 6-14 at ¶ 1 (Plaintiffs' Responses and Amended Responses to Defendants' Interrogatories); Dkt. 259-2, Ex. 38 at ¶ 20 (Roberts' Second Amended Responses to Party Rock LLC's Interrogatories (Set Two)), Ex. 39 at ¶ 1 (Harr's Second Amended Responses to Party Rock LLC's Interrogatories; Dkt. 230-4, Ex. 23 at ¶ 20 (Roberts' Amended Responses to Party Rock LLC's Interrogatories (Set Two), Exs. 24-25 at ¶ 1 (Jackson and Harr's Amended Responses to Party Rock LLC's Interrogatories), Ex. 36 at ¶¶ 2, 37 (Plaintiffs' Responses to Defendants' Requests for Production); Dkt. 192-1 at 4-5.

Given Plaintiffs' acknowledgement in advance of the litigation that they did not know whether or not they had an ownership interest, and the complete absence of facts or documentary evidence in the record establishing either legal or beneficial ownership, Plaintiffs' decision to bring suit individually (rather than on behalf of their companies, TNF and 3 Blunts) was objectively unreasonable and frivolous and weighs in favor of granting Defendants their attorneys' fees.

 2.   Plaintiffs' Motivation In Filing This Suit And Their Litigation Strategy Is Questionable.

Courts in this district "look[] closely" at the motivation factor to determine entitlement to fees." *Kernel Records Oy*, 2013 WL 3762452, at *7 (citing *Lil' Joe Wein Music, Inc.* 2008 WL 2688117, at *1, *7 (finding that "the questionable motivation" of plaintiff in bringing and continuing the lawsuit is a factor that "militates in favor of" an award). However, Defendants, as the prevailing parties, need not establish that Plaintiffs were necessarily acting in bad faith. *See Sherry Mfg. Co.*, 822 F.2d at 1034. "[T]he strategy of including several defendants to 'get hands on the money' is, at best, a questionable motive." *Kernel Records Oy*, 2013 WL 3762452, at *8. "Courts generally hold that a finding of bad faith can be based on 'not only the actions that led to [the] lawsuit, but also [] the conduct of the litigation.'" *Wild*, 2011 WL 12877031, at *2 (quoting *Gilbert v. New Line Prods.*, No. CV 09-02231-RGK (RZ40), 2010 WL 5790688, at *3 (C.D. Cal. Dec. 6, 2010), *aff'd in part, vacated in part, remanded* 490 F. App'x 34 (9th Cir. 2012)).

*Party Rock Anthem* was released in January 2011, achieved tremendous success in the Spring and Summer of 2011, and appeared in national advertisements for the Kia Soul automobile beginning in August 2011. *See* Dkt. 376 ¶¶ 63, 66, 117. While the infringement claim was first raised in September 2011 and Plaintiffs' counsel sent a draft complaint to Kobalt in March 2013, and counsel corresponded thereafter, Plaintiffs chose to wait until December 2013 to file this lawsuit. *See* Dkt. 376 ¶ 86; Chieffo Decl. ¶ 78. Such a delay, alone, leads to a "find[ing] that Plaintiff[s'] motivation in filing this case was at least questionable, if not improper or in bad faith." *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *6 (finding motive questionable where "Plaintiff waited for almost three years after the songs at issue were released before filing this case"). Like the plaintiff in *Lil' Joe Wein Music, Inc.*, "only when the song[] w[as] successful did Plaintiff[s] send a cease and desist letter". *Id.* And, no alleged infringement claim was even asserted by any of the owners of *Hustlin'* until September 2011, after *Party Rock Anthem* was used in the Kia Soul commercial, and more than two more years passed before Plaintiffs filed suit. *See* Dkt. 230-3, Ex. 2. Plaintiffs were clearly motivated in filing this lawsuit by the deep pockets they perceived among the ten Defendants

Plaintiffs named in this lawsuit, particularly in Kia.[3] *See Kernel Records Oy*, 2013 WL 3762452, at *8 ("[T]he strategy of including several defendants to 'get hands on the money' is, at best, a questionable motive.").

Plaintiffs' conduct during the litigation also supports a finding of bad faith. *See Wild*, 2011 WL 12877031, at *2-3. For instance, Plaintiffs did not investigate the existence of a valid copyright registration prior to filing suit, and when Defendants—through their own investigation—discovered the three invalid registrations for *Hustlin'* and disclosed these registrations in their Answers and in discovery, Plaintiffs did nothing to attempt to cure the deficiencies in those registrations, instead stating that they were "surprised by that [first] copyright registration", "did not stand behind" it [Dkt. 190 at 58:19-23], and subsequently asserted the attorney client privilege when Defendants sought discovery from the lawyer who filed that registration. *See* Dkt. 192-1 at 4-5. Plaintiffs further did not confirm that they had any basis for bringing suit individually (rather than on behalf of their companies) or what their claimed ownership shares even were. *See* Dkt. 230-4, Ex. 23 at ¶ 20; *Id.*, Ex. 24 at ¶ 1; *Id.*, Ex. 25 at ¶ 1. Plaintiffs' litigation strategy of naming individuals Roberts, Harr, and Jackson as Plaintiffs, rather than their companies or the owners of the copyright in *Hustlin'*, also suggests bad faith. *See* Chieffo Decl. ¶76.

Plaintiffs' positions regarding the merits of their infringement claims have similarly been objectively unreasonable and made in bad faith. Like the plaintiff in *Kernel Mosley Oy*, "Plaintiff[s] grossly overreached" by claiming that the allegedly infringed portion of *Hustlin'* was nearly the entire value of *Party Rock Anthem* and the Kia Soul commercial, "without regard to the melody, lyrics, instruments, vocal performance, star power of superstar artist [LMFAO], production work of [a] superstar producer…marketing and promotion by the…record label, and all of the other factors that invariably contribute to the making of a sound recording." *Kernel v. Mosley*, Case 1:09-cv-21597-EGT, Dkt. 264 at 15 (S.D. Fla. Feb. 14, 2014). As a result, Plaintiffs' "damages calculations and settlement demands were at all times astronomical, legally unsupportable and intended to extract a settlement far beyond the worth of [the allegedly infringing portions of *Party Rock Anthem*], even if it did constitute copyright infringement." *Id.*; *see also* Chieffo Decl. ¶ 43 (Plaintiffs' refused to even negotiate regarding a settlement in August/September 2015 and in early February 2016 before the

---

[3]    Plaintiffs' expert rendered an opinion stating that the gross revenue from Kia Soul sales that Plaintiffs may be entitled to recover is $993,533,700 (to be offset by costs and apportionment of Kia's profits, which were not included in the expert's report). Such an unreasonable position supports a finding of bad faith motivation. This potential exposure also further justifies Kia's defense fees and costs.

February 8 status conference following the Register's response).

The questionable motivation of Plaintiffs in bringing and continuing this lawsuit—despite the absence of fundamental prerequisites to filing a copyright infringement suit (i.e., a valid registration and standing)—is a factor that militates in favor of an award of attorneys' fees.

3.   The Imposition Of Attorneys' Fees Will Advance Considerations Of Compensation And Deterrence.

"The touchstone of attorney's fees under Section 505 is whether imposition of attorney's fees will further the interests of the Copyright Act." *Kernel Records Oy*, 2013 WL 3762452, at *9 (citing *MiTek*, 198 F.3d at 842). Where, as here, a copyright plaintiff files suit without a valid copyright registration, "[t]his factor weighs heavily in favor" of granting a prevailing defendant attorneys' fees. *Id.* ("[a]lthough [plaintiff] may be able to re-file its infringement claims, the statute of limitations will prohibit any claims that accrued more than three years from the date of refiling. Defendants, therefore, successfully defended against the original action for all claims regarding copyright ownership and all infringement claims during the first four years after release of" the work).

In awarding defendants in *Kernel Records Oy* attorneys' fees, the court further held that "[l]itigation of this defense involved intensive discovery and many motions", and "[a]s a result of the efforts by Defendants' counsel during this litigation, the purposes of the Copyright Act have indeed been furthered." *Id.* Similarly, here, Defendants' extensive discovery and motion practice (including a motion for summary judgment) on chain of title and copyright ownership served the "policy goals underlying copyright registration" that "promote[] important congressional objectives." *Reed Elsevier, Inc.*, 559 U.S. at 169, n.9. Specifically, the "statutory requirement [of registration] in the Act promotes the incentive-based copyright registration system created by Congress." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09 CV 2669 LAP, 2012 WL 1021535, at *4 (S.D.N.Y. Mar. 26, 2012).

Here, "imposition of attorneys' fees rewards the Defendants' considerable effort in litigating meritorious defenses and substantially advances the purpose of the Copyright Act." *Kernel Records Oy*, 2013 WL 3762452, at *9. "[A]warding fees to Defendants will further the interests of the Copyright Act by deterring other plaintiffs from bringing objectively unreasonable actions without making an adequate pre-suit investigation." *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *8 (citing *MiTek Holdings, Inc.*, 198 F.3d at 842-43; *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y 2006), *aff'd*, 240 F. App'x 845 (2d Cir. 2007)); *see also TufAmerica Inc.*, 2016 U.S. Dist. LEXIS 30645, at *6-7 ("the Court finds that the purposes of the Copyright Act are

16

furthered by deterring the filing and pursuit of lawsuits in which chain of title has not been adequately investigated by the plaintiff."); *Kernel v. Mosley*, Case 1:09-cv-21597-EGT, Dkt. 264 at 18 (S.D. Fla. Feb. 14, 2014) ("Without an award of the requested attorneys' fees, Plaintiff will suffer no consequence—and Defendants will have been penalized substantially—as a result of Plaintiff's decision to file and pursue this lawsuit without fulfilling a well-established statutory precondition or, alternatively, without evidence to support an essential element of their claim.").

Each of the *Fogerty* factors weighs heavily in favor of granting Defendants attorneys' fees: Plaintiffs' filing of a copyright infringement action without investigating the existence of a valid copyright registration and what their ownership shares are was objectively unreasonable and frivolous. The motivation of filing such a suit is questionable (at best), and likely in bad faith given the length of time between the release of *Party Rock Anthem* and the filing of this lawsuit and the nature of the ten named Defendants. Finally, the important policy goals of the Copyright Act requiring registration prior to the filing of an action will be served by awarding Defendants attorneys' fees by encouraging other would-be plaintiffs to verify the existence of a valid copyright registration and cure any issues with the registration and chain of title in advance of filing suit.

**D.**      **The Attorneys' Fees And Costs Incurred By Defendants Are Reasonable.**

As set forth in the concurrently filed Chieffo Declaration, the fees and costs sought by Defendants are reasonable and are limited to the fees and expenses associated with defending the matter and obtaining a dismissal on the merits of each of Plaintiffs' claims.

        1.      Defendants' Entitlement To Attorneys' Fees.

This Court calculates a reasonable attorneys' fee by using the lodestar method, which requires the Court to multiply the reasonable hours expended by Defendants' counsel by Defendants' counsel's reasonable hourly rate. *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *8 (citing *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Cuban Museum of Arts & Culture, Inc. v. City of Miami*, 771 F. Supp. 1190, 1191 (S.D. Fla. 1991). Defendants' counsel has supplied detailed evidence of the hourly rates and time expended. *See* Chieffo Decl. ¶¶ 17 – 26, 27 – 42, Ex. 5; *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999); *Norman*, 836 F.2d at 1303. Defendants are entitled to the fees of both Los Angeles and Miami counsel. *Liberty Mut. Ins. Co. v. Employee Res. Mgmt., Inc.*, 176 F. Supp. 2d 510, 534 (D.S.C. 2001); *see also Am. Civil Liberties Union of Georgia*, 168 F.3d at 427 (defendants' counsel are entitled to recover for the hours expended by multiple attorneys).

The Court must first determine whether the hourly rate is reasonable. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *8 (quoting *Norman*, 836 F.2d at 1299). A reasonable hourly rate is one that is adequate to attract competent counsel in the relevant legal market, but yet does not produce a windfall to that attorney. *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984)).

After determining the reasonableness of the hourly rate, the Court must next determine the reasonableness of the hours expended. *Id.* (citing *Norman*, 836 F.2d at 1301). Defendants' counsel must use "billing judgment" and exclude unnecessary hours, "irrespective of the skill, reputation or experience of counsel". *Id.* (quoting *Am. Civil Liberties Union of Georgia*, 168 F.3d at 427).

In this Motion, Defendants seek $2,387,685.54 in attorneys' fees that were reasonable and necessary to the litigation. The fees were incurred in performing the following tasks, among others, as detailed in the Chieffo Declaration: Investigating *Hustlin'* copyright registrations and chain of title, including twenty specific discovery requests on the issue; Preparing answers and affirmative defenses to Plaintiffs' three complaints; Drafting and responding to 17 sets of interrogatories, five sets of requests for admissions, and 15 sets of requests for production of documents; Preparing and reviewing 17 third party subpoenas; Reviewing 2,901 pages of documents and two electronic sound files produced by Plaintiffs and 3,394 pages of documents produced by third parties; Producing 42,595 pages and 4,494 electronic sound files (including some sound files that were reproduced with metadata, at Plaintiffs' insistence); Meeting and conferring regarding discovery disputes, preparing discovery motions, and participating in discovery conferences; Preparing for and conducting or attending 35 depositions, including ten expert depositions; Retaining six expert witnesses[4] and assisting with preparation of their reports; Reviewing Plaintiffs' four expert witness reports and

---

[4]     Defendants seek $358,250.43 in fees paid to their six experts in defending this case. As this Court is aware, copyright litigation almost always requires the retention of experts in order to adequately defend infringement claims. *See, e.g., Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005) ("As is often true in musical copyright actions, each side relied heavily on its own expert."); *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996) (expert testimony "typically" required for extrinsic prong of substantial similarity analysis); *Kohus v. Mariol*, 328 F.3d 848, 856, 857-58 (6th Cir. 2003) (holding expert testimony necessary for analyzing the merger doctrine, and expert testimony also necessary for substantial similarity analysis because "a lay person is unlikely to understand what constitutes creativity in this area"). While Defendants are aware that courts in this Circuit have denied a prevailing party expert fees actually paid (as opposed to the $40/day set forth in 28 U.S.C. § 1821(b)) (*see, e.g., Hermosilla*, 2011 WL 9364952 at *20-21 (citing *Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1040 (11th Cir. 2001)), Defendants maintain that the fees actually paid to experts are recoverable under the Copyright Act as "full costs" and wish to preserve any issue in this regard for appeal. 17 U.S.C. § 505.

assisting with preparation of rebuttal reports; Preparing three motions for summary judgment and an opposition to motion for summary judgment; Preparing motion for judgment on the pleadings; Preparing motion for bifurcation; Responding to FNG's motion to intervene; Preparing and opposing ten *Daubert* motions and 26 motions in limine; Preparing Pre-Trial Stipulation, including witness and exhibit list; Preparing jury instructions; Attending four (non-discovery) court hearings, including pre-trial conference; Preparing documents relating to referral to and response from Register of Copyrights; Preparing for and participating in mediation; Performing legal research on numerous issues; Extensive communication, correspondence and telephone conferences with clients; Extensive correspondence and telephone conferences with Plaintiffs' counsel. Chieffo Decl. ¶¶ 27 - 42.

 As set forth in the Chieffo Declaration, Defendants' counsel's hourly rates are reasonable in light of the skill, experience, and reputation of Defendants' counsel. Chieffo Decl. ¶¶ 17 - 26. Additionally, Defendants' counsel's fees were discounted by 10%, and the hourly rates charged were 2014 rates throughout the litigation (i.e. the increase in counsel's hourly rates from 2014-2016 were not passed on to Defendants). Chieffo Decl. ¶¶ 3 and 17 - 26. While Los Angeles hourly rates are generally higher than Miami hourly rates, given the freezing of all the attorneys' rates to 2014 rates and the 10% discount, the hourly rates sought by Defendants for counsel in both Miami and Los Angeles are in line with current market rates in Miami. Chieffo Decl. ¶¶ 17 – 26; Declaration of Barry L. Rothberg ¶¶ 3, 4.

 Similarly, the number of hours expended by Defendants' counsel was reasonable given that Plaintiffs' lawsuit was filed in December 2013 and the Dismissal Order was not entered until April 2016, the extensive discovery (including expert) and motion practice that occurred, and that the parties were three weeks away from trial when the matter was stayed in order to seek the guidance of the Copyright Register. The number of hours is further reasonable in light of the fact that counsel for Defendants represented all ten Defendants, and the claims alleged against each Defendant were not the same (nor was the involvement of each Defendant in the exploitation of *Party Rock Anthem*). Chieffo Decl. ¶28. *Compare Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *11 ("As Plaintiff chose to sue three separate entities, he cannot be heard to complain that the parties chose to retain two different law firms to represent them. Naturally, this will increase the legal fees incurred."). Each of the tasks for which Defendants seek attorneys' fees—each of which is individually identified (rather than included in "blocks") in Exhibit 5 to the Chieffo Declaration—were necessary to the defense of Plaintiffs' claims. Chieffo Decl. ¶¶ 27- 42. Defendants have not requested fees for a

number of tasks, including: analysis, discovery, and motion for judgment on the pleadings on Plaintiffs' trademark claim (even though Plaintiffs voluntarily dismissed the trademark claim *with prejudice*) and the Listenbee motion to dismiss for lack of jurisdiction (even though that motion was partially granted). Chieffo Decl. ¶¶ 7 – 10, Ex. 6. These "deletions"— totaling $211,664, render Defendants' fees request even more reasonable. *See Cable/Home Commc'n Corp.*, 902 F.2d at 853 (district court "impressed by the deletions that plaintiffs made in their attorneys' fee request").

2.   <u>Defendants' Entitlement To Costs.</u>

The authority to award a reasonable attorneys' fee under 17 U.S.C. § 505 includes the authority to award out-of-pocket expenses incurred by the attorney which are typically charged to a client in the course of providing legal services, such as photocopying, paralegal expenses, travel costs and telephone costs. *Hermosilla*, 2011 WL 9364952, at *3. The Copyright Act expressly provides that in civil copyright actions, "the court in its discretion may allow the recovery of full costs." (emphasis added) 17 U.S.C. § 505.[5]

This Court has held that "[w]hen a court makes an award of attorney's fees it can also award the prevailing party reasonable out of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients, so long as these costs are incidental and necessary to the litigation." *Id*. (quoting *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *14 (internal punctuation omitted) (quoting *Arthur Kaplan Co. v. Panaria Int'l, Inc*., No. 96 CIV. 7973 HB, 1999 WL 253646, at *2–4 (S.D.N.Y. Apr. 29, 1999), *aff'd sub nom. Arthur A. Kaplan Co., Inc. v. Panaria Int'l, Inc.*, 205 F.3d 1321 (2d Cir. 2000) (costs awarded to a prevailing plaintiff in a copyright infringement action include process server charges, investigator fees, local counsel costs, witness expenses, computer research expenses, travel expenses, and administrative expenses)); *see also InvesSys, Inc. v. McGraw–Hill Companies, Ltd*, 369 F.3d 16, 22 (1st Cir.2004) (attorney's fees awarded to a prevailing defendant in a copyright infringement action included out-of-pocket expenses normally charged by attorneys to clients, such as costs for computer assisted research); *Pinkham v. Camex, Inc*., 84 F.3d 292, 294–95 (8th Cir.1996) (attorneys' fees awarded to a prevailing party in a copyright infringement action included out-of-pocket expenses normally charged by attorneys to clients, such as costs for long distance and fax and for messengers and express mail).

In this Motion, Defendants seek $650,933.28 in costs that were reasonable and necessary to

---

[5]   Defendants' entitlement to costs under Section 505 of the Copyright Act is separate from costs recoverable under 28 U.S.C. § 1920, and is not limited by the restrictions set forth in Section 1920.

the litigation. The costs incurred included the following, among others: witness fees; service of process; court reporter fees; photocopies; long distance telephone; Federal Express/UPS; computerized research; courier; and travel Expenses. Chieffo Decl. ¶¶ 44 – 70, Exs. 13, 14. These types of expenses are properly awarded to the prevailing party as part of the attorneys' fees award. *See Lil' Joe Wein Music, Inc*., 2008 WL 2688117, at *14.

     3.    <u>Defendants' Fees And Costs Are Reasonable.</u>

     The factors to be considered when setting a fee include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Cable/Home Commc'm Corp.*, 902 F.2d at 853 (citing *Johnson v. Georgia Highway Exp., Inc*., 488 F.2d 714, 717-19 (5th Cir.1974) *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *see also Marion v. Barrier*, 694 F.2d 229, 231 (11th Cir. 1982) (holding that *Johnson* does not compel a district court "to adjust a fee upward or downward in every instance where one or another of the factors is found to be present; rather, it suggests a 'balancing process' in which the trial judge remains responsible for the discretionary functions of assessing the weight to be given each factor and the appropriate adjustments to make in the fee"). Furthermore, "while willfulness does not compel a fee award, it is an 'important factor' in the district court's 'discretionary decisionmaking.'" *Cable/Home Commc'n. Corp.*, 902 F.2d at 853 (citing *Casella v. Morris*, 820 F.2d, 362, 366 (11th Cir. 1987)). Each of the *Johnson* factors and Plaintiffs' willfulness in pursuing this case weigh in favor of awarding the full amount of fees and costs requested.

     •   Time and Labor Required/Preclusion of Other Matters: This lawsuit was filed in December 2013 and was actively litigated through September 25, 2015, when the Court conducted a pre-trial conference. By this point in time, the parties were essentially prepared for the trial that was to commence on October 19, 2015. The parties then spent additional time preparing, per the Court's request, a joint statement of undisputed facts in support of their respective motions for summary judgment (the denial of Plaintiffs' motion was in part the subject of the Court's Dismissal Order), and time through early March 2016 briefing issues relating to the Copyright Register referral and response. While Defendants' counsel did not work exclusively on this matter from December 2013

through March 2016, the extensive discovery, motion practice, and trial preparation required intense time and labor, often to the preclusion of work on other matters.

- Difficulty of Issues and Skills Required: The claims asserted by Plaintiffs required specialized knowledge and expertise of copyright, trademark, and entertainment law, particularly as infringement claims were asserted against ten different Defendants with dramatically different positions in relation to the alleged infringement.

- Customary/Type of Fee/Nature and Length of Professional Relationship with Client: Attorneys' fees were charged at the attorneys' customary hourly rates as of 2014, with a 10% courtesy discount.

- Time Limitations: Limitations on time arose as a result of Plaintiffs' addition of parties and claims after the original Complaint was filed. Consequently, the trial date was twice continued. Dkts. 83, 170.

- Results Obtained: Defendants obtained a complete dismissal of all of Plaintiffs' claims based on the fact that Plaintiffs lack a valid copyright registration and standing to assert infringement claims regarding *Hustlin'*. Given the success of *Party Rock Anthem* and the profits from sales of Kia Soul cars, had Plaintiffs been successful in proving their claims (the merits of which Defendants continue to challenge), Defendants would have been exposed to substantial potential liability.

- Experience, Reputation, and Ability of Attorneys: As set forth in the Chieffo Declaration, Defendants' counsel are experienced litigators with specialized expertise and knowledge in copyright law, including specifically in the music industry.

- Undesirability of Case: While Defendants' defenses to the merits of Plaintiffs' claims were strong, the number of Defendants and the complexity of the musicological and damages claims being made by Plaintiffs may have made the case undesirable to other counsel.

- Awards in Similar Cases: The amount of attorneys' fees sought by Defendants is reasonable in the context of awards in similar cases. *See, e.g.*, *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *13 (awarding, *in 2008*, $500/hr for Los Angeles-based partner practicing for 37 years; $375/hr for Los Angeles-based partner practicing for 17 years; $200/hr for Los Angeles –based associate practicing for four years; $100/hr for Los Angeles-based paralegal at firm for five years).

- Plaintiffs' Willfulness in Pursuing Meritless Litigation: As set forth above, Plaintiffs were aware that there were three registrations for *Hustlin'* over two years ago, that they lacked standing individually, and that their standing was being challenged. Yet rather than attempting to

address or cure these fatal defects, Plaintiffs continued to litigate their case (even refusing to engage in settlement discussions after the Register issued her response), causing Defendants to incur substantial attorneys' fees. Plaintiffs' willfulness in pursuing this litigation without a valid copyright registration and without standing weighs heavily in favor of granting Defendants' requested fees. Chieffo Decl. ¶¶ 71 – 77.

## IV.    CONCLUSION

The fees and costs incurred by Defendants' were reasonable and necessary in the defense of this litigation and should, respectfully, be awarded to Defendants as prevailing parties.

### Certification

Pursuant to S.D. Fla. L.R. 7.3(b) counsel for Defendants conferred with Plaintiffs' counsel in a good faith effort to resolve the Motion. While Defendants largely disagreed with Plaintiffs' objections to the Motion, Defendants agreed to make some revisions to the Motion based on the meet and confer.

### Verification

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that I have personal knowledge of, and am competent to testify on, the facts set forth in the foregoing Motion and incorporated exhibits and they are true and correct.

Dated:  June 7, 2016

GREENBERG TRAURIG, P.A.
*Attorneys for Defendants Stefan Kendal Gordy, Skyler Austen Gordy, Kobalt Music Publishing America, Inc., Kia Motors America, Inc., Nu80s Music, LLC, LMFAO, LLC, Party Rock, LLC, Foo & Blu, LLC, David & Goliath, LLC, and David Jamahl Listenbee p/k/a GoonRock*

333 Avenue of the Americas
Miami, FL 33131
Tel: 305-579-0500; Fax: 305-579-0717

By:     */s/ Vincent H. Chieffo*
            VINCENT H. CHIEFFO
        (Admitted *Pro Hac Vice*)
        chieffov@gtlaw.com

By:     */s/ Nina D. Boyajian*
            NINA D. BOYAJIAN
        (Admitted *Pro Hac Vice*)

23

CASE NO.: 1:13-CV-24700-KMW

boyajiann@gtlaw.com

By:   /s/ *Barry L. Rothberg*
           BARRY L. ROTHBERG
      Florida Bar No. 0160873
      rothbergb@gtlaw.com

LA132551330

CASE NO.: 1:13-CV-24700-KMW

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on June 7, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/EFC or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jonathan L. Gaines, Esq.
Karen L. Stetson, Esq.
Gray Robinson
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131
Tel: 305-416-6880; Fax: 305-461-6887
Email: jgaines@gray-robinson.com; karen.stetson@gray-robinson.com
Counsel for Plaintiffs


                    By:   *s/Barry L. Rothberg*
                         Barry L. Rothberg