UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 13-24700-CIV-WILLIAMS

WILLIAM L. ROBERTS, II, *et al.*,

    Plaintiffs,

vs.

STEFAN KENDAL GORDY, *et al.*,

    Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on (DE 468) Defendants' *expedited* motion for the Court to reconsider its ruling denying summary judgment on Plaintiffs Andrew Harr and Jermaine Jackson's (the "Runners") legal ownership status. *See* (DE 462 at 19-26). The Court also addresses the Parties' motions regarding the April 15, 2019 trial date. (DEs 468, 475-476).

### I.    BACKGROUND

The Court assumes familiarity with the facts giving rise to Defendants' motion for reconsideration. *See* (DE 399; DE 462). In relevant part, the Court held in its Omnibus Order on ownership entered January 4, 2019 (DE 462), that (1) Plaintiff William Roberts has no standing to sue as either a legal or beneficial owner, and thus final summary judgment will be entered against him; and (2) while there is also no evidence to support the Runners proceeding to trial as beneficial owners, triable issues of fact remain regarding their standing to sue as legal owners.

Specifically, as to the Runners' legal ownership, the Court first held that it cannot determine if *Hustlin'* was created as a "work for hire" on summary judgment, because the

evidence on this highly factual inquiry is disputed. *Id.* at 19-22.[1] Next, the Court held that assuming *Hustlin'* was not a work for hire, "genuine disputes of material fact exist regarding whether Harr and Jackson assigned their interest in *Hustlin'* to" their company Trac-N-Field Entertainment (TNF). Acknowledging that "ample evidence supports the conclusion that Harr and Jackson assigned their interest in *Hustlin'* to TNF," the Court denied summary judgment on this issue, because 17 U.S.C. § 204(a) requires a transfer of copyright ownership to be evidenced by a signed writing, and the summary judgment record includes no such writing. (DE 462 at 22-23). Thus, the Court concluded "[a] genuine issue of material fact exists regarding Plaintiffs Andrew Harr and Jermaine Jackson's legal ownership interest in Hustlin'. That issue, along with their copyright infringement claims, must be presented to a jury[.]" *Id.* at 37.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, the only grounds for granting a motion for reconsideration are "newly discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). Such motions "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (quoting *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).

---

[1] If the Runners created *Hustlin'* as a work for hire, then they lack standing to sue for infringement and judgment must be entered against them.

2

## III. DISCUSSION

### A. Defendants' Motion For Reconsideration

Defendants argue that denying summary judgment on the Runners' standing to sue as legal owners was "manifest error" for two reasons. First, they argue that even if the Runners never assigned their legal ownership interest in *Hustlin'* to TNF, any interest they had in the copyright was assigned to Notting Dale, Inc. in the November 2006 Notting Dale Agreement. (DE 468 at 1). Second, they insist that the record includes "multiple, written 'note[s] or memorand[a] of the transfer' to TNF, signed by Harr and Jackson that satisfy 17 U.S.C. § 204(a) and independently memorialize the transfer of ownership to TNF[.]" (DE 468 at 2).

#### i. The Notting Dale Agreement Does Not Definitively Prove That Defendants Are Entitled To Summary Judgment On The Runners' Legal Ownership

On November 17, 2006, "Trac-N-Field Entertainment f/s/o Andrew Harr and Jermaine Jackson" entered into a "Publishing Licensing Agreement" with Notting Dale. (DE 228-22). The purpose of the agreement was for Notting Dale to "act as the publisher" for certain specified musical works, including *Hustlin'*. *Id.* at 2. In the agreement, the Writer "grants and licenses" to Notting Dale the following rights in the works:

(a) The sole and exclusive right to print, copy and otherwise graphically reproduce the Works in any form and by any means whatsoever . . . and to sell, distribute, hire, lend to the public or otherwise dispose of such reproductions and copies including the right to licence lyrics only for publication

(b) The sole and exclusive right publicly to perform, broadcast and transmit via any means the Works

(c) The sole and exclusive right to record, transcribe and otherwise mechanically or electronically record or reproduce the Works

3

(d) Subject in each case to the prior consent of the Writer such consent not to be unreasonably withheld, the exclusive right in the Licensed Territory to issue licences for the recording and/or synchronization of the Works with films, tapes or other permanent visual images produced in the Licensed Territory

(e) The right to secure copyright registration and renewal copyright registration in respect of the Works in the name of the copyright owner under any applicable law now in effect or hereafter enacted

(f) The right to collect and receive during the Term . . . all of the total fees, royalties, and monies arising prior to and during the Term . . . as a result of the use and/or exploitation of the Works.

(g) The Licensee shall be entitled to license any third party or to authorize or permit any third party to exercise any or all rights of the Licensee. . .

*Id.* at 3-4.

At the end of the agreement is a "Direction Letter" that states

Please be advised that effective as of, November 17th 2006 we Trac-N-Field Entertainment f/s/o Andrew Harr and Jermaine Jackson have granted to Notting Dale Songs, Inc. and its licensees and assigns, the exclusive right, throughout the world, in respect of compositions of which the undersigned is the copyright proprietor, including those compositions listed on Schedule A annexed (the "Compositions"):

(i) to license and cause others to license the use of the Compositions; and

(ii) to administer and grant rights in and to the Compositions and the copyrights therein; and

(iii) to publish and sell sheet music and/or folios of the Compositions if it so elects; and

(iv) to collect any and all monies payable with respect to the Compositions, including any monies earned prior to the date hereof; and

(v) to otherwise administer 100% of the Compositions and the copyrights therein and to act as the publisher thereof.

*Id.* at 14. Notably, Schedule A indicates that TNF's share of the exclusive rights for the musical composition of *Hustlin'* was 37.5%. *Id.* at 15. Accordingly, the Parties have

4

agreed and stipulated that the Notting Dale Agreement is an "exclusive publishing licensing agreement" between TNF and Notting Dale that granted Notting Dale "the exclusive right to license and administer all of TNF's interest . . . in certain compositions, including 37.5% of *Hustlin'*." *See* (DE 376 ¶ 48; DE 355 ¶ 44).

Having set out the terms of the Notting Dale Agreement, the Court turns to Defendants' argument that the Agreement proves, as a matter of law, the Runners have no standing to sue as legal owners of *Hustlin'*. This argument does not warrant reconsideration of the Court's prior ruling. As the Court has explained, if the Runners did not create *Hustlin'* as a work for hire and if they never assigned their interest in the copyright to TNF, their percentage ownership is still unclear. *See* (DE 462 at 19-26); (DE 399 at 43). If they can support their legal ownership arguments with sufficient, competent evidence at trial, then the Runners' could show they own *50% of Hustlin'. Id.* The Notting Dale agreement, however, involves only a *37.5%* interest in *Hustlin'*, potentially leaving an ownership interest that was not transferred in the agreement. (DE 228-22). The argument fails for this reason alone.

In addition, the Parties dispute whether the right to prepare derivative works was transferred in the Notting Dale Agreement. The Agreement includes language indicating a broad and comprehensive transfer of rights, including "the exclusive right, throughout the world . . . [to] grant rights in and to the Compositions [including 37.5% of *Hustlin'*] and the copyright[] therein[.]" But the Agreement also does not explicitly mention the right to prepare derivative works. Although the Court previously remarked that the Notting Dale Agreement assigned an ownership interest in all six exclusive rights in the *Hustlin'*

5

copyright, upon further review of the Agreement and case law, the Court finds that this issue remains open and must be resolved in connection with trial.

### ii. The Purported "Notes or Memoranda" Of Copyright Assignment

Defendants' second argument is that there are numerous "'note[s] or memorand[a][2] of the transfer' to TNF, signed by Harr and Jackson that satisfy 17 U.S.C. § 204(a) and independently memorialize the transfer of ownership to TNF, including the three copyright registrations for Hustlin', the Copyright Splits Agreement, and the Notting Dale Agreement." (DE 468 at 3). A "note" or "memorandum" satisfies Section 204(a)'s writing requirement only if it confirms a prior agreement. *See Arthur Rutenberg Homes, Inc. v. Drew Homes*, Inc., 29 F.3d 1529 (11th Cir. 1994) (The "note or memorandum" "does not itself constitute the transfer; rather, the writing renders valid and enforceable in court a change in ownership that has already taken place"). After careful review of the record and applicable law, the Court finds that the purported "note[s]" and "memorand[a]" cited by Defendants do not conclusively establish, as a matter of law, that the Runners agreed to assign their legal interest in *Hustlin'* to TNF. That issue must be determined by a jury. Thus, Defendants may argue at trial both that (1) the Runners assigned their legal ownership interest in *Hustlin'* to TNF in a written "instrument of conveyance" that the Parties have not located; and/or (2) the Runners agreed to assign their copyright interest to TNF and that agreement is confirmed in written "notes" and "memoranda" that satisfy Section 204(a)'s writing requirement.

---

[2] Defendants' motion for reconsideration is the first time they have advanced their "note or memorandum" argument, despite many prior opportunities to do so.

6

## B. The Parties' Motions Regarding Trial

Defendants have also moved to delay the trial on damages and liability and set a separate, preliminary trial on the issue of the Runners' standing. *See* (DEs 468, 477). For their part, Plaintiffs have moved the Court to enter final judgment as to Plaintiff Roberts and certify that judgment, pursuant to Fed. R. Civ. P. 54(b), for immediate interlocutory appeal. (DE 475). Plaintiffs also ask the Court to stay all other pending matters until Roberts' appeal is resolved. (DE 476).

As Plaintiffs point out, bifurcating issues for trial and/or for separate trials is the exception, not the rule. *See, e.g., Levesque v. Gov't Emps. Ins. Co.*, No. 15-14005-CIV, 2016 WL 1156288, at *2 (S.D. Fla. Mar. 24, 2016) ("Bifurcation is the exception, not the rule, and the party seeking bifurcation bears the burden of establishing bifurcation is warranted."); *Kos Pharm., Inc. v. Barr Labs., Inc.*, 218 F.R.D. 387, 391 (S.D.N.Y. 2003) ("[t]he inconveniences, inefficiencies and harms inherent in these probable consequences [of bifurcation]—to the parties and third parties, to the courts, and to the prompt administration of justice—weigh against separation oftrials and suggest that, for those probable adverse effects to be overcome, the circumstances justifying bifurcation should be particularly compelling and prevail only in exceptional cases"). Similarly, Rule 54(b) certification is appropriate in "exceptional" circumstances or when "unusual hardship" would result to the Parties by awaiting the disposition of the entire case before obtaining appellate review. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 168 (11th Cir. 1997) (explaining that there is a "federally preferred practice of postponing appeal until after a final judgment has been entered" and that Rule 54(b) certification results in "injury to the interest of judicial administration).

The Court has already ruled that Plaintiffs' request for a stay is denied. (DE 478). Plaintiffs' request for a Rule 54(b) certification is similarly denied; they have failed to demonstrate why this Court should not adjudicate the pending claims to conclusion. The Parties' concerns regarding the cost and inconvenience to witnesses cannot justify Rule 54(b) certification and delaying this matter even further. At the February 8, 2019 status conference, the Court will hear limited argument regarding Defendants' request for a separate, preliminary trial on standing. The Parties are advised, however, that the Court will consider this option only if the trial on standing—limited to 2-3 days—begins on April 15, with the trial on liability and damages (if necessary) beginning immediately after.

## IV. CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** that:

1. Defendants' request for reconsideration (DE 468) is **DENIED.**

2. Plaintiffs' motions for Rule 54(b) certification (DE 475) and to stay proceedings (DE 476) are **DENIED.**

3. Defendants' request to delay the trial on liability and damages is **DENIED.**

4. At the February 8, 2019 status conference, the Court will hear limited argument on the request for a separate trial on standing, in accordance with the rulings above.

5. At the status conference, the Parties shall be prepared to address and argue all of the issues identified in the notices of matters pending before trial. (DEs 464, 467).

8

**DONE AND ORDERED** in chambers in Miami, Florida, this 5th day of February 2019.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE